# In the United States Court of Appeals for the Fifth Circuit

IN RE THE FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND,

*Petitioner.*

On Petition for a Writ of Mandamus to the U.S. District Court for the Northern District of Texas, Fort Worth Division
No. 4:21-cv-0595-O (Hon. Reed O'Connor)

## APPENDIX TO PETITION FOR A WRIT OF MANDAMUS

Jon M. Greenbaum
Dorian L. Spence
LAWYERS' COMMITTEE
1500 K St. NW, Suite 900
Washington, DC 20005

Chase J. Cooper
Jordan B. Redmon
Ashley Jones Wright
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201

Kobi K. Brinson
WINSTON & STRAWN LLP
300 South Tyron St., 16th Floor
Charlotte, NC 28202

Janelle A. Li-A-Ping
WINSTON & STRAWN LLP
333 S. Grand Ave.
Los Angeles, CA 90071

George C. Lombardi
Julie A. Bauer
WINSTON & STRAWN LLP
35 West Wacker Dr.
Chicago, IL 60601

Andrew E. Tauber
  *Counsel of Record*
WINSTON & STRAWN LLP
1901 L St. NW
Washington, DC 20036
(202) 282-5288
atauber@winston.com

Mark D. Rosenbaum
Nisha Kashyap
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005

*Counsel for Petitioner*

# INDEX

Tab 1        This Court's Opinion and Judgment (ECF Nos. 180 and 181)

Tab 2        Order Directing Conferral and Joint Status Report (ECF Nos. 178 & 184)

Tab 3        Scheduling Order (ECF No. 186)

Tab 4        The Federation's Motion for Reconsideration and Supporting Documents (ECF Nos. 187, 187-1, 187-2, and 187-3)

Tab 5        Order Expediting Briefing on the Federation's Motion for Reconsideration (ECF No. 189)

Tab 6        The Secretary's Brief in Opposition to the Federation's Motion for Reconsideration (ECF No. 193)

Tab 7        Plaintiffs' Brief in Opposition to the Federation's Motion for Reconsideration (ECF No. 194)

Tab 8        The Federation's Reply in Support of its Motion for Reconsideration (ECF No. 195)

Tab 9        Order Denying the Federation's Motion for Reconsideration (ECF No. 196)

Tab 10       The Federation's Motion to Compel Production of Complete Loan Data and Supporting Documents (ECF No. 199, 199-1, 199-2, 199-3, and 199-4)

Tab 11       Order Expediting Briefing on the Federation's Motion to Compel (ECF No. 200)

Tab 12       The Secretary's Opposition to the Federation's Motion to Compel (ECF No. 201)

Tab 13      Order Denying the Federation's Motion to Compel (ECF No. 202)

Tab 14      The Federation's Motion to Certify Orders for Interlocutory Appeal and Supporting Documents (ECF Nos. 203, 203-1, 203-2, and 203-3)

Tab 15      Order Expediting Briefing on the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 204)

Tab 16      The Secretary's Opposition to the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 205)

Tab 17      Plaintiffs' Opposition to the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 206)

Tab 18      Order Denying the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 207)

**Tab 1**

**This Court's Opinion and Judgment**

**(ECF Nos. 180 and 181)**

**FILED**

**March 28, 2022**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 22, 2022

Lyle W. Cayce
Clerk

No. 21-11271

---

SID MILLER, *on behalf of himself and others similarly situated*; GREG
MACHA; JAMES MEEK; LORINDA O'SHAUGHNESSY; JEFF
PETERS,

*Plaintiffs—Appellees*,

*versus*

TOM VILSACK, *in his official capacity as* SECRETARY OF
AGRICULTURE,

*Defendant—Appellee*,

*versus*

FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE
FUND,

*Movant—Appellant*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-595-O

---

Before SOUTHWICK, HAYNES, and HIGGINSON, *Circuit Judges*.

Per Curiam:*

Appellant Federation of Southern Cooperatives (the "Federation") moved to intervene in a class action challenging the constitutionality of § 1005 of the American Rescue Plan Act of 2021 ("ARPA"), Pub. L. No. 117-2, 135 Stat. 4. The district court denied the motion. For the following reasons, we REVERSE and REMAND.

## I.    Background

The Secretary of the United States Department of Agriculture ("USDA") is authorized under § 1005 to "provide a payment in an amount up to 120 percent of the outstanding indebtedness of each socially disadvantaged farmer or rancher" to pay off the disadvantaged farmer or rancher's loans "made" or "guaranteed by the Secretary." ARPA § 1005(a)(2), 135 Stat. at 12–13. The term "socially disadvantaged farmer or rancher" ("SDFR") is defined as "a farmer or rancher who is a member of a socially disadvantaged group," 7 U.S.C. § 2279(a)(5), which, in turn, means that the members of the group "have been subjected to racial or ethnic prejudice because of their identity as members of a group without regard to their individual qualities," *id.* § 2279(a)(6). Per USDA interpretation, SDFR includes (but is not limited to): "American Indians or Alaskan Natives; Asians; Blacks or African Americans; Native Hawaiians or other Pacific Islanders; and Hispanics or Latinos." Notice of Funds Availability; American Rescue Plan Act of 2021 Section 1005 Loan Payment (ARPA), 86 Fed. Reg. 28,329, 28,330 (May 26, 2021).

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-11271

Sid Miller, a white farmer excluded from the SDFR designation (who describes his ancestry as "overwhelmingly white"),[1] filed a class action lawsuit against the Secretary, claiming that USDA violated Title VI of the Civil Rights Act of 1964 and the U.S. Constitution "by excluding individuals and entities from the benefit of federal programs on the grounds of race, color, and national origin." The district court certified the class and granted a preliminary injunction to enjoin the Secretary from administering § 1005.

The Federation, "a nonprofit cooperative association of Black farmers, landowners, and cooperatives,"[2] filed a motion to intervene as a defendant in this action. The organization argued it was entitled to intervention as a matter of right under Federal Rule of Civil Procedure 24(a) or, alternatively, permissive intervention under Rule 24(b). Both the Secretary and Plaintiffs opposed the motion to intervene as a matter of right, arguing that the Federation failed to show that the Government inadequately represented the Federation's interest. Only Plaintiffs opposed permissive intervention.

The district court denied the Federation's motion to intervene on both grounds. *Miller v. Vilsack*, No. 4:21-CV-0595-O, 2021 WL 6129207, at

---

[1] Miller is the Agriculture Commissioner for the State of Texas but stated in the class action complaint that he is "suing in his capacity as a private citizen[] and not on behalf of the State of Texas or the Texas Department of Agriculture."

[2] According to the Executive Director of the Federation, the organization "serves its members through advocacy, technical assistance, and support services." It is also a "unique" organization "because it has a cooperative membership as well as a land assistance fund." Here, the Federation's minority farmer members, who are § 1005 beneficiaries or applicants, seek to present evidence of ongoing and current discrimination against them by USDA—the agency administering the loan assistance program at issue.

No. 21-11271

*3 (N.D. Tex. Dec. 8, 2021).[3]  The Federation timely appealed, and we granted the motion to expedite.

## II.    Jurisdiction and Standard of Review

The district court had jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3).  As to the denial of the motion to intervene as a matter of right, we have jurisdiction over this appeal under 28 U.S.C. § 1291 and review this denial de novo, *Edwards v. City of Houston*, 78 F.3d 983, 992, 995 (5th Cir. 1996) (en banc).  As to the denial of the permissive intervention motion, we only have "provisional jurisdiction" and review for a clear abuse of discretion.  *Id.* at 992, 995.  Under this deferential standard, we will reverse the district court's decision only if "extraordinary circumstances" are present.  *St. Bernard Parish v. Lafarge N. Am., Inc.*, 914 F.3d 969, 973 (5th Cir. 2019) (quotation omitted).

## III.    Discussion

On appeal, the Federation argues that the district court erred in denying its motion to intervene based on intervention as a matter of right or (alternatively) permissive intervention.  We agree that the court erred in denying intervention as a matter of right, mooting the permissive intervention issue.

To prevail on a motion to intervene as a matter of right, an applicant must meet four requirements:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that

---

[3] Instead, the district court granted the Federation leave to file a brief as amicus curiae.  *Miller*, 2021 WL 6129207, at *3.

No. 21-11271

> the disposition of the action may, as a practical matter, impair
> or impede its ability to protect its interest; and (4) the
> applicant's interest must be inadequately represented by the
> existing parties to the suit.

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quotation omitted);
Fed. R. Civ. P. 24(a)(2). Nevertheless, a Rule 24(a) inquiry "is a flexible one,
which focuses on the particular facts and circumstances surrounding each
application . . . measured by a practical rather than technical yardstick."
*Entergy Gulf States La., L.L.C. v. EPA*, 817 F.3d 198, 203 (5th Cir. 2016)
(quotation omitted). In line with this flexibility, we have held that "[f]ederal
courts should allow intervention where no one would be hurt and the greater
justice could be attained." *Texas v. United States*, 805 F.3d 653, 657 (5th Cir.
2015) (quotation omitted). Therefore, even though "the movant bears the
burden of establishing its right to intervene, Rule 24 is to be liberally
construed," *id.* at 656 (quotation omitted), "with doubts resolved in favor of
the proposed intervenor," *Entergy*, 817 F.3d at 203 (internal quotation marks
and citation omitted).

Because the parties do not dispute that the Federation can meet the
first three prongs of the Rule 24(a) inquiry, we limit our analysis to the fourth
prong—whether the Federation's interest is adequately represented by the
Secretary. We have held that "[t]he applicant has the burden of
demonstrating inadequate representation, but this burden is 'minimal.'"
*Sierra Club v. Espy*, 18 F.3d 1202, 1207 (5th Cir. 1994). However, "it cannot
be treated as so minimal as to write the requirement completely out of the
rule." *Texas*, 805 F.3d at 661 (quotation omitted). Therefore, we have
"created two presumptions of adequate representation that intervenors must
overcome in appropriate cases." *Id.* (internal quotation marks and citation
omitted). The first presumption applies "when the would-be intervenor has
the same ultimate objective as a party to the lawsuit." *Id.* (internal quotation

No. 21-11271

marks and citation omitted).  The second presumption applies in cases where a party "is presumed to represent the interests of all of its citizens," *Hopwood v. Texas*, 21 F.3d 603, 605 (5th Cir. 1994) (per curiam), such as "when the putative representative is a governmental body or officer charged by law with representing the interests of the [intervenor]," *Texas*, 805 F.3d at 661 (quotation omitted).  This presumption is limited, however, to "suits involving matters of sovereign interest." *Edwards*, 78 F.3d at 1005.

The district court did not explicitly mention these two presumptions, but it noted that "where the party whose representation is said to be inadequate is a governmental agency," the necessary showing of inadequacy needed to be "much stronger." *Miller*, 2021 WL 6129207, at *2 (quotation omitted).  We disagree with this conclusion because the second presumption is not in play in this case, so we need not apply it.[4]

Turning to the first presumption, in order to overcome it, "the applicant for intervention must show adversity of interest, collusion, or nonfeasance on the part of the existing party." *Texas*, 805 F.3d at 661–62 (quotation omitted).  Specifically, "to show adversity of interest, an intervenor must demonstrate that its interests diverge from the putative representative's interests in a manner germane to the case." *Id.* at 662.

---

[4] Although *Hopwood* mentioned "governmental agency" in passing, it involved a case against the State of Texas, not a governmental agency, thus the question of whether a governmental agency can assert a "matter of sovereign interest" was not the issue. *See* 21 F.3d at 605.  Such a question was in play in *Entergy*, which concluded that because the EPA was "a governmental agency and not a sovereign interest," the second presumption was inapplicable. *See* 817 F.3d at 203 n.2.  This case is more like *Entergy*; it involves assistance with loans by a governmental agency, not a sovereign interest.

Given the lack of "sovereign interest" here, we need not address the exact circumstances of when a "sovereign interest" might apply in all instances.  Nor do we address when (or if) a governmental agency might be implicated as a sovereign interest.  Instead, we simply conclude that *Entergy*'s holding applies to the analogous agency at issue here.

No. 21-11271

Undoubtedly, the Secretary and the Federation share the "same ultimate objective"—upholding the constitutionality of § 1005. Therefore, the relevant inquiry is whether the Federation can "show adversity of interest" by demonstrating that its interests diverge from the Secretary's "in a manner germane to the case." *Id.* We conclude that the Federation has made such a showing.

Relevant here, the Secretary maintains that he has provided "evidence of discrimination within the last decade" and discussed reports "highlighting how *past* discrimination continues to disadvantage minority farmers today." However, the Federation is making a meaningfully different argument. Instead of focusing on how *past* discrimination continues to have "lingering effects,"[5] the Federation argues that USDA is *continuing* to actively discriminate against its members. Therefore, the Federation has an interest in taking a position that not only *directly* conflicts with the Secretary's position, but also potentially exposes the agency to liability. That interest is "germane to the case" because evidence of continued discrimination may be highly relevant to proving a "compelling governmental interest." *See Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1275, 1279 (M.D. Fla. 2021) (describing, in a § 1005 case, how "evidence of continued discrimination" may be "crucial"). Yet, this argument is not one the Secretary can reasonably be

---

[5] Indeed, the record demonstrates that the Secretary's position is "*not* that the USDA is continuing to discriminate against minorities"; rather *past* discrimination "has led to . . . lingering effects" that work against minorities. Because the Secretary maintains that the USDA is no longer discriminating against minorities, which is something the Federation disputes, that is strong evidence that the two entities are "staking out a position significantly different" from each other. *See Brumfield*, 749 F.3d at 346 (observing that the government entity conceded an issue that the parent intervenors disagreed with).

No. 21-11271

expected to adopt or support: a U.S. Secretary would likely heartily deny that their agency is *currently* discriminating against people based upon race.[6]

In light of this adversity of interest, we conclude that the Federation has successfully rebutted the first presumption. Given our "broad policy favoring intervention," we hold that the Federation has met its "minimal" burden demonstrating inadequate representation (though we limit this holding to the facts of this case). *See Sierra Club*, 18 F.3d at 1207 (quotation omitted).[7] We therefore REVERSE the district court's denial of intervention as a matter of right and REMAND with the directive to permit the Federation's intervention.

---

[6] It also stands to reason that, if given the opportunity to conduct discovery as a party, the Federation would seek evidence demonstrating current discrimination by the USDA against its members. It is highly unlikely the Secretary would put forth such evidence in the absence of the Federation's intervention.

[7] The Federation also argues that USDA letters sent to its members disclosing the agency's intent to accelerate the members' loans demonstrate a divergence of interest. Whether or not this evidence is germane to the case, as to the first presumption, it provides additional support to overcome the Federation's "minimal" burden. *Sierra Club*, 18 F.3d at 1207 (quotation omitted).

**FILED**

**March 28, 2022**

KAREN MITCHELL
CLERK, U.S. DISTRICT
COURT

# United States Court of Appeals
# for the Fifth Circuit

––––––––––

No. 21-11271

––––––––––

SID MILLER, *on behalf of himself and others similarly situated*; GREG MACHA; JAMES MEEK; LORINDA O'SHAUGHNESSY; JEFF PETERS,

*Plaintiffs—Appellees*,

*versus*

TOM VILSACK, *in his official capacity as* SECRETARY OF AGRICULTURE,

*Defendant—Appellee*,

*versus*

FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND,

*Movant—Appellant.*

––––––––––––––––––––––––

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:21-CV-595 -O

––––––––––––––––––––––––

Before SOUTHWICK, HAYNES, and HIGGINSON, *Circuit Judges*.

J U D G M E N T

No. 21-11271

This cause was considered on the record on appeal and was argued by counsel.

IT IS ORDERED and ADJUDGED that the judgment of the District Court is REVERSED, and the cause is REMANDED to the District Court for further proceedings in accordance with the opinion of this Court.

IT IS FURTHER ORDERED that each party bear its own costs on appeal.

**A True Copy**
**Certified order issued Mar 24, 2022**

*Tyle W. Cayce*

**Clerk, U.S. Court of Appeals, Fifth Circuit**

**Tab 2**

**Order Directing Conferral and
Joint Status Report**

**(ECF Nos. 178 & 184)**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **SID MILLER, et al., on behalf of** | § | |
| **themselves and others similarly situated,** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-0595-O** |
| | § | |
| **TOM VILSACK, in his official capacity** | § | |
| **as Secretary of Agriculture,** | § | |
| | § | |
| **Defendant.** | § | |

**ORDER**

On March 24, 2022, the Fifth Circuit issued a judgment reversing this Court's Order (ECF No. 143) denying the Federation's motion to intervene. *See Miller v. Fed'n of S. Coop.*, No. 21-11271. The Fifth Circuit remanded with instructions to permit the Federation's intervention. In light of the Fifth Circuit's order and opinion, the Court **ORDERS** the parties to meet and confer with the Federation. The parties and the Federation shall file a joint status report no later than **April 1, 2022**, addressing the following issues:

1) what limitations, if any, the Court should place on the Federation's participation in this case;

2) what amendments, if any, the Court should make to the briefing schedule;

3) whether the parties continue to oppose the intervention of the National Black Farmers Association and the Association of American Indian Farmers; and

4) any other issues the Court should consider in light of the Federation's intervention.

**SO ORDERED** on this **25th day** of **March, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

**COURT-ORDERED JOINT STATUS REPORT**

"In light of the Fifth Circuit's order and opinion" reversing the Court's denial of the motion to intervene filed by the Federation of Southern Cooperatives/Land Assistance Fund (the "Federation"), the Court ordered "the parties to meet and confer with the Federation."  ECF No. 178.  The Court further ordered the parties and the Federation to file a joint status report by April 1, 2022 addressing the following issues:

1) what limitations, if any, the Court should place on the Federation's participation in this case;
2) what amendments, if any, the Court should make to the briefing schedule;
3) whether the parties continue to oppose the intervention of the National Black Farmers Association and the Association of American Indian Farmers; and
4) any other issues the Court should consider in light of the Federation's intervention.

Plaintiffs, the Government, and the Federation met and conferred as ordered.  With the benefit of that conferral, Plaintiffs, the Government, and the Federation respond to the issues identified by the Court as follows.

**I.     Limitations on the Federation's participation in this case**

      **A.     Plaintiffs' Position**

The plaintiffs agree with the Government's position with respect the Federation's participation and join the explanation that it provides below. The plaintiffs wish to add one additional observation: It is not appropriate, in the plaintiffs' view, for the Federation to take additional fact discovery because the burden of producing evidence to justify the racial preferences in section 1005 rests entirely with the government, and this task cannot be undertaken by third-party intervenors. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989) ("[T]he city of Richmond . . . can use its spending powers to remedy private discrimination, *if it identifies* that discrimination with the particularity required by the Fourteenth Amendment.*" (emphasis added)); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that *any governmental actor* subject to the Constitution *justify* any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." (emphasis added)); *id.* at 229 ("*Unless Congress clearly articulates the need and basis* for a racial classification, *and also tailors the classification to its justification,* the Court should not uphold this kind of statute." (emphasis in original) (citations and internal quotation marks omitted)); *see also DeOtte v. Azar*, 332 F.R.D. 173, 188 (N.D. Tex. 2019) (noting that under the Religious Freedom Restoration Act, "only the federal government can 'demonstrate' that this burden is '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.' . . . [I]t is Defendant's obligation to carry this burden.").

### B.    The Government's Position

The Court should modify its September 22, 2021 scheduling order to allow for the Federation's full participation in the expert discovery and summary judgment briefing provided by that order. ECF No. 85. Doing so would permit the Federation to fully participate in the case

according to the parameters long agreed to by the parties, ordered by the Court, and proposed by the Federation itself in its motion to intervene, while preventing undue delay in the resolution of this case.

The parties have long agreed that this case could be resolved without conducting fact discovery. On July 16, 2021, two weeks after the Court entered a preliminary injunction, the parties submitted a Joint Scheduling Statement in which they agreed that "factual discovery is [un]necessary" to resolve Plaintiffs' constitutional claim. They therefore proposed deadlines for expert disclosures and summary judgment briefing. Jt. Sch. Stmt. at 2, ECF No. 2. The Court's September 22, 2021 scheduling order adopted the parties' proposals in full.

In the Federation's October 12, 2021, motion to intervene, the Federation represented that its intervention would not upset the existing case schedule. The Federation stated that it did "not seek to re-litigate any prior rulings," Mot. to Interv. at 22, ECF No. 93-1—including, presumably, the Court's prior order setting case deadlines. Consistent with that position, the Federation stated that it sought to introduce two types of evidence to support its defense of § 1005 alongside the government: (1) expert testimony; and (2) testimony concerning "present-day and historical discrimination against minority farmers" through "stories and narratives of Black farmers and other farmers of color." *Id.* at 20; Reply at 6, ECF No. 141 (arguing that "the Federation's members are uniquely positioned to augment the record with their lived experiences"); *see also id.* at 7 (stating that the "Federation has identified specific evidence—direct testimony from present-day, debt burdened Black farmers about their own experiences of discrimination—that" it wished to present); *see also* Mot. to Stay at 11, ECF No. 149 (stating that the Federation intended to "present expert and other testimony"). The Federation did not identify any additional fact discovery as necessary to support any showing of ongoing discrimination.

The government welcomes the Federation's full participation in the case according to the parameters already governing the litigation, which will allow the Federation to present the very evidence it indicated in its intervention motion that it intended to present. The government does not oppose the Federation's introduction of declarations or other testimony from Federation members and other farmers in support of its summary-judgment motion. The government also does not oppose making already-existing expert disclosures to the Federation. To assist the Federation's timely development of its own expert report, the government is prepared to expediently produce the USDA loan data considered by its own expert, Dr. Alicia Robb, in the development of her report. That data includes information broken down by race and ethnicity, and other metrics, covering the years 2000-2010, such as: information related to loan types and collateral required; the number of loan applications received by USDA; the rates of approvals, withdrawals, and rejections of loan applications; metrics used by USDA to assess applicants' credit risk; average dollar amounts of approved loans; loan processing times; interest rates on approved loans; and rates of delinquency on direct loans for the years 2000, 2010, and 2020. The government is prepared to produce this data upon the entry of an appropriate protective order. This loan data covers many of the categories of USDA data identified by the Federation below. Further discovery is not necessary for the Federation to present its case; it can rely on its own members' experiences to support its motion—just as it initially contemplated. *See* Mot. to Interv. at 20, ECF No. 93-1 (saying it would present "stories and narratives of Black farmers and other farmers of color"); Reply at 6-7, ECF No. 141 (saying it would present farmers' "lived experiences" through "direct testimony from present-day, debt burdened Black farmers about their own experiences of discrimination").

Thus, the government respectfully submits that any additional fact discovery is unwarranted—and indeed, opening the case for fact discovery for the first time at this stage of the litigation is likely to unduly delay proceedings. In accordance with Rule 24, if a court "determines that intervention would cause . . . undue delay or prejudice" to the parties, "a federal district court is able to impose almost any condition," including limitations on "conducting discovery." *Franciscan All., Inc. v. Azar*, 414 F. Supp. 3d 928, 940 (N.D. Tex. 2019); *see also Stringfellow v. Concerned Neighbors in Action*, 480 U.S. 370, 373 (1987). The Court should impose that limit here. The parties have proceeded expeditiously since the outset of this case. At the time the Federation filed its reply in support of it motion to intervene—the earliest day on which intervention could have been allowed—there remained just five weeks before opening expert reports were to be exchanged. *See* ECF No. 141 (reply filed Dec. 1, 2021); ECF 146 (Dec. 12, 2021, order extending initial expert report deadline to January 7, 2022). And at that time, there remained just over 14 weeks before motions for summary judgment were due. *See* ECF No. 85 (setting summary judgment deadline of March 11, 2022). The schedule the Court adopts should place the Federation in the position it would have been had intervention not been denied, *see* Mot. to Stay at 5 (stating on December 22, 2021, that intervention at that time would allow the Federation to "fully participate in the proceedings" and "fully exercise its rights as an intervenor" by participating in expert discovery and summary judgment briefing), and should delay proceedings no more than necessary to accomplish that purpose. Consistent with that principle, the Court should set a schedule that requires summary judgment motions to be filed no later than July 10, 2022. In the spirit of cooperation, the government proposes a slightly more generous schedule below.

Here, the fact discovery the Federation proposes for the first time in this litigation is likely to cause undue delay beyond that date. Indeed, the Federation proposes filing its summary judgment motion more than 22 weeks from today. And although the Federation describes its proffered discovery as "limited" and "targeted," much of it in fact appears quite broad. For instance, the Federation intends to make  requests for "[d]ocuments regarding USDA's efforts to identify and remedy racial discrimination, including but not limited to discrimination identified in *Pigford* and the Jackson Lewis report." In discussions between counsel for the Federation and the Government, the Federation confirmed that the scope of documents falling under this category is extraordinarily broad and would go well beyond the materials underlying the government's expert reports. If the Federation were to propound such discovery, attempting to satisfy their requests would likely prove extremely burdensome and time consuming, and could potentially require the Court to intervene.

The Federation also lists below several broad-ranging categories of USDA loan data. Again, some of this data will already be provided to the Federation through the government's disclosure of its expert data. Requests for several other categories of data beyond what is included in that disclosure are likely to unnecessarily elongate discovery and delay resolution of the case. The government believes that the discovery deadlines proposed by the Federation would not provide sufficient time to conduct the searches necessary to produce documents and data responsive to the broad range of categories of documents listed below and prepare for five depositions of fact witness. USDA does not maintain data of every type that the Federation seeks in a single database, and would have to perform data queries on multiple aging data systems that rely on 1980s-era technology. This means that much of the data is not readily accessible and requires special knowledge to locate and merge from incompatible or obsolete file formats, and to

6

assess for completeness and accuracy. Responding to the requests the Federation outlines would impose a substantial burden on the agency and likely could not be completed in the time the Federation contemplates—potentially necessitating further extensions or ancillary litigation in this Court over discovery matters that might further delay resolution of this important case.

Such delays would prejudice the government and the farmers § 1005 aims to assist. As the government urged in its opposition to Plaintiffs' preliminary-injunction motion, the disadvantaged farmers who stand to receive § 1005 funds have a strong interest in receiving such funds expeditiously, to prevent further harm caused by the government's past discrimination in its USDA farm loan programs. *See* Def.'s Opp. to Pls.' PI Mot. at 33-34, ECF No. 27. And the government itself has a strong interest in implementing the statute enacted by elected representatives. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012) ("Any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."). The Federation has likewise acknowledged the need for efficient resolution of the case, emphasizing in its motion to intervene that its participation would not cause "any undue delay or prejudice." Mot. at 22. Thus, the parties and the Federation have been in agreement that the legal questions at issue in this case can and should be resolved expeditiously. Modifying the Court's September 22, 2021 scheduling order to permit the Federation to engage in expert discovery and summary judgment briefing alongside the parties would be consistent with the parties' shared interests in preventing unnecessary delay and with allowing for the Federation's full participation the case.

### C.      The Federation's Position

The Court should allow the Federation to (a) conduct targeted fact and expert discovery concerning recent and ongoing discrimination by the Department of Agriculture (USDA); (b)

move for summary judgment; and (c) otherwise participate in all case proceedings going forward. Allowing the Federation to participate in this manner coheres with the Court's power to impose "reasonable" conditions on intervenors of right.  *See Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997).  In the Federation's view, denying the Federation an opportunity to conduct targeted discovery and move for summary judgment would be an "unreasonable" condition. *See Columbus-Am. Disc. Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) (holding that even if conditions on intervenors of right "are ever proper," the denial of discovery was a "clearly unreasonable" condition).

Allowing targeted discovery is consistent with the Fifth Circuit's mandate.  The lynchpin of the Fifth Circuit's analysis was the Federation's interest in presenting evidence of current discrimination by the USDA; that evidence will not be presented unless the Court allows the Federation to conduct targeted discovery.  *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. 2022).  To that end, the Fifth Circuit described evidence of current discrimination as "germane to the case because evidence of continued discrimination may be highly relevant to proving a compelling governmental interest."  *Id.*  (quotation omitted).  The Fifth Circuit even contemplated the Federation's right to "seek evidence demonstrating current discrimination by the USDA "if given the opportunity to conduct discovery as a party." *Id.* at *3 n.6; *see also* Oral Argument Recording at 3:48–3:56 ("You would get to do discovery if you were a party.  Isn't that the most critical thing you get as a party you don't get as an amicus?") (Haynes, J.).[1]

Consistent with the Fifth Circuit's opinion and mandate, as well as this Court's power to impose "reasonable" limitations, the Federation intends to pursue three categories of targeted discovery.  The Federation needs this targeted discovery to uncover the evidence of continued

---

[1] https://www.ca5.uscourts.gov/OralArgRecordings/21/21-11271_3-7-2022.mp3

discrimination that the Fifth Circuit recognized "may be highly relevant to proving a compelling governmental interest."  *See Miller*, 2022 WL 851782, at *3 (quotation omitted).  Importantly, the Federation should not be limited to expert discovery only.  "Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause," *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977), and limited, targeted fact discovery will greatly enhance the Federation's ability to prove intent.   The Federation requests the following discovery:

- Loan data from 2010 to present, to include at least the following:
    - Data on applications for Farm Services Agency (FSA) loans (both direct and guaranteed), including data on applications approved/denied, disbursement amounts, conditions on use of funds, and length of time to approval/denial and disbursement of funds, with demographic data sufficient to identify racial disparities;
    - Farm ownership data;
    - Annual data on FSA and Farm Storage Facility Loan (FSFL) loan delinquencies/defaults; and
    - Any data reviewed by Defendant's experts.
- Declarations
    - Declarations or other testimony from Federation members and other farmers regarding the experiences of Black farmers and other Socially Disadvantaged Farmers and Ranchers of racial discrimination in USDA and/or FSA lending programs.
- Other limited discovery

o Documents regarding USDA's efforts to identify and remedy racial discrimination, including but not limited to discrimination identified in *Pigford* and the Jackson Lewis report; and

o No more than five depositions of USDA officials and/or FSA staff and county committee members regarding complaints of racial discrimination and efforts to identify and remedy racial discrimination;

o Depositions of any experts designated by Plaintiffs; and

o Depositions of any experts who submit a rebuttal report to the Federation's expert(s) on behalf of any party.

Allowing the Federation to conduct the limited discovery described above will not prejudice the Plaintiffs or the Government.  The Plaintiffs will not be prejudiced because the Court's preliminary injunction will continue to prevent the Secretary from implementing Section 1005 at least until this Court renders a summary-judgment decision.  Nor will the Government be prejudiced.  Allowing the Federation to conduct the limited discovery outlined above will advance the Government's interest in successfully defending Section 1005, and the short delay necessary to allow such discovery will not harm the Government, which does not stand to directly gain or lose anything from the outcome of this litigation, and will indeed be no longer than necessary given the Federation's interest in obtaining for its members the loan-forgiveness promised by Section 1005 as expeditiously possible.

## II.    Amendments to the briefing schedule

### A.    Plaintiffs' Position

The plaintiffs agree with the amendments to the briefing schedule proposed by the Government below.

**B.      The Government's Position**

The Court should modify its September 22, 2021 Scheduling Order to allow for the Federation's full participation in the expert discovery and summary judgment briefing on terms commensurate with the needs of the case and the parties' previous schedule, and to place the Federation in the same position it would have been in had its motion to intervene been granted in December 2021. The government proposes the following modified schedule:

- Subject to the timely entry of a stipulated protective order, the government will provide data considered by its expert under Rule 26(a)(2)(B) by April 8, 2022.

- Deadline for the Federation's expert designation, if any: May 15, 2022

- Deadline for rebuttal reports, if any: June 5, 2022.

- Close of expert discovery: June 26, 2022.

- The Federation's motion for summary judgment: July 17, 2022.

- The parties' and the Federations' responses to the cross-motions for summary judgment: August 2, 2022.

**C.      The Federation's Position**

The Court should suspend the briefing schedule and reopen limited discovery to afford the Federation an opportunity to seek targeted discovery on current discrimination by the USDA.  At the very least, the Court should place the Federation in the position it would have occupied had the Court not denied intervention.  The Federation thus requests that the Court reopen discovery and enter a modified scheduling order as follows:

- The Secretary to Provide Loan Data to the Federation: 10 business days (April 15, 2022)

- Expert Designations:  June 10, 2022 (8 weeks following receipt of substantially complete and usable loan data from the Secretary)[2]

- Rebuttal Expert Reports: July 8, 2022

- Close of Fact Discovery:    July 29, 2022

- Close of Expert Discovery:  August 5, 2022

- Motions for Summary Judgment:    September 2, 2022

To the extent the Court is disinclined to reopen discovery or alter the briefing schedule, the Federation would respectfully request the opportunity to brief the issue independently of this joint status report.

## III.    Opposition to the Intervention of the National Black Farmers Association and the Association of American Indian Farmers

### A.    Plaintiffs' Position

The plaintiffs no longer oppose intervention by the National Black Farmers Association and the Associations of American Indian Farmers.

### B.    The Government's Position

The government opposes intervention by the National Black Farmers Association and the Associations of American Indian Farmers and will file a brief in opposition to their intervention by April 15, 2022, pursuant to the Court's Order. ECF No. 175.

### C.    The Federation's Position

The Federation does not take a position on the National Black Farmers Association's and Associations of American Indian Farmers' motion to intervene.

---

[2] The Federation has retained an expert who estimates that it will take approximately eight weeks to analyze the loan data sought from the Government and prepare a report.  The Federation respectfully reserves the right to seek an extension if the Government does not timely provide complete and adequate data.

IV.     **Other issues the Court should consider in light of the Federation's intervention**

A.      **Plaintiffs' Position**

The plaintiffs do not believe there are other issues that the Court needs to consider beyond those discussed above.

B.      **The Government's Position**

The government respectfully submits that no further briefing is necessary prior to entry of a scheduling order.

C.      **The Federation's Position**

To the extent the Court is inclined to deny the Federation the opportunity to participate in this litigation in the manner described above, the Federation would respectfully request that the Court enter a schedule to brief the issue more fully before imposing additional limitations on the Federation.

Dated: April 1, 2022                              Respectfully submitted,

 /s/ Jonathan F. Mitchell                          BRIAN M. BOYNTON
Jonathan F. Mitchell                               Principal Deputy Assistant Attorney General
Texas Bar No. 24075463
Mitchell Law PLLC                                  LESLEY FARBY
111 Congress Avenue, Suite 400                     Assistant Branch Director
Austin, Texas 78701                                Civil Division, Federal Programs Branch
(512) 686-3940 (phone)
(512) 686-3941 (fax)                                /s/ Kyla M. Snow
                                                   KYLA M. SNOW (Ohio Bar No. 96662)
Gene P. Hamilton                                   MICHAEL F. KNAPP (Cal. Bar No. 314104)
Virginia Bar No. 80434                             ALEXANDER V. SVERDLOV
Vice-President and General Counsel                   (NY BAR 4918793)
America First Legal Foundation                     Trial Attorneys
300 Independence Avenue SE                          United States Department of Justice
Washington, DC 20003                               Civil Division, Federal Programs Branch
(202) 964-3721                                     1100 L Street, NW
gene.hamilton@aflegal.org                          Washington, D.C. 20005

                                                   ***Counsel for Defendant***

13

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

**Counsel for Plaintiffs and the
Proposed Classes**

                                      */s/ Chase J. Cooper*
Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP

333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 1, 2021, which will serve all counsel of record.


*/s/ Jonathan F. Mitchell*
Jonathan F. Mitchell

**Tab 3**

**Scheduling Order**

**(ECF No. 186)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| Defendant, | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND, | § § § | |
| Intervenor Defendant. | § § | |

## ORDER

On April 1, 2022, the parties filed a Joint Status Report (ECF No. 184). The parties propose various amendments to the Court's scheduling order.

The parties—including the Federation—have long agreed that fact discovery is unnecessary in this case. On July 16, 2021, the original parties submitted a joint status report saying they "do not believe factual discovery is necessary," and that expert testimony would be sufficient. J. Status Report 2, ECF No. 70. They thus proposed deadlines for expert disclosures and summary judgment briefing. *See id.* at 3. On September 22, after further briefing that narrowed the litigation, the Court issued a scheduling order that adopted the parties' proposals. *See* Scheduling Order, ECF No. 85. Three weeks later, the Federation moved to intervene. *See* Federation's Mot. to Intervene, ECF No. 93-1.

The Federation consistently represented that its intervention would not upset the Court's scheduling order. The Federation said it "does not seek to relitigate any prior rulings" of the Court. *Id.* at 27. The Federation also did not object to the parties' stipulation that fact discovery is unnecessary. Instead, the Federation repeatedly stated that, if permitted to intervene, it would present evidence in two forms: (1) expert testimony; and (2) "direct testimony from present-day, debt-burdened Black farmers about their own experiences of discrimination." Federation's Reply in Support of Intervention 7, ECF No. 141. The Federation has held that position throughout the intervention litigation, including on appeal.[1]

On April 1, 2022, the Federation changed its position. The Federation now requests that in addition to reopening expert discovery and summary judgment briefing, the Court reopen fact discovery. *See* J. Status Report 9–10, ECF No. 184. The Federation wishes "to conduct targeted discovery" seeking evidence of current discrimination by the Department of Agriculture. *Id.* at 8. In addition to expert discovery, the Federation now wants "[d]ocuments regarding USDA's efforts to identify and remedy racial discrimination," and depositions of government officials. *Id.* at 10. The Court denies the Federation's request to reopen fact discovery for several independent reasons.

First, the Federation consistently represented that it would not relitigate prior rulings, which include the Court's scheduling order limiting discovery to expert testimony. Plaintiffs and

---

[1] *See, e.g.*, Mot. to Intervene 25, ECF No. 93-1 (saying it will supplement the record with "stories or narratives of Black farmers or other farmers of color"); *id.* (citing declarations of "victims of . . . discrimination" as examples of the evidence it will present); Reply Br. 8, ECF No. 141 (arguing party status is necessary for the Federation to "present evidence concerning the lived experiences of the present-day [socially disadvantaged farmers and ranchers]"); *id.* at 7 (saying it will introduce "direct testimony" of black farmers and "expert testimony" supporting its position); Mot. to Stay 12 (ECF No. 149) (representing that, if allowed to intervene, it plans to "participat[e] in expert discovery and . . . summary judgment briefing"); App. Mot. to Stay 13, *Miller v. Vilsack*, No. 21-11271 (5th Cir. Jan. 7, 2022) (moving to stay the Court's proceedings to preserve its opportunity "to fully participate in vital proceedings, including expert discovery and, perhaps, summary judgment motions"); App. Br. 30, *Miller*, No. 21-11271 (representing that, if allowed to intervene, it "would present testimonial and statistical evidence" of discrimination).

Defendant stipulated that fact discovery was unnecessary, and the Federation did not object. Indeed, Defendant agreed to permissive intervention specifically because he "[did] not understand the Federation to be asking to participate in a manner that would involve seeking fact discovery." Def.'s Resp. to Mot. to Intervene 18, ECF No. 136. The Federation accepted Defendant's concession without correction. *See* Federation's Reply Br. 9–10, ECF No. 141. The Federation thus allowed everyone—including the Fifth Circuit—to believe that it sought no more discovery than what the original parties agreed to. Now, it asks for more. The Court declines that request.

Second, the Federation moved to intervene after the Court closed the possibility of fact discovery. "[A]n intervenor must accept the proceedings as he finds them." *Petition of Geisser*, 554 F.2d 698, 705 (5th Cir. 1977). The relevant point in time is the moment the party moves to intervene: "prejudice must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation." *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1994). The Federation moved to intervene well after the parties had agreed that fact discovery was unnecessary, and well after the Court's scheduling order. When the Federation moved to intervene, expert discovery was underway and summary judgment briefing had not yet begun. Thus, the Federation's intervention at most preserved its opportunity to participate in expert discovery and summary judgment briefing. It does not grant the Federation the "right to relitigate issues already decided." *Espy*, 18 F.3d at 1206.

Third, the Federation does not have the inherent right to reopen discovery. The Fifth Circuit has repeatedly held that the prejudice of "renewed discovery" is not valid grounds for denying intervention because a party has "no right" to renewed discovery. *John Doe No. 1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001) (quoting *Espy*, 18 F.3d at 1206). Permitting the Federation to reopen fact discovery would defeat that rule.

Fourth, the Court can impose reasonable conditions on the Federation's participation. "[I]t is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 352–53 (5th Cir. 1997). Defendant agreed to permissive intervention subject to the "reasonable conditions" that the Federation would not "(1) assert any new claims or cross-claims in this matter, (2) seek to conduct fact discovery or written expert discovery, or (3) otherwise disrupt the schedule this Court entered without agreement of the parties or the Court's approval." Def.'s Resp. to Mot. to Intervene 19, ECF No. 136. Defendant even believed those limitations "would [not] be objectionable to the Federation." *Id.* at 18. And they were not—the Federation once again acknowledged Defendant's concession without objecting to those limitations. The Court finds that those conditions remain reasonable.

Fifth, the Federation has failed to show good cause to amend the scheduling order to reopen fact discovery. The Court's preliminary injunction will remain in place for the duration of this lawsuit. The parties thus have a strong interest in expeditious resolution of this case. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012). Reopening fact discovery will severely delay briefing, trial on the merits, and final resolution. According to Defendant, complying with the Federation's proposed discovery "would likely prove extremely burdensome and time consuming, and could potentially require the Court to intervene." J. Status Report 6, ECF No. 184. The Federation proposes filing its summary judgment brief five months from now. *Id.* at 12. And Defendant says that still "would not provide sufficient time to conduct the searches necessary to produce documents and data responsive to the broad range of categories of documents . . . and prepare for five depositions of fact witness." *Id.* at 6. The Federation's proposed deadlines will likely delay resolution of this case, perhaps indefinitely. In light of the Federation's agreement that the Court

should resolve the legal issues in this case efficiently, the Court finds that the Federation has not shown good cause to amend the scheduling order to reopen fact discovery.

Sixth, the Fifth Circuit's opinion and judgment do not require the Court to reopen fact discovery. The Federation argues that "[a]llowing targeted discovery is consistent with the Fifth Circuit's mandate," because evidence of current discrimination "will not be presented unless the Court allows the Federation to conduct targeted discovery." *Id.* at 8. That is inaccurate. The Federation will be allowed to participate in expert discovery and submit declarations supporting its claims of present-day discrimination. The Federation will thus receive the discovery it has asked for this entire lawsuit, and the same discovery the other parties have received. Nothing in the Fifth Circuit's opinion contemplates *fact* discovery. That is unsurprising, because until now the Federation has not asked for fact discovery. *See supra* note 1.

In sum, the Court declines to reopen fact discovery in issuing the new scheduling order. The parties, including the Federation, have long represented that this case can and should be resolved through expert testimony and briefing. The Federation will receive what it has asked for, what the parties have agreed to, and what is necessary for the resolution of this case. Accordingly, the Court **ORDERS** the following schedule:

| Event | Deadline |
|---|---|
| Loan data disclosure | April 15 |
| Expert designations | May 15 |
| Rebuttal expert reports | June 5 |
| Close expert discovery | June 26 |
| Cross-MSJ briefs | July 17 |
| Cross-response briefs | August 2 |

Finally, the Court notes that it will not lightly entertain requests for protective orders. Defendant says he will provide data considered by the experts "[s]ubject to the timely entry of a stipulated protective order." J. Status Report 11, ECF No. 184. This Court routinely declines to convert an agreement of the parties into a court order. This practice does not leave the parties without recourse. First, the parties may agree to any confidentiality or discovery-related contract among themselves without devoting judicial resources to the matter. *See Davis v. City of Fort Worth*, No. 4:14-cv-491-A, 2014 WL 12940678, at *3 (N.D. Tex. July 3, 2014).

Second, a party may move for leave to file a specific document under seal with a memorandum outlining the good cause for the document to be sealed from public. The motion must be supported by legal authorities and relevant facts verified by oath or declaration of a person with personal knowledge. *See United States v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) ("Public confidence in our judicial system cannot long be maintained where important judicial decisions are made behind closed doors and then announced in conclusive terms to the public, with the record supporting the court's decision sealed from public view." (cleaned up)); *Binh Hoa Le v. Exeter Fin. Corp.*, No. 20-10377, 2021 WL 838266, at *8 (5th Cir. Mar. 5, 2021) ("[W]hen materials enter the court record, the standard for shielding records from public view is far more arduous.").

**SO ORDERED** on this **5th day** of **April, 2022**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**Tab 4**

**The Federation's Motion for Reconsideration
and Supporting Documents**

**(ECF Nos. 187, 187-1, 187-2, and 187-3)**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## THE FEDERATION'S MOTION FOR RECONSIDERATION

For the reasons given in the accompanying brief, the Federation of Southern Cooperatives/Land Assistance Fund (the "Federation") moves the Court to reconsider its denial of fact discovery and to extend the expert-designation deadline to eight weeks from the date on which the Secretary produces complete and usable loan data.

Dated: April 13, 2022

Respectfully submitted,

*/s/ Chase J. Cooper*
Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive

Chicago, IL 60601
P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Andrew E. Tauber (*pro hac vice forthcoming*)
NY Bar No. 3905676
atauber@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
P: 202-282-5000

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

*/s/ Dorian L. Spence*
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

2

/s/ Mark D. Rosenbaum
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

**Counsel for Intervenor of Right The Federation of Southern Cooperatives/Land Assistance Fund**

## CERTIFICATE OF CONFERENCE

On April 13, 2022, counsel for the Federation conferred via phone with counsel for Defendant.  Counsel for Defendant stated that Defendant opposes the Federation's motion for reconsideration.  On April 11, 2022, counsel for the Federation left a voicemail for counsel for Plaintiffs requesting Plaintiffs' position on the motion.  As of this filing, counsel for Plaintiffs has not responded with Plaintiffs' position.

/s/ Chase J. Cooper
Chase J. Cooper

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 13, 2022, which will serve all counsel of record.

/s/ Chase J. Cooper
Chase J. Cooper

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant*. | |

**BRIEF IN SUPPORT OF THE FEDERATION'S MOTION
FOR RECONSIDERATION**

## <u>TABLE OF CONTENTS</u>

I.    Introduction ............................................................................................................ 1

II.   Background ............................................................................................................. 2

III.  Legal Standard ....................................................................................................... 4

IV.  Argument ............................................................................................................... 4

      A.     The Federation Requests Targeted Fact Discovery ................................... 4

             1.     The Federation Did Not Waive Its Right to Seek Fact Discovery ............. 5

             2.     The Fifth Circuit's Opinion Expressly Contemplates that the Federation Would Be Permitted to Seek Fact Discovery .......................... 7

             3.     The Federation Has Shown Good Cause for Limited Fact Discovery ............................................................................................. 10

      B.     The Federation Respectfully Requests an Extension on the Deadline for Expert Designations ................................................................................ 13

V.   Conclusion ........................................................................................................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Austin v. Kroger Tex., L.P.*,
    864 F.3d 326 (5th Cir. 2017) ...................................................................................4

*Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*,
    974 F.2d 450 (4th Cir. 1992) .........................................................................10, 13

*Doe #1 v. Glickman*,
    256 F.3d 371 (5th Cir. 2001) ...................................................................................6

*Petition of Geisser*,
    554 F.2d 698 (5th Cir. 1977) ...................................................................................6

*Miller v. Vilsack*,
    No. 21-11271 (5th Cir. Mar. 22, 2022).......................................................... *passim*

*Perez v. Stephens*,
    784 F.3d 276 (5th Cir. 2016) .................................................................................10

*Sierra Club v. Espy*,
    18 F.3d 1202 (5th Cir. 1977) ...................................................................................6

*M.D. ex rel. Stukenberg v. Abbott*,
    977 F.3d 479 (5th Cir. 2020) .................................................................................10

*United States v. City of L.A.*,
    288 F.3d 391 (9th Cir. 2002) .................................................................................13

*Wynn v. Vilsack*,
    545 F. Supp. 3d 1271 (M.D. Fla. 2021).................................................................8

**Statutes**

Am. Rescue Plan Act of 2021, Pub. L. No. 117-2,
    § 1005(a)(2), 135 Stat. 4 ............................................................................ *passim*

**Other Authorities**

Black's Law Dictionary (11th ed. 2019)...........................................................................6

Fed. R. Civ. P. 26.............................................................................................................13

Fed. R. Civ. P. 54...............................................................................................................4

Fed. R. Civ. P. 54(b) ..........................................................................................................4

Fed. R. Civ. P. 59 ...............................................................................................................4

Fed. R. Civ. P. 60 ...............................................................................................................4

## I.    Introduction

The Federation of Southern Cooperatives/Land Assistance Fund (the "Federation") respectfully moves for reconsideration of the Court's April 5, 2022 scheduling order (ECF No. 186).[1] In particular, the Federation asks that the Court allow the Federation to conduct targeted fact discovery and extend the expert-designation deadline to eight weeks from the date on which the Secretary produces complete and usable loan data.

Denying the Federation the fact discovery that it has requested is an unreasonable limit on the Federation's participation in this case as an intervenor of right. This Court "closed the possibility of fact discovery" (ECF No. 186 at 3) based on an agreement made before the Federation intervened by parties whose interests are directly adverse to the Federation's. Denying the Federation the opportunity to conduct fact discovery denies the Federation due process and is inconsistent with the letter and spirit of the Fifth Circuit's mandate directing this Court to allow the Federation to intervene as a matter of right. The Fifth Circuit explicitly found that evidence of current discrimination—the very evidence that the Federation intends to obtain through fact discovery—"may be highly relevant" to defending Section 1005 of the American Rescue Plan Act (ARPA), that, despite its conceded relevance, the Secretary has a motivation *not* to present such evidence to the Court, *and* that the Secretary's institutional interest in not presenting such relevant evidence makes him an inadequate representative of the Federation's interests. Thus, the Fifth Circuit expressly contemplated that, once allowed to intervene, the Federation would seek evidence of current discrimination against minority farmers, since no other party would put forth this potentially crucial evidence. Accordingly, the Federation respectfully requests that this Court reconsider its decision to bar fact discovery and permit the Federation to conduct the targeted fact

---

[1] Unless otherwise specified, all ECF references are to the proceedings in this case, *Miller v. Vilsack*, No. 4:21-CV-595-O.

discovery that it requested in the parties' Joint Status Report—discovery that is already severely limited in both time and scope compared to what would ordinarily be expected in litigation of this magnitude.

The Federation also requests a brief extension of time based on its expert's representations regarding the time reasonably needed to prepare his report.

## II.    Background

On October 12, 2021, a month before Plaintiffs filed the operative Third Amended Complaint, the Federation—an association of Black farmers—filed a motion seeking intervention as of right or, in the alternative, permissive intervention. (ECF No. 93).

On December 8, 2021, this Court denied the Federation's motion. (ECF No. 143). On December 17, 2021, the Federation filed its notice of appeal and, shortly thereafter, a motion to expedite consideration of its appeal. Motion to Expedite, at 1, *Miller v. Vilsack*, No. 21-11271 (5th Cir. Dec. 28, 2021), ECF No. 516144118. The Fifth Circuit granted the motion to expedite on December 28, 2021. Order, at 1, *Miller v. Vilsack*, No. 21-11271 (5th Cir. Dec. 28, 2021), ECF No. 516147083. On March 7, 2022, the Fifth Circuit heard oral argument, during which Judge Haynes observed that "get[ting] to do discovery" would be "the most critical thing" the Federation would get were it allowed to intervene. 5th Cir. Oral Argument Recording at 3:48–3:56.[2]

On March 11, 2022, four days after the Fifth Circuit heard oral argument on the Federation's appeal, Plaintiffs and the Secretary filed cross-motions for summary judgment. (ECF Nos. 167, 169).

On March 22, 2022, the Fifth Circuit held that this Court erred in denying the Federation's motion to intervene as a matter of right and remanded the case "with the directive to permit the

---

[2] https://www.ca5.uscourts.gov/OralArgRecordings/21/21-11271_3-7-2022.mp3.

Federation's intervention." Slip Opinion, at 8, *Miller v. Vilsack*, No. 21-11271 (5th Cir. Mar. 22, 2022), ECF No. 516249606 ("Slip Op."). Specifically, the Fifth Circuit held that the Secretary was an "inadequate representati[ve]" of the Federation's interests because he is unlikely to present evidence "that USDA is *continuing* to actively discriminate against its members"—evidence that the court held was "'germane to the case' because evidence of continued discrimination may be highly relevant to proving a 'compelling government interest'" in race-conscious debt relief. *Id.* at 7 (emphasis in original). The court of appeals recognized that "if given the opportunity to conduct discovery," *i.e.*, if allowed to intervene, "the Federation would seek evidence demonstrating current discrimination by the USDA against its members." *Id.* at 8 n.6.

On March 24, 2022, the Federation filed an emergency motion for immediate issuance of the mandate, which the Fifth Circuit granted that same day. (ECF No. 179).

On March 25, 2022, the Court ordered the parties, including the Federation, to confer and submit a joint status report to the Court. (ECF No. 178). The parties conferred and filed a joint motion to suspend the existing summary judgment briefing schedule until the parties proposed a new schedule that included the Federation. (ECF No. 182). The Court granted the motion to suspend the existing summary judgment briefing schedule and ordered the parties to propose an amended schedule in their status report. (ECF No. 183).

On April 1, 2022, the parties submitted a joint status report. (ECF No. 184). In the report, the Federation requested limited discovery, including documents regarding USDA's efforts to identify and remedy racial discrimination since resolution of the *Pigford* litigation and five depositions of USDA and/or FSA staff or county committee members regarding racial discrimination. *Id.* at 9–10. The Federation proposed that the parties would conclude all discovery and file their motions for summary judgment on September 2, 2022, approximately six weeks after

Plaintiff's and the Secretary's proposed filing date. *Id.* at 11–12. Plaintiffs and the Secretary opposed any fact discovery. *Id.* at 2, 5.

The Court "decline[d] to reopen fact discovery." (ECF No. 186). The Court ordered "Loan data disclosure" by April 15, 2022; expert designations by May 15, 2022; and summary judgment briefs filed by July 17, 2022. *Id.* at 4.

## III.   Legal Standard

When the Court is asked to reconsider an order other than a final judgment, that reconsideration is governed by Federal Rule of Civil Procedure 54(b), as opposed to Rule 59 or Rule 60. *See Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). "Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[ ] at any time' 'any order or other decision . . . [that] does not end the action.'" *Id.* (quoting Fed. R. Civ. P. 54(b)). Recognizing the interlocutory nature of rulings entered before final judgment, Rule 54 allows a district court "to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law." *Id.* (quoting *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.,* 37 F.3d 1069 (5th Cir. 1994) (en banc)).

## IV.   Argument

### A.   The Federation Requests Targeted Fact Discovery

The Federation respectfully requests that the Court reconsider its order prohibiting all fact discovery in this case. Denying the Federation the opportunity to conduct limited fact discovery is an unreasonable limitation on its participation in the case. The Federation did not waive its right to seek fact discovery, and it is not bound by any agreement between Plaintiffs and the Secretary regarding the scope and timing of discovery. Indeed, the Fifth Circuit found the Secretary to be an

inadequate representative of the Federation's interests precisely because "[i]t is highly unlikely that the Secretary would put forth . . . evidence" of "current discrimination by the USDA against its members." (Slip Op. at 8 n.6). The Fifth Circuit recognized that such evidence "is 'germane to the case' because evidence of continued discrimination may be highly relevant to proving a 'compelling government interest'" in race-conscious debt relief and that, "if given the opportunity to conduct discovery as a party, the Federation would seek evidence demonstrating current discrimination by the USDA." *Id.* at 7 & 8 n.6. Preventing the Federation from now conducting targeted discovery designed to uncover the very evidence that the Fifth Circuit identified as the basis for allowing the Federation to intervene would violate the letter and spirit of the Fifth Circuit's mandate.

### 1.      The Federation Did Not Waive Its Right to Seek Fact Discovery

Contrary to what the Court suggested in its order denying fact discovery, the Federation never agreed that "fact discovery is unnecessary in this case." (ECF No. 186 at 1.) *Before* the Federation joined the case as a party, Plaintiffs and the Secretary agreed to limit discovery to expert testimony and jointly proposed a corresponding schedule to the Court. *Id.* The Federation was not a party to that agreement and is not bound by it.

When it sought to intervene, the Federation—recognizing the Court's prior rulings on class certification and Plaintiffs' request for a preliminary injunction—stated that it did "not seek to relitigate any prior rulings." (EFC No. 93-1 at 27). And that remains true: the Federation does not seek to relitigate any of the *rulings* issued before the Federation's motion to intervene.

However, the Federation's disavowal of any intent to relitigate prior *rulings* cannot reasonably be read as waiving the Federation's right to conduct fact discovery. The Court's September 22, 2021 scheduling order—which allows no time for fact discovery—did not resolve any factual or legal disputes. On the contrary, it was adopted "[i]n accordance with the parties'

5

*Joint* Scheduling Statement." (ECF No. 85 at 1) (emphasis added). The term "ruling" is "ordinarily used to signify the outcome of applying a legal test." Black's Law Dictionary (11th ed. 2019). Because the Court did not "apply[] a legal test" in any meaningful sense when adopting the discovery schedule jointly proposed by Plaintiffs and the Secretary, its scheduling order is not a "ruling" within the meaning of the Federation's statement.[3]

None of the authorities cited by the Court are to the contrary. Quoting *Petition of Geisser*, 554 F.2d 698, 705 n.6 (5th Cir. 1977), *Sierra Club v. Espy*, 18 F.3d 1202, 1206 (5th Cir. 1977), and *Doe #1 v. Glickman*, 256 F.3d 371, 378 (5th Cir. 2001), this Court held that the Federation "has 'no right' to renewed discovery" because "'an intervenor must accept the proceedings as he finds them'" and thus has "'no[] . . . right to relitigate issues already decided.'" (ECF No. 186 at 3). The Court read the cited authority too broadly. *Geisser*, in which it was first articulated, makes clear that the underlying principle—that an intervenor has no right "to relitigate issues already decided"—encompasses only contested issues *actually decided* by a court. As relevant here, the question in *Geisser* was whether an intervenor could challenge an adverse "factual finding" that was made and affirmed on appeal prior to its intervention. 554 F.2d at 705 n.6.[4] Nothing in *Geisser* or its progeny suggests that an intervenor is bound by any stipulation between the initial parties— much less a stipulation foreswearing concededly relevant discovery (*cf.* 5th Cir. Oral Arg. Rec. 21:53–22:15) that was entered into by a party found as a matter of law to be an inadequate

---

[3] To the contrary, when the Federation said that it would not challenge the Court's prior "rulings," it reasonably expected that—as has proven true (*cf.* ECF No. 186)—a new scheduling order would be entered were it permitted to intervene.

[4] Specifically, the issue was whether Switzerland, which intervened on the side of the United States in opposing a habeas petition, could challenge the district court's earlier determination that an integral part of a plea agreement required the U.S. government to use its best efforts to prevent extradition of the habeas petitioner to Switzerland. *See Geisser*, 554 F.2d at 699, 705 n.6.

6

representative of the intervenor's interest precisely because that party has an institutional interest in not presenting the very evidence that such discovery would uncover. (Slip Op. 7–8).

Notwithstanding this Court's conclusion to the contrary, the fact that the Federation "did not object" to the original parties' joint stipulation "that fact discovery is unnecessary" is immaterial. (ECF No. 186 at 2, 3). At the time of the stipulation, the Federation was not a party to the case and therefore could not object. The Federation is unaware of any procedural mechanism allowing a non-party to object to a proposed scheduling order, nor of any authority for the proposition that a non-party's failure to object to a stipulation between then-existing parties constitutes a waiver of its rights in the event it later becomes a party.

Finally, the Court erred by relying on statements made *by the Secretary* in its opposition to the Federation's motion to intervene. The Secretary's "understand[ing]" (ECF No. 186 at 3) of the Federation's position on fact discovery has no bearing on the Federation's rights, especially given the "adversity of interest" between the Secretary and the Federation on that very issue. (Slip. Op. at 8).[5]

### 2.    The Fifth Circuit's Opinion Expressly Contemplates that the Federation Would Be Permitted to Seek Fact Discovery

Regardless of whether the Federation previously sought fact discovery, reconsideration also is necessary in light of the Fifth Circuit's opinion and mandate granting the Federation intervention as of right. The Fifth Circuit held that the Secretary was an inadequate representative of the Federation's interests because the Secretary's interests were adverse to those of the

---

[5] The Federation also disputes that failing to respond directly to the Secretary's statement regarding discovery constitutes acquiescence to that statement. (ECF No. 186 at 3). It is unreasonable to expect a litigant to respond to each and every statement made in an opposition brief, no matter how tangential, and equally unreasonable to construe silence as acceptance in this context.

Federation's in a way that directly implicates the Federation's entitlement to fact discovery. (Slip Op. at 8–9). This holding has a number of implications.

First, any prior agreement made by the Secretary with Plaintiffs to preclude fact discovery does not bind the Federation and, in fact, is contrary to the Federation's interests. As a matter of law, the Secretary's institutional interests are adverse to the Federation's case-specific interest in introducing evidence of current discrimination by the USDA. (Slip. Op. at 7–8). The Federation's intent to introduce evidence of current discrimination "not only *directly* conflicts with the Secretary's position, [it also] potentially exposes the agency to liability." *Id.* at 7 (emphasis in original). In other words, the Fifth Circuit decision mandating that the Federation be allowed to intervene rests on its recognition that the Secretary has much to gain by limiting the Federation's ability to obtain and present evidence of current discrimination against Black farmers. To now deny the Federation the opportunity to conduct the discovery necessary to secure robust evidence of current discrimination because the Secretary previously stipulated that no such discovery is necessary would be to ignore the basis for the Fifth Circuit's decision.

Second, the Fifth Circuit concluded that evidence of ongoing discrimination by USDA— the exact evidence the Federation seeks to obtain through discovery—is not only germane but "may be highly relevant to proving a 'compelling governmental interest'" in the race-conscious debt relief foreseen by Section 1005. (Slip Op. at 7) (citing *Wynn v. Vilsack*, 545 F. Supp. 3d 1271, 1275, 1279 (M.D. Fla. 2021) (stating that evidence of continued discrimination is "crucial" to show that additional remedial action is warranted given the inadequacy of prior remedial efforts)). The Fifth Circuit rejected the Secretary's argument that "evidence of discrimination within the last decade" negated the relevance of evidence of *continued* discrimination. *Id.* This stands to reason: evidence of current discrimination is highly probative of whether past discrimination persists,

which in turn is highly relevant to proving a compelling governmental interest in affording race-conscious debt relief. *Id.* Counsel for the Secretary even conceded at oral argument that evidence of current discrimination "certainly would be relevant" to the constitutionality of Section 1005. 5th Cir. Oral Arg. Rec. 21:51–22:14. Preventing the Federation from discovering and presenting such concededly relevant evidence would render the Fifth Circuit's decision—and the Federation's right to intervene—close to meaningless.

Third, based on its recognition that evidence of current discrimination is "may be highly relevant"—and possibly "crucial"—to the defense of Section 1005, the Fifth Circuit explicitly contemplated that upon being allowed to intervene "the Federation would seek evidence demonstrating current discrimination by the USDA against [the Federation's] members." (Slip Op. at 7–8 & n.6); *see also* 5th Cir. Oral Arg. Rec. 3:48–3:56 ("You would get to do discovery if you were a party. Isn't that the most critical thing you get as a party you don't get as an amicus?") (Haynes, J.). Thus, this Court erred when it found that "[n]othing in the Fifth Circuit's opinion contemplates *fact* discovery." (ECF 186 at 5).

The Federation is the *only* party that will introduce evidence of ongoing discrimination in defense of Section 1005. As the Fifth Circuit recognized, the Secretary cannot "reasonably be expected" to introduce evidence that his agency is currently or recently engaged in racial discrimination. *Id.* at 7-8, *see also* n. 6 ("It is highly unlikely the Secretary would put forth such evidence in the absence of the Federation's intervention."). Allowing the Federation to conduct targeted fact discovery that it reasonably anticipates will produce evidence of current discrimination is the *only* way to give effect to the Fifth Circuit's mandate, which directed this Court to allow the Federation to intervene precisely *because* the Federation would "seek" and

ultimately present evidence of ongoing discrimination that the Secretary will neither disclose voluntarily nor present to the court.

"District courts do not have discretion to ignore mandates issued by [the Fifth Circuit]." *M.D. ex rel. Stukenberg v. Abbott*, 977 F.3d 479, 481 (5th Cir. 2020). To the contrary, they "must implement both the letter and the spirit of the appellate court's mandate." *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2016) (citation omitted). Given the text and rationale of the Fifth Circuit's mandate in this case, preventing the Federation from conducting the targeted fact discovery that it requests is not a "reasonable condition" on the Federation's intervention as of right. *See generally Columbus-America Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) (even if court may impose conditions on intervenor as of right, denying intervenor any discovery is "clearly unreasonable" and violates due process).[6]

### 3. The Federation Has Shown Good Cause for Limited Fact Discovery

There is good cause to permit limited fact discovery. The Federation seeks targeted, time-limited discovery to obtain evidence demonstrating current discrimination against its members. The Fifth Circuit has concluded that such evidence "may be highly relevant" to the constitutionality of Section 1005, that no other party will present it, and that the Secretary has an interest in excluding it. (Slip. Op. at 7–8). Denying the Federation the discovery it has requested

---

[6] It also is irrelevant that the Secretary did not oppose permissive intervention subject to the "reasonable condition" that the Federation not be allowed to conduct fact discovery. (ECF No. 186 at 4). As noted above, the Fifth Circuit has since held that the Federation is entitled to intervention *as of right*, and that the Secretary's interests are adverse to those of the Federation. Thus, any condition the Secretary unilaterally imposed upon his agreement to permissive intervention has no bearing here. Indeed, the Secretary's opposition to the Federation conducting fact discovery is best understood as an effort to shield the Secretary from having to disclose evidence of USDA's continuing discrimination, *i.e.*, as an attempt to advance the Secretary's institutional interests at the expense of the Federation's interest in vigorously defending Section 1005's constitutionality on all available bases.

substantially prejudices the Federation—and the general public, which has a strong interest in the constitutionality of Section 1005 being adjudicated on a complete factual record.

Allowing the Federation to conduct the discovery that it requests will not "severely delay briefing, trial on the merits, and final resolution," and certainly will not delay resolution of this case "indefinitely." (ECF No. 186 at 4.) The Federation is not seeking a blank check to conduct depositions and make document requests.[7] The Federation asks only for up to five depositions, and eight document requests substantially similar to the following:

- Documents related to actions taken by USDA to implement the recommendations made specifically to the Farm Service Agency (FSA) from the 2011 Jackson Lewis Report;

- Documents related to any FSA civil rights compliance reviews since 2010;

- Documents related to the USDA's tracking of participation rates, timeliness of loan applications, processing and timeliness of farm loan servicing actions,[8] and any actions taken by USDA to address racial disparities in these metrics since 2010;

- Documents related to annual target participation rates and reserve loan funds for socially disadvantaged farmers,[9] and whether target rates were met and reserved funds were accessed by socially disadvantaged farmers since 2010;

- Documents related to actions taken by USDA to appoint members of socially disadvantaged groups to county committees since 2010;

---

[7] The Federation does not intend to serve interrogatories or requests for admission.

[8] USDA's expert, William D. Cobb, states, "USDA . . . substantially updated its computer systems by transitioning to the Direct Loan System. USDA can now accurately track participation rates and timeliness of application processing as well as the timeliness of farm loan servicing actions," so this information should be readily available. (ECF No. 168-1 at ¶ 41).

[9] USDA's expert states that the USDA is required to set these target participation rates and reserve sufficient loan funds accordingly. (ECF No. 168-1 at ¶ 19).

- Documents related to complaints to USDA regarding racial discrimination in the FSA loan process or by FSA representatives (including staff or county committee members) since 2010;

- Documents related to any USDA investigations into the farm loan practices of private banks since 2010;

- Documents related to the formation of the USDA Equity Commission.

Even with that discovery, the Federation's proposed time frame for resolving the case on summary judgment is only six weeks longer than the schedule entered by the Court—time that, in any case, is necessary for the Federation's experts to perform their analysis, as discussed below.

The Federation agrees that the parties 'have a strong interest in the expeditious resolution of this case." (ECF No. 186 at 4.) Indeed, no party has a greater interest in the timely resolution of this case than the Federation, whose members remain without much-needed debt relief during the pendency of the litigation. But it is more important—to both the Federation and the general public—that the constitutionality of Section 1005 be decided on a complete factual record, especially when the evidence that the Federation seeks to obtain through discovery "may be highly relevant" to proper adjudication of the issue. (Slip Op. at 7).

Plaintiffs are not prejudiced by the Federation's proposed time frame because the preliminary injunction remains in place. And although introduction of the evidence that the Federation seeks "potentially exposes [the Secretary] to liability" in *other* cases (namely, those that might be brought by victims of USDA discrimination), allowing the Federation to obtain such evidence through discovery does not prejudice him in *this* case. On the contrary, evidence of ongoing discrimination by USDA may be "crucial" (Slip Op. at 7) to a successful defense of Section 1005, which is the Secretary's avowed objective in this litigation.

12

Rushing this case to a conclusion at the expense of crucial evidence based on agreements made before the Federation was a party to the case elevates speed over substance. Even if desirable in the abstract, "the idea of 'streamlining' the litigation" as advocated by the initial parties "should not be accomplished at the risk of marginalizing" intervenors "who have some of the strongest interests in the outcome." *United States v. City of L.A.*, 288 F.3d 391, 404 (9th Cir. 2002). "While the efficient administration of justice is always an important consideration, fundamental fairness to every litigant is an even greater concern." *Columbus-Am. Discovery Grp.*, 974 F.2d at 470.

### B.   The Federation Respectfully Requests an Extension on the Deadline for Expert Designations

The Federation also respectfully reiterates its request for eight weeks from the date on which the Secretary produces complete and usable loan data. (ECF No. 184 at 12). The Federation's retained expert, Mark P. Berkman of The Brattle Group, Inc., will work as expeditiously as possible, but reasonably will require at least eight weeks to complete a report compliant with Rule 26 of the Federal Rules of Civil Procedure. Declaration of Mark P. Berkman ("Berkman Decl.") at ¶¶ 7–8. Based on his review of the Secretary's expert report, Mr. Berkman's expert opinion is that the Secretary's expert had more than eight weeks to prepare her report. *Id.* at ¶ 6. It is an unreasonable limitation upon the Federation's participation to require an expert report within four weeks of receiving the loan data, particularly where the Secretary's expert was not operating under similar constraints. The Federation therefore requests eight weeks from the date on which the Secretary produces complete and usable loan data for the Federation's expert to complete his expert report.

### V.   Conclusion

For the foregoing reasons, the Federation respectfully requests that this Court reconsider its decision and permit the Federation to conduct the targeted, time-limited fact discovery

requested in its Joint Status Report. Further, the Federation respectfully requests that the Court extend the deadline for expert designations to eight weeks from the date on which the Secretary produces complete and usable loan data.

Dated: April 13, 2022                                  Respectfully submitted,

                                                       */s/ Chase J. Cooper*                     
                                                       Chase J. Cooper
                                                       TX Bar No. 24087342
                                                       ccooper@winston.com
                                                       WINSTON & STRAWN LLP
                                                       2121 N. Pearl Street, Suite 900
                                                       Dallas, TX 75201
                                                       P: 214-453-6500

                                                       George C. Lombardi *(admitted pro hac vice)*
                                                       Illinois Bar No. 6187715
                                                       glombardi@winston.com
                                                       Julie A. Bauer *(admitted pro hac vice)*
                                                       Illinois Bar No. 6191271
                                                       jbauer@winston.com
                                                       WINSTON & STRAWN LLP
                                                       35 West Wacker Drive
                                                       Chicago, IL 60601
                                                       P: 312-558-5600

                                                       Kobi K. Brinson *(admitted pro hac vice)*
                                                       NC Bar No. 23827
                                                       kbrinson@winston.com
                                                       WINSTON & STRAWN LLP
                                                       300 South Tryon Street, 16th Floor
                                                       Charlotte, NC 28202
                                                       P: 704-350-7700

                                                       Andrew E. Tauber (*pro hac vice forthcoming*)
                                                       NY Bar No. 3905676
                                                       atauber@winston.com
                                                       WINSTON & STRAWN LLP
                                                       1901 L Street NW
                                                       Washington, D.C. 20036
                                                       P: 202-282-5000

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

*/s/ Dorian L. Spence*
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

*/s/ Mark D. Rosenbaum*
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 13, 2022, which will serve all counsel of record.


*/s/ Chase J. Cooper*
Chase J. Cooper

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## DECLARATION OF MARK P. BERKMAN

I, Mark P. Berkman, under 28 U.S.C. § 1746, declare as follows:

1.      I am over eighteen years of age and have personal knowledge of the facts set forth in this Declaration.

2.      I am a Principal at The Brattle Group, Inc., and I am an expert in applied microeconomics in the areas of the environment, energy, and natural resources; environmental health and safety; intellectual property; and discrimination.

3.      I have conducted (a) studies of discrimination by mortgage lenders for federal regulators; (b) internal reviews to detect such practices on behalf of lending institutions; and (c) statistical analyses of discrimination in hiring, promotion, pay, and contracting.

4.      I have been retained as an expert by counsel for the Federation of Southern Cooperatives/Land Assistance Fund to analyze loan data and other sources of evidence and to provide an expert opinion on (a) the existence of current and/or recent discrimination by the United States Department of Agriculture (USDA) against minority farmers in USDA lending programs;

and (b) the effect of any such current and/or recent discrimination on minority farmers in the present day.

5.      I have reviewed the report of the USDA's expert, Dr. Alicia Robb.

6.      Based on my experience conducting statistical analyses of discrimination and my review of Dr. Robb's expert report, and in my expert opinion, it would have taken Dr. Robb more than eight weeks to prepare her expert report.

7.      Based on my experience conducting statistical analyses of discrimination and my review of Dr. Robb's expert report, and in my expert opinion, I cannot adequately and completely analyze the USDA loan data and prepare an expert report based thereon in just four weeks.

8.      Based on my experience conducting statistical analyses of discrimination and my review of Dr. Robb's expert report, and in my expert opinion, I will need eight weeks after receipt of substantially complete and usable USDA loan data from the Government in order to analyze adequately and completely the USDA loan data and prepare an expert report based thereon.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 12th day of April, 2022 in San Francisco County, California.

_____

Mark P. Berkman

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## PROPOSED ORDER GRANTING THE FEDERATION'S
## MOTION FOR RECONSIDERATION

Having considered the briefing on the Federation of Southern Cooperatives/Land Assistance Fund's (the "Federation") Motion for Reconsideration, and for good cause shown, it is ORDERED that:

1.      The  Federation's Motion for Reconsideration is GRANTED.

2.      The Court's April 5, 2022 Scheduling Order (ECF No. 186) is VACATED and the following schedule is ORDERED in its place:

- Expert Designations: June 10, 2022 or 8 weeks following the Federation's receipt of substantially complete and usable loan data from the Secretary, whichever is later

- Rebuttal Expert Reports: July 8, 2022

- Close of Fact Discovery: July 29, 2022

- Close of Expert Discovery: August 5, 2022

- Motions for Summary Judgment: September 2, 2022

3.    The Federation shall be entitled to take up to five depositions and shall be entitled to serve document requests substantially similar to the following:

- Documents related to actions taken by USDA to implement the recommendations made specifically to the Farm Service Agency (FSA) from the 2011 Jackson Lewis Report;

- Documents related to any FSA civil rights compliance reviews since 2010;

- Documents related to the USDA's tracking of participation rates, timeliness of loan applications, processing and timeliness of farm loan servicing actions, and any actions taken by USDA to address racial disparities in these metrics since 2010;

- Documents related to annual target participation rates and reserve loan funds for socially disadvantaged farmers, and whether target rates were met and reserved funds were accessed by socially disadvantaged farmers since 2010;

- Documents related to actions taken by USDA to appoint members of socially disadvantaged groups to county committees since 2010;

- Documents related to complaints to USDA regarding racial discrimination in the FSA loan process or by FSA representatives (including staff or county committee members) since 2010;

2

- Documents related to any USDA investigations into the farm loan practices of private banks since 2010; and

- Documents related to the formation of the USDA Equity Commission.

IT IS SO ORDERED.

Dated: _____

_____
THE HONORABLE REED O'CONNOR
UNITED STATES DISTRICT JUDGE

**Tab 5**

**Order Expediting Briefing on the
Federation's Motion for Reconsideration**

**(ECF No. 189)**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| **Defendant,** | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND, | § § § | |
| **Intervenor Defendant.** | § § § | |

## <u>ORDER</u>

Before the Court is the Federation's Motion for Reconsideration (ECF No. 187), filed April 13, 2022. To expedite resolution of the motion, the Court **ORDERS** Plaintiffs and the Government to respond no later than **April 20, 2022**. The Federation may file a reply within 24 hours of the other parties' responses.

**SO ORDERED** on this **14th day** of **April, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**Tab 6**

**The Secretary's Opposition to the Federation's Motion for Reconsideration**

**(ECF No. 193)**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| SID MILLER, *et al.*, on behalf of himself and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE, <br><br> Defendant. | Civil Action No. 4:21-cv-595-O |

**DEFENDANT'S OPPOSITION TO THE FEDERATION'S**
**MOTION FOR RECONSIDERATION**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

KYLA M. SNOW (OHIO BAR NO. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-2071/ Fax: (202) 616-8460
michael.f.knapp@usdoj.gov

*Counsel for Defendant*

TABLE OF CONTENTS

**INTRODUCTION** ...................................................................................................1

**BACKGROUND** ....................................................................................................1

**STANDARD OF REVIEW** ....................................................................................2

**ARGUMENT** .........................................................................................................3

    I.    The Fifth Circuit's mandate does not entitle the Federation to discovery. .................................................................................................3

    II.   Limiting discovery to expert disclosures is a reasonable limitation on participation. ............................................................4

        A.    Limiting Intervenor's discovery is a reasonable condition on intervention. .............................................................................4

        B.    The disclosures that Defendant produced are equivalent to limited fact discovery. ..........................................................5

        C.    The Federation has never previously indicated it would seek additional discovery. ......................................................5

        D.    The additional discovery the Federation contemplates will unduly delay proceedings. ......................................................8

    III.  The Court should not extend the expert discovery deadline at this time. ...........................................................................9

**CONCLUSION** .....................................................................................................10

TABLE OF AUTHORITIES

**Cases**

*Austin v. Kroger Tex., LP,*
  864 F.3d 326 (5th Cir. 2017) ................................................................ 2

*Beauregard, Inc. v. Sword Servs.. LLC,*
  107 F.3d 351 (5th Cir. 1997) ................................................................ 4

*Cobell v. Jewell,*
  802 F.3d 12 (D.C. Cir. 2015) ................................................................ 2

*Defs. of Wildlife v. U.S. Fish & Wildlife Serv.,*
  No. 21-CV-00344-JSW, 2021 WL 4552144 (N.D. Cal. May 3, 2021) ...........................4, 5

*Gen. Universal Sys., Inc. v. HAL, Inc.,*
  500 F.3d 444 (5th Cir. 2007) ................................................................ 3

*In re Deepwater Horizon,*
  928 F.3d 394 (5th Cir. 2019) ................................................................ 3

*In re Felt,*
  255 F.3d 220 (5th Cir. 2001) ................................................................ 3

*Miller v. Vilsack,*
  No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) ...................................... 2, 3, 4

*Sprague v. Ticonic Nat'l Bank,*
  307 U.S. 161 (1939) ................................................................ 3

*Steves & Sons, Inc. v. JELD-WEN, Inc.,*
  323 F.R.D. 553 (E.D. Va. 2018) ................................................................ 4

*United States v. East Shoshone Tribe,*
  No. 10-CV-093-J, 2010 WL 11435111 (D. Wyo. Dec. 15, 2010) ...................................... 5

*Vinson v. Wash. Gas Light Co.,*
  321 U.S. 489 (1944) ................................................................ 4, 8

*Webb v. Davis,*
  940 F.3d 892 (5th Cir. 2019) ................................................................ 4

*Westfall v. Luna,*
  No. 21-10159, 2022 WL 797410 (5th Cir. Mar. 15, 2022) ...................................... 3

**Rules**

Fed. R. Civ. P. 16 ................................................................................................................... 8

Fed. R. Civ. P. 26 ................................................................................................................... 6

Fed. R. Civ. P. 54 ................................................................................................................... 2

Fed. R. Civ. P. 60 ................................................................................................................... 4

**Other Authorities**

Jackson Lewis Report, https://perma.cc/8X6Q-GZ5V ............................................................9

## INTRODUCTION

When the Federation moved to intervene last year, more than three months after this Court entered a preliminary injunction and well into the then-governing schedule, the Federation indicated that it would not "seek to re-litigate any prior rulings." Fed'n's  Mem. in Supp. of Mot. to Interv., ECF No. 93-1 at 22. The Court and parties reasonably understood—based on the Federation's own descriptions of its anticipated participation—that this meant the Federation would not seek fact discovery, as the original parties had agreed and as the Court's scheduling order confirmed. Now that it has been granted intervention, the Federation seeks for the first time to expand the scope of this litigation in a manner that will delay its ultimate resolution. The Court should reject the Federation's motion and adhere to the schedule the Court has already adopted in its April 5, 2022, Order.

## BACKGROUND

In March of 2021, Congress enacted § 1005 of the American Rescue Plan Act (ARPA), the statute at issue in this litigation. In April 2021, this suit was filed challenging that statute. *See* Compl., ECF No. 1. In the beginning of June, Plaintiffs filed an amended complaint on behalf of putative classes, and moved for certification of those classes, *see* Am. Compl., ECF No. 11, and on the same day moved for a preliminary injunction, *see* ECF No. 17. On July 1, 2021, the Court certified two classes and preliminarily enjoined the government "from discriminating on account of race or ethnicity in administering section 1005 of the American Rescue Plan Act for any applicant who is a member of the Certified Classes." ECF No. 60.

In mid-July the original parties filed a joint scheduling proposal, which indicated the parties' agreement not to take fact discovery and setting out an expeditious schedule for completing expert discovery and moving to summary judgment. ECF No. 70. The Court entered an order adopting the parties' agreed schedule. ECF No. 85.

In October 2021, over three months after this Court entered its preliminary injunction, the Federation moved to intervene both as of right and permissively, stating that it did not "intend to seek reconsideration of any rulings in the case to date" or "seek to relitigate any prior rulings." Fed'n's Mem. in Supp. of Mot. to Interv. at 15, 22. Plaintiffs opposed intervention, ECF No. 137, and the government opposed intervention of right but did not oppose permissive intervention, conditioned on reasonable limitations, ECF No. 136.

This Court denied the motion to intervene, ECF No. 143, and the Federation appealed, ECF No. 147. The Fifth Circuit reversed, concluding that the Federation would present an argument that the Secretary would not, and that it had thus shown an adversity of interest warranting intervention. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. Mar. 22, 2022). On April 5, 2022, this Court, consistent with the Fifth Circuit's mandate, granted intervention, ECF No. 185, and resolved the parties' competing scheduling proposals by entering an order modifying the discovery and briefing schedule to allow the Federation's participation on substantially similar terms as the parties, ECF No. 186. The Federation now asks the Court to reconsider its ruling setting the schedule governing this case.

## STANDARD OF REVIEW

The Court should consider the Federation's motion for reconsideration under the standards of Rule 54(b). *See Austin v. Kroger Tex., LP*, 864 F.3d 326, 336 (5th Cir. 2017). This "flexible" standard reflects "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (quoting *Cobell v. Jewell*, 802 F.3d 12, 25-26 (D.C. Cir. 2015)). In resolving the Federation's motion the Court should be cognizant of the additional delay and prejudice that would attach to changing the schedule after it has already been in place for over two weeks and after the government has already complied with its first deadline.

## ARGUMENT

**I.     The Fifth Circuit's mandate does not entitle the Federation to fact discovery.**

The Federation overreads the Fifth Circuit's decision. The Fifth Circuit did not mandate that this Court permit the discovery that the Federation now seeks.

The mandate rule "compels compliance on remand with the dictates of a superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007) (citation omitted). But "a mandate is controlling [only] as to matters within its compass." *In re Deepwater Horizon*, 928 F.3d 394, 398 (5th Cir. 2019) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)). The Fifth Circuit did not expressly decide that the Federation was entitled to the fact discovery it contemplates, or indeed to any fact discovery. Nor was such an issue "impliedly" decided. As the Fifth Circuit reiterated just last month, "[a]n issue is tacitly decided only when its disposition is a 'necessary predicate[] to the ability to address the issue or issues specifically discussed' in the appellate court's opinion." *Westfall v. Luna*, No. 21-10159, 2022 WL 797410, at *4 (5th Cir. Mar. 15, 2022) (per curiam) (quoting *In re Felt*, 255 F.3d 220, 225 (5th Cir. 2001)).

The Fifth Circuit expressly held that only the government did not adequately represent the Federation's interests and that the Federation was therefore entitled to intervene as of right. *See Miller v. Vilsack*, 2022 WL 851782 at *4. That conclusion turned not on any issue of fact discovery (which the Federation had never mentioned, let alone requested, in any of its filings in either district court or the court of appeals, *see infra* section II.C), but instead on the question whether the government would advance a certain argument and present certain evidence. *Id.* at *3. Put simply, the issue before the Fifth Circuit was only whether the Secretary was an adequate representative of the Federation's interests in this case. It held that he was not because the Federation sought to advance an argument—that discrimination is ongoing—that the Secretary could not "reasonably be expected to adopt or

support," *id.* at *3. The Fifth Circuit also noted that "if"—*if*—"given the opportunity to conduct discovery as a party, the Federation would seek evidence demonstrating current discrimination." *Id.* at *3 n.6. But the Fifth Circuit did not hold that the Federation was entitled to any particular discovery, or to any discovery at all, and no such holding was necessary to its resolution of the sole issue on appeal—whether the Secretary would be an adequate representative of the Federation's interests. The Fifth Circuit's decision does not require the district court to allow *any* fact discovery, much less the specific fact discovery that the Federation now seeks. *Cf. Webb v. Davis*, 940 F.3d 892, 897 (5th Cir. 2019) ("Because this court's COA order did not 'expressly or impliedly' decide that the district court had correctly determined that Webb's guilty plea waived his underlying claims, the district court could have granted Webb's Rule 60(b) motion without running afoul of the mandate rule.").

## II.   Limiting discovery to expert disclosures is a reasonable limitation on participation.

A district court has broad power to control proceedings before it, including by imposing limitations on discovery. That is true whether a party has intervened or not. And "it is now a firmly established principle that reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997); *see also Vinson v. Wash. Gas Light Co.*, 321 U.S. 489, 498 (1944) ("[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding.").

### *A.   Limiting Intervenor's discovery is a reasonable condition on intervention.*

Court regularly impose limits on an intervenor's participation in discovery. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018) (noting that "[p]rohibiting the Intervenors from engaging in further discovery" "would be proper even if the Intervenors did not expressly consent to them" because intervenors "must generally take the case as they find it, and intervention may be subject to further conditions based on the particular case." (cleaned up)); *Defs. of Wildlife v. U.S.*

*Fish & Wildlife Serv.*, No. 21-CV-00344-JSW, 2021 WL 4552144, at *3 (N.D. Cal. May 3, 2021) (prohibiting intervenors of right from initiating discovery).

In *United States v. East Shoshone Tribe*, for example, the court granted a tribe's motion to intervene as of right, but prohibited it from engaging in discovery. No. 10-CV-093-J, 2010 WL 11435111, at *4 (D. Wyo. Dec. 15, 2010). The court explained that a right to intervene "is not equivalent to an unconditional right to participate in the proceedings." *Id.* at *3. Because of the stage of the proceedings—close to the end of discovery and with a long-set trial deadline fast approaching— the court concluded that permitting discovery would unduly delay proceedings. The court explained that it had "the responsibility, even the duty, to prevent such delay and the prejudice that arises therefrom," and that "to remedy this prejudice and ensure the efficient adjudication of this case, the Court will place conditions on intervenor's intervention." *Id.* Specifically, the parties would be required to produce previous discovery to the intervenor, but "no other discovery shall be permitted." *Id.* at *4.

Similar limitations would have been proper had this Court granted intervention of right in December of last year, when the Federation completed briefing on its intervention motion. At that time, initial expert designations were just two weeks away, and summary judgment briefs were due at the beginning of March.[1] Permitting the Federation to engage in the fact discovery it now contemplates would have been hugely disruptive to the longstanding schedule that the parties had operated under since July 2021, and that the Court adopted in September 2021. *See* ECF No. 70 (joint scheduling statement); ECF No. 85 (scheduling order). Such reasonable limitations are equally appropriate now.

---

[1] Although the Parties subsequently extended certain expert discovery deadlines, they always sought to preserve the summary judgment briefing deadlines so as to continue to move expeditiously to summary judgment. *See* ECF Nos. 145, 163.

*B. The disclosures that Defendant produced are equivalent to limited fact discovery.*

Because of the posture of this case, the Federation has in fact already gained the benefit of some limited fact discovery. Last Friday, Defendant produced to Intervenor the data that the government's outside expert considered in drafting her report. Under the rules of civil procedure, such disclosures are ordinarily due together with the expert's report—that is, on the date of initial expert disclosures. *See* Fed. R. Civ. P. 26(a)(2)(B). An opposing party may then incorporate, dispute, or otherwise address those disclosures in a *rebuttal* expert report, which by its nature "is intended solely to contradict or rebut evidence on the same subject matter" as the initial report. *Id.* 26(a)(2)(D)(ii).

The Federation, though, is not limited to producing a rebuttal report. Instead, the Federation will be able to incorporate Defendant's expert disclosures into the Federation's own initial expert report. Put otherwise, under the now-governing schedule, the Federation has effectively obtained early access to factual information from Defendant (*i.e.*, the data produced last Friday) under this Court's order—what might better be called "fact discovery." The Federation is thus in a better position than even were Plaintiffs last December, who did not have this data available when their own deadline to produce initial expert reports passed. This Court, then, has already effectively permitted the Federation to engage in some limited fact discovery, and Defendant has already produced the responsive information. The Federation is not entitled to any additional fact discovery.

*C. The Federation has never previously indicated it would seek additional discovery.*

In seeking intervention, in seeking a stay pending appeal, and in seeking reversal in the Fifth Circuit, the Federation repeatedly described its anticipated participation in this litigation, and explained why participation as an amicus alone would be inadequate. That description and explanation has never included fact discovery. Thus, in its briefing on motion to intervene, the Federation explained that it "has gathered data on discriminatory practices by local FSA offices through countless reports of Black farmers who have had an FSA loan application denied," Fed'n's Mem. in Supp. of Mot. to Interv. at

8, and that the Federation hoped to add "direct testimony from present-day, debt-burdened Black farmers about their own experiences of discrimination," Fed'n's Reply in Supp. of Mot. to Interv., ECF No. 141, at 7. The Federation explained that it "also"—*i.e.*, in addition to direct testimony from present-day, debt-burdened Black farmers about their own experiences of discrimination—"intends to introduce expert testimony." *Id.* And in seeking to stay proceedings pending its appeal, the Federation explained that participation as an amicus was inadequate because the Federation "intends to . . . present expert and other testimony." Fed'n Mot. to Stay, ECF No. 149 at 11. The Federation reiterated this scope of participation in its appellate briefing, explaining that the Federation "would present testimonial and statistical evidence of recent and current USDA discrimination," Fed'n Opening Br. on Appeal at 19, No. 21-11271 (5th Cir. filed Dec. 30, 2021); *see also id.* at 19-20 (identifying testimonial evidence the Federation hoped to present), and that as an amicus "it would have neither the right to challenge an adverse ruling nor the right to defend a favorable ruling on appeal," Fed'n Reply Br. on Appeal at 9 n.4, No. 21-11271 (5th Cir. filed Jan. 20, 2022).[2]

The Federation had never hinted to the parties or to this Court that it would seek to take additional fact discovery. Instead, it repeatedly described its participation as limited to (1) submitting testimonial evidence of minority farmers, (2) participating in expert discovery, including by submission of its own expert report, (3) participating in summary judgment briefing, and (4) defending § 1005 on any appeal. The government expressly stated its understanding that the Federation would not seek to engage in fact discovery. *See* Def.'s Opp'n to Fed'n's Mot. to Interv., ECF No. 136, at 14-15 & n.6. The Federation did not contest that point when it replied to the government's brief and noted the government's non-opposition to permissive intervention. *See* Fed'n's Reply in Supp. of Mot. to Interv. at 2 ("The Secretary does not oppose permissive intervention by the Federation."); Fed'n Mot. to Stay

---

[2] *See also* Fed'n's Br. ISO Mot. to Interv. at 8, 20; Fed'n's Reply ISO Mot. to Interv. at 6, 8; Fed'n Opening Br. on Appeal at 26.

at 13 ("Indeed, the Secretary did not oppose permissive intervention."). Thus the government's understanding of the Federation's intention is not "unilaterally imposed" by the Secretary. Fed'n Mot. for Reconsideration, ECF No. 187-1, at 10 n.6. Rather, it is the consequence of the Federation's own repeated descriptions of its intentions.

The Federation's parsing of the word "ruling" in its previous representations to this Court is wide of the mark. Although Plaintiffs and the government agreed upon a litigation schedule, had they not done so and instead filed competing scheduling proposals, the Court would have had to issue a "ruling" that resolved the dispute. Moreover, the Court had to decide upon and approve such a schedule, because the parties were without authority to impose a schedule on the Court, even by agreement. *See* Fed. R. Civ. P. 16(b) (regarding scheduling orders); *id.* 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent"). In ordinary understanding, and in the government's expressly stated (and uncorrected) understanding, the Federation's assurance that it would not revisit "*any* prior rulings" included the Court's order setting out the schedule for the case. The Federation cannot now seek to "compel an alteration of the nature of the proceeding" by embarking on the wide-ranging discovery it contemplates. *Vinson*, 321 U.S. at 498.

      *D. The additional discovery the Federation contemplates will unduly delay proceedings.*

The Federation offers its assurances that the additional factual discovery it seeks will not unduly delay proceedings. Mot. for Reconsideration at 12. But that is unlikely to be so. The Federation identifies eight broad categories of documents it would seek. *See* Mot. for Reconsideration at 11-12 (seeking "documents related to" eight categories of information). Although the Federation has not yet identified the specific requests it would serve, the government, after consultation with relevant custodians, is likely to object to some or all of the sample requests on multiples bases. Some are vague or unduly burdensome on their face. The term "documents related to" is highly likely to sweep in many irrelevant documents. Nor can the discovery the Federation contemplates fairly be described as

"limited." The first request, for example, seeks "[d]ocuments related to actions taken by USDA to implement the recommendations made specifically to the Farm Service Agency (FSA) from the 2011 Jackson Lewis Report." *Id.* at 11. The Jackson Lewis report made *forty-nine* recommendations to improve the FSA. *See* Jackson Lewis Report at 166-180, *available at* https://perma.cc/8X6Q-GZ5V. Those recommendations were made over a decade ago. Collecting, reviewing for responsiveness and privilege, redacting and developing a privilege log, and then producing over a decade's worth of documents "related to" implementation of those 49 recommendations is nearly certain to be unduly burdensome, and in no event could that task reasonably be completed in the time frame that the Federation contemplates. And that is just one of eight categories of information—to say nothing of scheduling, preparing for, and conducting five depositions. Discovery is likely to take still more time if it becomes necessary to litigate any related disputes between the parties.

The Federation's proposed schedule would unduly delay proceedings, contrary to their previous representations and to the detriment of the government—which daily endures the additional irreparable injury of the preliminary injunction—and the intended beneficiaries of § 1005—who are denied the urgent relief Congress determined was necessary.

## III.   The Court should not extend the expert discovery deadline at this time.

The original parties have previously worked cooperatively in extending expert discovery deadlines without having to delay summary judgment briefing, *see, e.g.*, ECF Nos. 145, 163. If, as the deadline for the Federation's expert report approaches and the need for an extension becomes more concrete, the parties can work cooperatively to agree on any extension, and, if agreement is unattainable, make an appropriate motion. But at this stage the Federation's request is premature.[3]

---

[3] Nor is it relevant that Defendant's outside expert had additional time to draft her report. Any truncation of the Federation's time to complete an expert report is a natural consequence of when the Federation first sought to intervene.

**CONCLUSION**

The Court should deny the Federation's Motion for Reconsideration.


Date:  April 20, 2022                    Respectfully submitted,

                                         BRIAN M. BOYNTON
                                         Principal Deputy Assistant Attorney General

                                         LESLEY FARBY
                                         Assistant Branch Director

                                         /s/ Michael F. Knapp
                                         KYLA M. SNOW (Ohio Bar No. 96662)
                                         MICHAEL F. KNAPP (Cal. Bar No. 314104)
                                         ALEXANDER V. SVERDLOV
                                         Trial Attorneys
                                         Federal Programs Branch
                                         U.S. Department of Justice, Civil Division
                                         1100 L Street, NW
                                         Washington, DC 20530
                                         Telephone: (202) 514-2071
                                         Fax: (202) 616-8470
                                         Email: michael.f.knapp@usdoj.gov

                                         *Counsel for Defendant*

**Certificate of Service**

On April 20, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Michael F. Knapp*
MICHAEL F. KNAPP
United States Department of Justice

**Tab 7**

**Plaintiffs' Opposition to the Federation's
Motion for Reconsideration**

**(ECF No. 194)**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

|  |  |
|---|---|
| **Sid Miller**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**Tom Vilsack**, in his official capacity as Secretary of Agriculture,<br><br>Defendant,<br><br>**Federation of Southern Cooperatives/Land Assistance Fund**,<br><br>Intervenors-Defendants. | Case No. 4:21-cv-00595-O |

## BRIEF IN OPPOSITION TO THE FEDERATION'S MOTION FOR RECONSIDERATION

GENE P. HAMILTON
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. DUSTIN FILLMORE III
Texas Bar No. 06996010
CHARLES W. FILLMORE
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

JONATHAN F. MITCHELL
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

The Federation of Southern Cooperatives/Land Assistance Fund intervened to ensure that it could present the perspectives of black farmers. At the time of the intervention, both the plaintiffs and defendants understood that the intervenors accepted and did not challenge the prior decisions of the court—including its scheduling order. Neither the plaintiffs nor the defendants were informed that the Federation sought to dramatically expand the scope of discovery. Now the Federation seeks to do precisely that. It says that the prior scheduling order isn't a "ruling" and it did not agree to proceed under that schedule. It argues that the scheduling order should be changed and fact discovery reopened. It seeks substantial additional data from the defendants which cannot be produced even within the extended deadlines proposed by the Federation.

On these issues, the plaintiffs agree with the defendants: this court did not err in holding to its existing schedule.

## I.   THE INTERVENORS ARE NOW ASKING FOR MORE TIME THAN THEY WOULD HAVE HAD AT THE TIME THEY ORIGINALLY SOUGHT INTERVENTION

The Federation moved to intervene on October 12, 2021. *See* Mot. to Intervene, ECF No. 93-1. By the time briefing on the motion to intervene was completed, the case was already well along. Expert reports were scheduled for a mere five weeks later and summary-judgment motions were due in just over 14 weeks. *See* ECF No. 141 (reply filed Dec. 1, 2021); ECF No. 85 (setting summary-judgment deadline for March 11, 2022); ECF No. 146 (setting an expert-report deadline as January 7, 2022). The schedule adopted by the court in its order of April 5, 2022, (ECF No. 186) places the intervenors in as good or better a position than they would have faced if their motion had been granted after briefing. The court provided more than five weeks before expert designations were due, two full months before rebuttal expert reports were due, and just over 14 weeks until summary-judgment motions were due.

The court correctly noted that "the intervenor must accept the proceedings as he finds them." *Petition of Geisser*, 554 F.2d 698, 705 (5th Cir. 1977). The intervenors ask the court to deviate from this standard but it need not (and should not) do so.

## II. The Parties Understood That the Intervenors Wanted And What They Are Getting—Expert Discovery

The intervenors concede that they agreed to accept the prior rulings in the case at the time they intervened. But the intervenors now deny that the scheduling order counts as a ruling, citing a dictionary definition to say that the order couldn't qualify as a ruling because it didn't apply a legal test. *See* Mot. for Reconsideration at 5, ECF 187. That makes no difference in determining whether a court's prior decision counts as a "ruling." And the court need not rest merely on the intervenor's statements disclaiming an intent to challenge its previous rulings. The intervenors also represented that they wanted to participate in expert discovery and present testimony from member farmers. They gave no indication that they wanted to do more—such as engage in an exhaustive data-driven analysis of prior government grants and activities. If the intervenors hadn't made such specific representations about the nature of their intervention, then their case might be stronger. But it entirely reasonable for this court to say that it is too late in the game for the intervenors to dramatically alter the scope of discovery.

As already developed at length in the Joint Status Report (ECF No. 184) and correctly noted by the court in its Order (ECF No. 186), the intervenors have consistently asked to participate in expert discovery. *See, e.g.*, Mot. to Interv. at 20, ECF No. 93-1. And they are able to do so. They also said that they would introduce stories and personal testimony from farmers establishing the existence of discrimination. *Id.* The intervenors do not claim that they have been inhibited in this objective.

What the intervenors are not entitled to do is reopen fact discovery that ended before they moved to intervene. That the intervenors articulated a modest scope of

factual development—expert discovery plus personal stories—should determine the scope of its intervention. See *Roane v. Leonhart*, 741 F.3d 147, 152 (D.C. Cir. 2014) (intervention of right was allowed where the intervenor "foreswore reopening discovery and stipulated that he would not seek to revisit issues that had already been decided"). This court was well within its discretion to deny the intervenors' request to extend discovery beyond what the intervenors sought.

### III.   FACT DISCOVERY BY THE INTERVENORS IS UNNECESSARY BECAUSE THE INTERVENORS CANNOT BEAR THE GOVERNMENT'S BURDEN

The burden of producing evidence to justify the racial preferences in section 1005 rests entirely with the government, and this task cannot be undertaken by third-party intervenors. *See City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 492 (1989) ("[T]he city of Richmond . . . can use its spending powers to remedy private discrimination, *if it identifies that discrimination with the particularity required* by the Fourteenth Amendment." (emphasis added)); *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 224 (1995) ("[A]ny person, of whatever race, has the right to demand that *any governmental actor subject to the Constitution justify* any racial classification subjecting that person to unequal treatment under the strictest judicial scrutiny." (emphasis added)); *id.* at 229 ("*Unless Congress clearly articulates the need and basis* for a racial classification, *and also tailors the classification to its justification*, the Court should not uphold this kind of statute." (emphasis in original) (citations and internal quotation marks omitted)); *see also DeOtte v. Azar*, 332 F.R.D. 173, 188 (N.D. Tex. 2019) (noting that under the Religious Freedom Restoration Act, "only the federal government can 'demonstrate' that this burden is '(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.' . . . [I]t is Defendant's obligation to carry this burden."). This adds further support to the Court's unwillingness to reopen fact discovery in response to the new intervenors in this case.

## IV.   If The Intervenors Are Unable to Adequately Defend Against a Motion for Summary Judgment After Expert Discovery, Then They Can File A Motion Under Rule 56(d)

It is worth noting that the intervenors are not left helpless if the federal defendants fail to provide useful material. If the intervenors, through no fault of their own, are unable to present essential facts for opposing a motion for summary judgment, then the rules of civil procedure provide recourse. The intervenors can file an affidavit or declaration under Rule 56(d) specifying the reasons which prevent them from justifying their opposition. The court would then have the opportunity to respond with an appropriate order. Rather than immediately opening the floodgates to fact discovery by the intervenors, this procedure allows the court and the parties to proceed on the current schedule, allows the intervenors to see what is in the federal data, and then requires the intervenors to articulate with *specificity* what is missing and what is needed and sought. *See Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990) ("[T]he nonmovant must present specific facts explaining his inability to make a substantive response . . . and by specifically demonstrating 'how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact.'") (quoting *Securities and Exchange Commission v. Spence & Green Chemical Co.*, 612 F.2d 896, 901 (5th Cir.1980)). This is not to suggest that the intervenors should be able to simply wait until the summary-judgment stage to try to slow down the pace of litigation and get the broad discovery sought now. It is to suggest instead that the court's order should be left in place with confidence that it preserves options to address in a more targeted way any serious problems that might emerge from the intervenors' discovery.

* * *

The standard of review is abuse of discretion. *Brown v. Mississippi Valley State Univ.*, 311 F.3d 328, 332–33 (5th Cir. 2002) ("We review a district court's decision

to cut off discovery in order to rule on summary judgment for an abuse of discretion.”). This court did not abuse its discretion by denying the intervenors’ motion to reopen fact discovery and alter its schedule for summary judgment. “Full and complete discovery should be practiced and allowed, but its processes must be kept within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered.” *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964).

The plaintiffs want a full and prompt resolution of this case—and to be spared unnecessary expenses from protracted litigation. The plaintiffs know of no reason to doubt the defendant’s assertions that it would provide ample data to the Federation, or that the additional data sought by the Federation is not worthwhile. The defendant is of course best able to explain what is and is not included in the various data sets—those which it will disclose and those which it wishes to avoid disclosing.

## CONCLUSION

The intervenors’ motion for reconsideration should be denied.

Respectfully submitted.

 /s/ Jonathan F. Mitchell 

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801

Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

Fort Worth, Texas 76102
(817) 332-2351 (phone)
(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

Dated: April 20, 2022                    *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on April 20, 2022, I filed this document through the court's CM/ECF system, which will serve all counsel of record.

/s/ Jonathan F. Mitchell
JONATHAN F. MITCHELL
*Counsel for Plaintiffs*

**Tab 8**

**The Federation's Reply in Support of its Motion for Reconsideration**

**(ECF No. 195)**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## REPLY MEMORANDUM IN SUPPORT OF THE FEDERATION'S MOTION FOR RECONSIDERATION

Two parties with interests adverse to those of the Federation seek to prevent the Federation from obtaining potentially crucial evidence of recent and current racial discrimination simply because discovery may briefly delay resolution of the case. These parties, Plaintiffs and the Secretary, each have a specific interest in excluding *this particular evidence* from the case and the public record. Together—without the Federation's participation or consent—they agreed to limit the evidence in this case to expert testimony, an agreement that is, from a defense perspective, inexplicable given Supreme Court precedent on the types of evidence that demonstrate intentional discrimination. *See, e.g.*, *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 266–68 (1977) (describing types of factual evidence that can show intentional racial discrimination). Now Plaintiffs and the Secretary both seek an extraordinary result: summary judgment in a constitutional challenge to race-conscious relief without the opportunity to uncover evidence of present-day racial discrimination that unequivocally would support the need for such relief.

1

However, since the original parties struck their bargain, the Fifth Circuit has held that the Secretary is an inadequate representative of the Federation's interests, precisely because he cannot be expected to introduce the very evidence of current discrimination that the Federation seeks, that the Secretary concedes is relevant, and that the Fifth Circuit recognized could be crucial to the successful defense of Section 1005. In recognition that the Federation is the only party that has an interest in seeking and obtaining this highly relevant evidence, the Fifth Circuit expressly contemplated that the Federation would be permitted to do so.

In light of the Fifth Circuit's ruling, unfounded objections about delay from parties whose interests are demonstrably adverse to the Federation's should not outweigh the Federation's right to seek time-limited, targeted discovery of evidence of recent and current discrimination by the USDA against its members and other socially disadvantaged farmers and ranchers. At stake is the integrity of the fact-finding process itself, one that will be severely diminished if those farmers who stand to lose most do not have a full and fair opportunity to present evidence of governmental discrimination that has decimated their livelihoods. Accordingly, the Federation respectfully requests that this Court reconsider its decision to categorically bar fact discovery.

Additionally, neither Plaintiffs nor the Secretary disputes the Federation's expert's sworn statement that he will need at least eight weeks to complete his report. Accordingly, the Federation respectfully requests a four-week extension of the expert-report deadline.

## ARGUMENT

## I.     This Court Should Adhere to the Clear Import of the Fifth Circuit's Ruling

The clear import of the Fifth Circuit's ruling is that the Federation should have the opportunity to seek and present evidence of current discrimination. As the Fifth Circuit recognized during oral argument and in its opinion, the opportunity to seek and present evidence of current

discrimination is the reason why *intervention* was necessary, and why amicus curiae status would not suffice. 5th Cir. Oral Arg. Rec. at 3:48–3:56 (Judge Haynes observing that "get[ting] to do discovery" would be "the most critical thing" the Federation would get to do as a party that it would not get as an amicus); Slip Op. at 8 n.6 ("It also stands to reason that, if given the opportunity to conduct discovery as a party, the Federation would seek evidence demonstrating current discrimination by the USDA against its members.").[1]

Allowing the Federation to obtain and present evidence of current discrimination, something that neither Plaintiffs nor the Secretary would do, was the principal rationale behind the Fifth Circuit's order granting intervention as of right. The Secretary has conceded that the evidence the Federation seeks is relevant, and he does not dispute the Fifth Circuit's recognition that this evidence may even be crucial to the outcome of the case. The Secretary also does not dispute that this evidence is uniquely in USDA's custody. Nor does the Secretary dispute the Fifth Circuit's conclusion that, because this evidence not only "*directly* conflicts with the Secretary's position, but also potentially exposes the agency to liability" (Slip Op. at 7), the Secretary has an interest in *not* disclosing such information.

The Secretary's only basis for seeking to prevent discovery of this potentially crucial evidence is the possibility of delay. This argument is far outweighed by the importance of this evidence, and undercut by the Secretary's statement that expert deadlines could be extended. (ECF No. 193 at 13). Any concerns the Secretary has about timing can be addressed through a scheduling order.[2] But timing concerns cannot be the basis for a categorical bar on fact discovery, especially

---

[1]     The Secretary misconstrues the Fifth Circuit's reference to discovery in its order. In the context of the Fifth Circuit's order, this statement is best read to mean, "if the Federation is entitled to intervene," which the Fifth Circuit concluded it was.

[2]     As the Federation has previously noted, its proposed scheduling order is only six weeks longer than the schedule entered by the Court, and fact discovery could take place during the time

since the Fifth Circuit has concluded the Secretary has a specific interest in preventing this potentially crucial evidence from coming to light.

Plaintiffs separately argue that fact discovery is unnecessary because any evidence of current discrimination by the USDA introduced by the Federation cannot be used "to justify the racial preferences in section 1005." (ECF No. 194 at 4). Both the Secretary and Plaintiffs made this argument to the Fifth Circuit in opposition to intervention and lost. 5th Circuit Oral Arg. Rec. at 26:35–26:56; 31:53–32:45. The Fifth Circuit already has ruled that the evidence the Federation seeks to introduce "may be highly relevant to proving a 'compelling governmental interest,'" but that "it is highly unlikely that the Secretary would put forth such evidence in the absence of the Federation's intervention." (Slip Op. at 7, 8 n.6). The Fifth Circuit's recognition that evidence of continued discrimination introduced *by the Federation* may be highly relevant to the constitutionality of Section 1005 forecloses Plaintiffs' argument.[3]

## II.  A Categorical Bar on Fact Discovery is an Unreasonable Limitation on the Federation's Participation as an Intervenor as of Right

The Federation never agreed to limit its participation in the case to testimony from Black farmers and expert testimony. Neither Plaintiffs nor the Secretary identify any such agreement, or offer any alternative legal definition of "ruling" than the definition offered by the Federation: "the outcome of applying a legal test." (ECF No. 187-1 at 10). Thus, seeking fact discovery into current

---

sought for expert discovery. (ECF No. 187-1 at 16). Neither party addresses why fact discovery could not begin immediately. The Federation remains committed to working cooperatively with the Secretary to complete any fact discovery expeditiously.

[3]  Plaintiffs also contend that they seek a "prompt" resolution of this case "and to be spared unnecessary expenses." (ECF No. 194 at 6). But Plaintiffs are not prejudiced by any brief extension to the scheduling order given the preliminary injunction that is in place. Moreover, given that fact that the Federation seeks fact discovery not from Plaintiffs but only from the Secretary, it is unclear what expenses Plaintiffs expect to incur if the Federation is permitted fact discovery.

discrimination by USDA is consistent with the Federation's prior statements, none of which foreclosed the possibility of fact discovery.

Moreover, any prior assumptions the original parties made about the Federation's participation are immaterial now that the Fifth Circuit has recognized that the Federation is the *only* party that intends to seek and introduce highly relevant, potentially crucial evidence of current discrimination by USDA. (Slip Op. at 7–8). A complete prohibition on fact discovery in the wake of the Fifth Circuit's order is unreasonable.[4]

None of the authorities cited by the Secretary support a categorical bar on fact discovery here.

In both *Steves & Sons, Inc. v. Jeld-Wen, Inc.* and *United States v. E. Shoshone Tribe*, the issue of intervention first arose very late in the case. *See Steves & Sons, Inc. v. Jeld-Wen, Inc.*, 323 F.R.D. 553, 557–58 (E.D. Va. 2018) (noting that intervenors "concede that the case has 'reached an advanced stage,'" and that the trial date had already been continued once) (citation omitted); *United States v. E. Shoshone Tribe*, 2010 WL 11435111, at *2 (D. Wyo. 2010) (noting that motion to intervene was filed when case was "nearing the end stages of discovery" and that the predicate matter that was the basis for the intervention had "been in litigation for almost a decade"). By contrast, the Federation filed for intervention within six months of suit being filed, more than two months before the original expert deadline (which was later continued by three weeks), and nearly

---

[4]     The Secretary contends that, by producing its expert disclosures, it has engaged in limited fact discovery. (ECF No. 193 at 10). This is just semantics; all the Secretary has done is produce the data its expert considered, as it would have been required to do under the rules of civil procedure. It is cold comfort to the Federation—a party with the same ultimate objective as the Secretary—that it has access to this data earlier in its expert report process than the Secretary's opponents in this litigation did.

six months before the deadline for motions for summary judgment. *Compare* ECF No. 93 *with* ECF No. 85.

Defenders of Wildlife v. U.S. Fish and Wildlife Service* is simply inapposite: there, the intervenor did not oppose the discovery restrictions placed upon it. *Defs. of Wildlife v. U.S. Fish & Wildlife Serv.*, 2021 WL 4552144, at *3–4 (N.D. Cal. 2021). Crucially, none of the cases cited by the Secretary suggest that prohibiting fact discovery is reasonable where the party seeking the discovery has been granted intervention as of right *precisely because* the original defendant has an institutional interest in not presenting the very evidence that such discovery would uncover.

Plaintiffs' proposal that the Federation wait to file a Rule 56(d) affidavit after reviewing the Secretary's data is also unreasonable. This proposal turns the discovery process on its head. Rather than have the opportunity to discover nonprivileged matters that are admissible or reasonably calculated to lead to the discovery of admissible evidence (*see* Fed. R. Civ. P. 26), the Federation would be first forced to divine with sufficient specificity what facts the Secretary has it its possession that would be relevant to a summary judgment ruling. Rule 56(d) "is designed to safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010) (quotation omitted). It is not designed to obstruct reasonable, targeted discovery that a party seeks in the first instance. If adopted, Plaintiffs' application of Rule 56(d) would radically alter the scope of discovery in civil litigation, in contravention of Rule 26.

The complete bar on fact discovery imposed here violates three principles recognized by the Fifth Circuit. First, "an intervenor of right 'is treated as he were an original party,'" and "is entitled to litigate fully on the merits once intervention has been granted." *United States v. $4,480,466.16 in Funds Seized from Bank of Am. Acct. Ending in 2653*, 942 F.3d 655, 661 (5th

Cir. 2019) (citations omitted). Second, the Federation's "interest is 'germane to the case' because evidence of continued discrimination may be highly relevant to proving a "compelling governmental interest." (Slip Op. at 7). And third, as Plaintiffs acknowledge, "[f]ull and complete discovery should be practiced and allowed . . . within workable bounds on a proper and logical basis for the determination of the relevancy of that which is sought to be discovered." *Jones v. Metzger Dairies, Inc.*, 334 F.2d 919, 925 (5th Cir. 1964). Here, the Fifth Circuit already has recognized the "relevancy of that which is sought to be discovered." *See id.* Thus, the Federation is entitled to fact discovery into evidence of current discrimination within the "workable bounds" it has proposed. *See id.*

## III.   This Court Should Extend the Expert Report Deadline by Four Weeks

Neither Plaintiffs nor the Secretary disputes that the Federation's expert needs at least eight weeks to complete his report. Neither party disputes that the Secretary's expert took more than eight weeks to complete her report, which is plainly relevant to the reasonableness of the time constraint placed on the Federation's expert to analyze the same data. And both parties acknowledge that they previously sought an extension on the expert deadline in this case.

Nevertheless, the Secretary proposes waiting until "the need for an extension becomes more concrete" (ECF No. 193 at 13), and Plaintiffs oppose any extension at all. The Secretary's proposal ignores the fact that the need for an extension already has been irrefutably established by the Federation's expert. (ECF No. 187-2 at ¶ 8). Plaintiffs' position overlooks the fact that, when the Federation sought intervention, the expert deadline was over two months away (a deadline which was later continued by an additional three weeks). (ECF Nos. 85, 146). Granting a mere four-week extension now will give the Federation's expert certainty that he will have the necessary time to complete his report, and help avoid extension requests on the eve of the current deadline.

## CONCLUSION

For the foregoing reasons, the Federation respectfully requests that this Court reconsider its decision, permit the Federation to conduct targeted, time-limited fact discovery, and extend the deadline for expert designations to eight weeks from the receipt of complete and usable loan data.

Dated: April 21, 2022                                        Respectfully submitted,


*/s/ Chase J. Cooper*
Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Andrew E. Tauber *(pro hac vice forthcoming)*
NY Bar No. 3905676
atauber@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
P: 202-282-5000

8

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

*/s/ Dorian L. Spence*
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

*/s/ Mark D. Rosenbaum*
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of Southern Cooperatives/Land Assistance Fund***

**<u>CERTIFICATE OF SERVICE</u>**

      I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on April 21, 2022, which will serve all counsel of record.


*/s/ Chase J. Cooper*
Chase J. Cooper

**Tab 9**

**Order Denying the Federation's Motion for Reconsideration**

**(ECF No. 196)**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| Defendant, | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND, | § § § | |
| Intervenor Defendant. | § § | |

## ORDER

Before the Court are the Federation's Motion for Reconsideration (ECF No. 187), filed April 13, 2022; the original parties' responses (ECF Nos. 193 and 194), filed April 20, 2022; and the Federation's Reply (ECF No. 195). Having considered the motion, briefing, and applicable law, the Court **DENIES** the motion.

Federal Rule of Civil Procedure 54(b) permits courts to revise "any order or other decision" that "does not end the action . . . at any time before the entry of a judgment." "Under Rule 54(b), 'the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (citation omitted). The standard is "flexible" and reflects the "inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires." *Id.* at 337 (citation and internal quotation marks

omitted). "[O]ne of the most usual procedural rules is that an intervenor is admitted to the proceeding as it stands, and in respect of the pending issues, but is not permitted to enlarge those issues or compel an alteration of the nature of the proceeding." *Vinson v. Washington Gas Light Co.*, 321 U.S. 489, 498 (1944).

The Federation's arguments do not provide sufficient reason for the Court to revise its scheduling order. The Federation's briefing confirms that the first time the Federation notified any court of its intent to seek fact discovery was April 1, 2022. *See* J. Status Report, ECF No. 184. Likewise, according to the Government, "[t]he Federation had never hinted to the parties . . . that it would seek to take additional fact discovery." Gov't Resp. 11, ECF No. 193. The Federation also continues to misread the Fifth Circuit's opinion, which neither requires nor implies that the Federation is entitled to fact discovery.

The Federation insists that fact discovery would cause only minimal delay. *See* Mot. 15, ECF No. 187-1. But the Government—the party responsible for gathering, managing, and turning over the requested discovery—says "that is unlikely to be so." Gov't Resp. 12, ECF No. 193. For example, discovery on just one of the eight categories of information the Federation requests "in no event could . . . reasonably be completed in the time frame that the Federation contemplates." *Id.* at 13. Considering the other discovery requested, the depositions, and the "likely" objections and discovery disputes, the Court finds that opening fact discovery over a year after Plaintiffs filed this lawsuit will cause undue delay. That delay is particularly salient given the current stage of litigation and the preliminary injunction that is in place.

Again, the Court notes that it does not deny the Federation all discovery. The Federation has consistently requested the opportunity for expert discovery, and the Court has granted that reasonable request. The Federation has received precisely what it has requested up to this point.

The Court is already delaying proceedings to accommodate the Federation's expert discovery and finds that further delay is unreasonable and unwarranted. Finally, if the Federation, after taking expert discovery, "cannot present facts essential to justify its opposition" to summary judgment, it may request relief under Rule 56(d).

For the reasons stated in the Court's initial order (ECF No. 186), the original parties' briefs (ECF Nos. 193 and 194), and this Order, the Court finds that the Federation has not presented sufficient reason for the Court to revise its scheduling order. *See Austin*, 864 F.3d at 336. Considering the timeline and history of this case, the nature of the claims, the evidence and options available to the parties, the relief requested, and the preliminary injunction imposed, the Court finds that the interests of justice weigh in favor of denying the motion for reconsideration as to fact discovery. *See id.* at 336–38.

The Federation also requests that the Court extend the expert deadline. Under the Court's scheduling order, expert discovery closes on June 26, 2022. *See* Order 5, ECF No. 186. The parties may agree to modify any discovery deadline without leave of the Court unless the modification will affect other deadlines in the case. If the Federation wishes to modify the dispositive motions deadline or other non-discovery deadlines, it must file a motion.

The Court thus **DENIES** the motion for reconsideration.

**SO ORDERED** on this **22nd day** of **April, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**Tab 10**

**The Federation's Motion to Compel
Production of Complete Loan Data and
Supporting Documents**

**(ECF Nos. 199, 199-1, 199-2, 199-3, and 199-4)**

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## THE FEDERATION'S MOTION TO COMPEL PRODUCTION OF COMPLETE LOAN DATA AND FOR EXTENSION OF DEADLINES AND REQUEST FOR EXPEDITED BRIEFING AND DECISION

For the reasons given in the accompanying brief, the Federation of Southern Cooperatives/Land Assistance Fund (the "Federation") moves the Court to:

(1)     Compel the Secretary of Agriculture to disclose the loan data requested by the Federation in accordance with this Court's Scheduling Order directing "[l]oan data disclosure" by April 15, 2022; and

(2)     Extend the expert-designation deadline and all current deadlines thereafter by the difference in the number of days between the date of the Secretary's original production and either the date on which the Secretary produces the loan data the Federation has requested, or, in the event the Secretary contends such data does not exist or cannot reasonably be discovered, the date on which the Secretary so declares under penalty of perjury following a reasonably diligent search that is specifically described in his declaration.

Given the fast-approaching case deadlines, the Federation requests that the Court set an expedited briefing schedule and order the filing of any responses by May 20, 2022.  In the interest of expediency, the Federation waives its right to file a reply.

Dated: May 13, 2022                                    Respectfully submitted,

*/s/ Chase J. Cooper*
Chase J. Cooper
TX Bar No. 24087342
ccooper@winston.com
WINSTON & STRAWN LLP
2121 N. Pearl Street, Suite 900
Dallas, TX 75201
P: 214-453-6500

George C. Lombardi *(admitted pro hac vice)*
Illinois Bar No. 6187715
glombardi@winston.com
Julie A. Bauer *(admitted pro hac vice)*
Illinois Bar No. 6191271
jbauer@winston.com
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
WINSTON & STRAWN LLP
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Andrew E. Tauber (*pro hac vice forthcoming*)
NY Bar No. 3905676
atauber@winston.com
WINSTON & STRAWN LLP
1901 L Street NW
Washington, D.C. 20036
P: 202-282-5000

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

/s/ Dorian L. Spence
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

/s/ Mark D. Rosenbaum
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

**CERTIFICATE OF CONFERENCE**

As for the request to compel loan data, on May 4, 2022 and May 9, 2022, counsel for the Federation and counsel for the Secretary conferred about the deficiencies in the loan data the Secretary has produced.  Counsel for the Federation stated that the Federation would move to compel if the Secretary did not supply the information the Federation's expert requested.  Counsel for the Secretary stated that the Secretary would not be providing any of the data requested by the Federation because it is beyond the scope of the Court's Scheduling Order.

As for the extension request, on May 12, 2022, counsel for Plaintiffs and counsel for the Secretary indicated via email that Plaintiffs and the Secretary do not oppose a two-week extension of expert deadlines so long as that extension does not affect current summary-judgment deadlines; however, counsel for Plaintiffs and counsel for the Secretary indicated that Plaintiffs and the Secretary oppose any extension that would affect the current summary-judgment deadlines. Counsel for the other Intervenors—the National Black Farmers Association and the Association of American Indian Farmers—indicated that the other Intervenors do not oppose a two-week extension of expert deadlines.

*/s/ Chase J. Cooper*
Chase J. Cooper


**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on May 13, 2022, which will serve all counsel of record.


*/s/ Chase J. Cooper*
Chase J. Cooper

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

SID MILLER, et al.,

      *Plaintiffs,*

      *v.*

TOM VILSACK, in his official capacity as
Secretary of Agriculture,

      *Defendant.*

No. 4:21-cv-00595-O

## BRIEF IN SUPPORT OF THE FEDERATION'S MOTION TO COMPEL PRODUCTION OF COMPLETE LOAN DATA AND FOR EXTENSION OF DEADLINES AND REQUEST FOR EXPEDITED BRIEFING AND DECISION

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................ 1

II.     BACKGROUND ......................................................................................................... 3

III.    LEGAL STANDARDS ............................................................................................... 7

        A.      Compelling Discovery ..................................................................................... 7

        B.      Modifying a Scheduling Order ........................................................................ 7

IV.     ARGUMENT .............................................................................................................. 8

        A.      The Court Should Compel the Secretary to Produce Complete Loan Data ............ 8

                1.      The Scheduling Order Requires Disclosure of All "Loan Data"—
                        Not Just the Data Considered by Dr. Robb .......................................... 8

                2.      The Loan Data is Relevant to the Defense of Section 1005. ..................... 9

                3.      The Loan Data is Proportional to the Needs of this Case. ...................... 10

        B.      The Court Should Extend Expert-Designation Deadlines and All Current
                Deadlines Thereafter to Account for the Secretary's Delay. ............................... 12

        C.      The Court Should Expedite Briefing and Decision of this Motion. ..................... 14

V.      CONCLUSION ......................................................................................................... 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Crosby v. La. Health Serv. & Indem. Co.*,
  647 F.3d 258 (5th Cir. 2011) ....................................................7

*Crosswhite v. Lexington Ins. Co.*,
  321 F. App'x 365 (5th Cir. 2009) ...............................................7

*Dean v. City of Shreveport*,
  438 F.3d 448 (5th Cir. 2006) ....................................................8

*Earl v. Boeing Co.*,
  515 F. Supp. 3d 590 (E.D. Tex. 2021) .........................................7

*Lopez v. Don Herring Ltd.*,
  327 F.R.D. 567 (N.D. Tex. 2018) ...............................................9

*Miller v. Vilsack*,
  No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022) (per curiam)...........1, 2, 3

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*,
  315 F.3d 533 (5th Cir. 2003) ....................................................7

*Squyres v. Heico Cos., L.L.C.*,
  782 F.3d 224 (5th Cir. 2015) ...................................................7, 12

**Statutes**

American Rescue Plan Act Section 1005 ........................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 16(b)(4)..........................................................7, 12

Rule 16(b) .........................................................................7

Rule 26 ...........................................................................2, 5

Rule 26(b)(1).....................................................................6, 7

Rule 26(b)(1)'s...................................................................9

Scheduling Order Requires Disclosure of All "Loan Data" .........................8

The Federation of Southern Cooperatives/Land Assistance Fund (the "Federation") moves the Court on an expedited basis for an order (1) compelling the United States Secretary of Agriculture to disclose the loan data requested by the Federation in accordance with this Court's Scheduling Order directing "[l]oan data disclosure" by April 15, 2022; and (2) extending the expert-designation deadline and all other currently established deadlines by the difference in the number of days between the date of the Secretary's original production and either the date on which the Secretary produces the loan data the Federation has requested, or, in the event the Secretary contends such data does not exist or cannot reasonably be discovered, the date on which the Secretary so declares under penalty of perjury following a reasonably diligent search that is specifically described in his declaration.

## I.    INTRODUCTION

A unanimous panel of the Fifth Circuit found the Secretary to be an inadequate representative of the interest of the Federation's members in defending the constitutionality of Section 1005 of the American Rescue Plan Act. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3–4 (5th Cir. Mar. 22, 2022) (per curiam).  That inadequate representation has persisted post-remand, evidenced most recently by the Secretary's response to the Federation's repeated requests for loan data.  Despite the Federation's requests, the Secretary has refused to produce the full scope of the loan data to which the Federation is entitled.

Significant gaps in the Secretary's loan-data disclosure have prevented the Federation's expert from meaningfully analyzing the loan data.  Those gaps in turn prevent the Federation from effectively defending Section 1005 on behalf of its members—individuals with a concrete interest in obtaining the benefits Section 1005 would provide.  Deprived of the data required to present its own expert case on behalf of its members, and prevented thus far from taking even limited fact

discovery, the Federation is forced to fully rely on its inadequate representative, the Secretary, to defend Section 1005.

For his part, the Secretary has justified his refusal to disclose complete loan data on a flawed reading of both Rule 26 and this Court's Scheduling Order.  He says he need only disclose the data that his expert *considered*.  Not so.  The Federation's request was not limited to data the Secretary's expert considered, and the Court's Scheduling Order directing "[l]oan data disclosure" imposed no such limitation either.  The Secretary has also made the unsworn representation that "all or nearly all" of the requested loan data is either (a) non-existent or (b) stored in such a way that it cannot be assembled in usable format within a reasonable time.  But short of moving to compel, the Federation has no way of testing those representations.  For one, as the Fifth Circuit recognized, the Secretary has an interest in withholding the very type of data the Federation has requested.  *See Miller*, 2022 WL 851782, at *3.  What's more, it appears that no reasonably diligent search for the loan data has been conducted.  Given the significance of the missing data to proving intentional race discrimination in lending, and the adversity of interests acknowledged by the Fifth Circuit, the Federation has no choice but to move to compel.

Accordingly, because this Court's Scheduling Order requires disclosure of "[l]oan data," not just the data considered by the Federation's expert, and because the requested loan data is both crucial to the Federation's defense of Section 1005 and within the scope of permissible discovery under Rule 26, the Court should compel the Secretary to disclose the full scope of the loan data requested by the Federation and its expert.  If the Secretary contends that such data does not exist, he should so declare under penalty of perjury following a reasonably diligent search.  And if he contends that the relevant records are too voluminous to collect, review, and produce within a reasonable time frame, he should be compelled both to describe everything he did to attempt to

secure this critical information and to cooperate with the Federation and its experts to create a forensically reliable sampling of the records upon which the Federation's experts can rely.  Finally, because the Secretary's failure to produce complete loan data by the Court-ordered April 15 deadline has prevented the Federation's expert from conducting a meaningful analysis, there is good cause to extend the expert-designation deadline and all deadlines thereafter by the difference in the number of days between April 15 and the date on which the Secretary produces the requested data (or a reliable sampling thereof) or submits the requested declaration.

## II.   BACKGROUND

On March 22, 2022, the Fifth Circuit reversed this Court's denial of the Federation's motion to intervene and remanded the case "with the directive to permit the Federation's intervention."  *See Miller*, 2022 WL 851782, at *4.  The Fifth Circuit held that the Federation met its burden of showing the Secretary inadequately represented the Federation's interests because he would be unlikely to present potentially "highly relevant" evidence "that USDA is *continuing* to actively discriminate against its members." *Id.* at *3–4 (emphasis original, quotation omitted).

On March 25, 2022, the Court ordered the parties to meet and confer and to file a joint status report addressing four issues: (1) "what limitations, if any, the Court should place on the Federation's participation in this case"; (2) "what amendments, if any, the Court should make to the briefing schedule"; (3) "whether the parties continue to oppose the intervention of the National Black Farmers Association and the Association of American Indian Farmers"; and (4) "any other issues the Court should consider in light of the Federation's intervention." ECF No. 178.

On April 1, 2022, the parties filed the Joint Status Report.  *See* ECF No. 184.  In its portion of the Joint Status Report, the Federation requested the following loan data from the Secretary:

- Loan data from 2010 to present, to include at least the following:

      o   Data on applications for Farm Services Agency (FSA) loans (both direct and guaranteed), including data on applications approved/denied, disbursement amounts, conditions on use of funds, and length of time to approve/denial and disbursement of funds, with demographic data sufficient to identify racial disparities;

      o   Farm ownership data;

      o   Annual data on FSA and Farm Storage Facility Loan (FSFL) loan delinquencies/defaults; and

      o   Any data reviewed by Defendant's experts.

*Id.* at 9.

On April 5, 2022, the Court entered a Scheduling Order.  *See* ECF No. 186.  In it, the Court stated that the Federation would "receive what it has asked for, what the parties have agreed to, and what is necessary for the resolution of the case."  ECF No. 186 at 5.  The Court "[a]ccordingly" ordered the following schedule:

| Event | Deadline |
| --- | --- |
| Loan data disclosure | April 15 |
| Expert designations | May 15 |
| Rebuttal expert reports | June 5 |
| Close expert discovery | June 26 |
| Cross-MSJ briefs | July 17 |
| Cross-response briefs | August 2 |

*Id.*

On April 15, 2022, the Secretary produced some loan data to the Federation, and the Federation promptly provided that data to its expert, Dr. Mark P. Berkman. Dr. Berkman's review of the data confirmed that Dr. Robb's report used a set of variables to determine the riskiness of a particular loan application. *See* Declaration of Mark P. Berkman ("Berkman Decl.") ¶ 6. One variable is the loan applicant's USDA "risk score," which USDA assigns to an individual borrower on a scale of one to four, seemingly based on criteria not included in the data the Secretary has provided the Federation. *Id.* Other variables include certain "risk factors," such as: type of operation, total acreage, market value, gross revenue, value of farm production, total expenses, total liabilities, and total equity. *Id.* According to Dr. Berkman, it is unclear from the data provided whether and to what extent such risk factors were incorporated into the USDA's risk score. *Id.*

On April 28, 2022, Dr. Berkman completed his initial review of the loan data produced by the Secretary. Dr. Berkman found significant gaps that prevented him from meaningfully analyzing the data. *See* Berkman Decl. ¶ 11.

On April 29, 2022, the Federation notified the Secretary of the specific deficiencies in the loan data the Secretary produced.

On May 2, 2022, the Secretary responded to the Federation's request for the information necessary to remedy the deficiencies in the loan data. The Secretary provided a "codebook" to "clarify the scope of the data included," but otherwise refused the Federation's request. To justify his refusal to provide the requested information, the Secretary stated that he has produced all of the data considered by the Secretary's expert, Dr. Alicia Robb, in forming her opinion, and that the Federation is not entitled to any additional data under Rule 26 or this Court's Scheduling Order.

On May 3, 2022, Dr. Berkman reviewed the "codebook" against the loan data produced and found it insufficient to resolve the deficiencies identified previously. Dr. Berkman identified

5

three fundamental flaws in the data the Secretary provided.  First, the data included no information related to applications for loan servicing; without such information, Dr. Berkman cannot evaluate Dr. Robb's claims regarding discrimination in loan servicing.  *Id.* ¶ 8.  Second, the data did not include all of the factors the USDA considers when determining the riskiness of a loan application. *Id.* ¶ 9.  According to Dr. Berkman, the data includes only a few risk factors for direct loans; for guaranteed loans, the data includes no risk factors at all.  *Id.*  Third, the data is missing many of the values for the USDA risk score and/or risk factors the Secretary has identified: 66% of the loan applications that include the USDA risk score have missing values for other identified risk factors; 71% of the loan applications that include other identified risk factors are missing the USDA risk score; and 77% of the loan applications are missing the risk score.  *Id.* at ¶ 10.

On May 4, 2022 and May 9, 2022, counsel for the Federation and counsel for the Secretary conferred about the deficiencies in the loan data produced.  Counsel for the Federation stated that the Federation would move to compel if the Secretary did not supply the information that Dr. Berkman needed to conduct his analysis.  Counsel for the Secretary stated that the Secretary would not be providing any of the data requested by the Federation because it is, supposedly, beyond the scope of discovery to which the Federation is entitled.

On May 12, 2022 and May 13, 2022, counsel for the Secretary stated that the Secretary would not oppose a two-week extension of the expert deadlines so long as the extension did not affect the summary-judgment briefing deadlines.

## III.   LEGAL STANDARDS

### A.   Compelling Discovery

Under the Federal Rules of Civil Procedure, "the scope of discovery is broad."  *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).  Rule 26(b)(1), which governs the scope of civil discovery, provides that, unless limited by court order,

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).  "A party may move to compel production of materials that are within the scope of discovery and have been requested but not received."  *Crosswhite v. Lexington Ins. Co.*, 321 F. App'x 365, 368 (5th Cir. 2009) (citing Fed. R. Civ. P. 37(a)).  On a motion to compel, "[t]he moving party bears the burden to show that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence."  *Earl v. Boeing Co.*, 515 F. Supp. 3d 590, 599 (E.D. Tex. 2021).  "Once the moving party establishes that the materials requested fall within the scope of discovery, the burden shifts to the nonmovant to show 'how the requested discovery is overly broad, unduly burdensome, or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.'"  *Id.* (quoting *Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 580 (N.D. Tex. 2018)).

### B.   Modifying a Scheduling Order

Rule 16(b) governs requests to modify a scheduling order.  *See S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).  "A schedule may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "The good cause

standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension" *S&W Enters.*, 315 F.3d at 535 (quotation omitted). To evaluate "good cause," courts consider "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres v. Heico Cos., L.L.C.*, 782 F.3d 224, 237 (5th Cir. 2015) (quotation and brackets omitted).

## IV.   ARGUMENT

### A.   The Court Should Compel the Secretary to Produce Complete Loan Data.

The Court should compel the Secretary to produce the loan data the Federation requested in its portion of the Joint Status Report. *See* ECF No. 184 at 9. That data (1) must be disclosed to the Federation under the Court's Scheduling Order; (2) is relevant to the defense of Section 1005; and (3) is proportional to the needs of this constitutional case of nationwide significance.

#### 1.   The Scheduling Order Requires Disclosure of All "Loan Data"—Not Just the Data Considered by Dr. Robb.

The Court's Scheduling Order ordered "[l]oan data disclosure" by April 15. ECF No. 186 at 5. The order did not limit the scope of the loan data that the Secretary must produce to the Federation. Rather, it stated, without qualification, that "the Federation will receive" the loan data that "it has asked for." ECF No. 186 at 5. The Federation's request was not limited to the data Dr. Robb considered. To the contrary, the Federation asked for three specified categories of loan data "***and*** … [a]ny data reviewed by [the Secretary's] experts." ECF No. 184 at 9 (emphasis added). Thus, the Court's directive that the Secretary disclose the "[l]oan data" that the Federation "has asked for" was not limited to data that Dr. Robb considered.

8

### 2.      The Loan Data is Relevant to the Defense of Section 1005.

There can be no serious dispute that the loan data the Federation has requested is relevant to the defense of Section 1005's constitutionality.  As the Court knows, that defense will turn on whether Section 1005 is narrowly tailored to serve the compelling governmental interest of remedying the effects of discrimination in the administration of USDA farm-loan programs.  *See Dean v. City of Shreveport*, 438 F.3d 448, 454 (5th Cir. 2006).  The loan data the Federation has requested is directly relevant to that inquiry—in particular, the compelling-interest prong— because that data will tend to support or negate the existence of current and/or recent discrimination against minority farmers in USDA lending programs.  *See* Berkman Decl. ¶¶ 4, 6.

The data requested will help the Federation reliably establish lending discrimination against minority farmers.  To do that, an analysis must control for assorted risk factors, which should be complete—or at least representative—of all loan applications.  *Id.* ¶ 12.  Here, however, the loan data the Secretary has provided the Federation (1) does not identify all of the risk factors USDA considers when determining the riskiness of a loan application; and (2) for those risk factors identified in the data, there are significant missing values.  *Id.* ¶ 11.  As for the first point, the data includes only a few risk factors for direct loans; for guaranteed loans, the data includes no risk factors at all.  *Id.*  As for the second point, the data is missing many of the values for the USDA risk score and/or risk factors the Secretary has identified: 66% of the loan applications that include the USDA risk score have missing values for other identified risk factors; 71% of the loan applications that include other identified risk factors are missing the USDA risk score; and 77% of the loan applications are missing the risk score.  *Id.* at ¶ 10.  The Secretary's expert cannot perform a reliable lending-discrimination analysis unless these gaps are filled.  *Id.* at ¶ 11.

### 3.     The Loan Data is Proportional to the Needs of this Case.

The Federation's request for loan data satisfies Rule 26(b)(1)'s proportionality requirement.   In the proportionality analysis, courts consider the following factors: (1) the importance of the issues at stake in the action; (2) the amount in controversy; (3) the parties' relative access to relevant information; (4) the parties' resources; (5) the importance of the discovery in resolving the issues; and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  *See Lopez v. Don Herring Ltd.*, 327 F.R.D. 567, 584 (N.D. Tex. 2018) (citing Fed. R. Civ. P. 26(b)(1)).  Each of these factors favors discovery here.

First, the issues at stake are exceptionally important.  This case involves a constitutional challenge to a duly enacted federal law, and it raises the specific issue of whether Section 1005's race-conscious debt relief program is narrowly tailored to advance the government's compelling interest in remedying discrimination in USDA lending.   Resolution of that issue will have nationwide repercussions—especially for the farmers and ranchers who stand to benefit from the promised debt relief, like the Federation's members here.

Second, the amount in controversy is significant.  Although the Federation is not privy to the precise figure, it reasonably believes that the beneficiaries of Section 1005 stand to lose, collectively, millions of dollars in promised debt relief if the Secretary is permanently enjoined from administering Section 1005.

Third, the Secretary has exclusive access to the loan data the Federation has requested. Indeed, the loan data that the Federation has requested is held by the Secretary's own agency. The Federation does not have access to it; only the Secretary does.  Lack of sufficient time to conduct the reasonably diligent search required to access the data is not a valid excuse.  The first lawsuits challenging Section 1005's constitutionality were filed in spring 2021, and adverse preliminary-

10

injunction rulings issued as early as June of that year.  Thus, the Secretary has had ample time to obtain the information through a reasonably diligent search. If the Secretary nonetheless contends, despite the time and resources at his disposal, that the requested loan data does not exist or cannot be discovered despite a reasonably diligent search, he should be compelled to so declare under penalty of perjury in a declaration that specifically describes the steps he has taken to secure the data.  He should be further compelled to supply the loan application forms used, which will demonstrate how vital and accessible the requested data is.

Fourth, the Secretary's resources greatly exceed those of the Federation.  The Secretary is the head of a United States agency represented by the Department of Justice, whereas the Federation is a nonprofit cooperative association of socially disadvantaged farmers and ranchers.

Fifth, the loan data is crucial to the defense of Section 1005's constitutionality.  As noted on page nine, the Federation needs the requested loan data to reliably establish lending discrimination against minority farmers, and thus to establish the compelling interest necessary to support Section 1005's constitutionality.  Without the requested loan data, the Secretary's expert cannot perform a reliable lending-discrimination analysis.  Berkman Decl. ¶ 11.

Finally, the burden of producing the loan data does not outweigh the significant benefits of obtaining that data.  The likely benefit is significant here: the requested loan data will inject reliability into an otherwise incomplete analysis of lending discrimination by allowing the Federation's expert to control for relevant risk factors.  The likely burden is insufficient to overcome the significant benefit of the loan data.  To the extent the Secretary cites the scope of the requisite search as a ground for refusing disclosure, the Court should reject the argument.  The Secretary—and more broadly, the Government—is no stranger to litigation involving large volumes of information, and litigants often employ statistical sampling techniques to limit review

11

to a forensically reliable data set. *See* Berkman Decl. ¶ 15. If the Secretary contends that the requested data does not exist at all, the Secretary should, at the very least, so declare under penalty of perjury following a reasonably diligent search that is specifically described in his declaration.

Accordingly, because all six proportionality factors weigh in favor of discovery of the loan data, the Court should compel the Secretary to produce that data or to make the requested attestation under penalty of perjury.

**B.** **The Court Should Extend Expert-Designation Deadlines and All Current Deadlines Thereafter to Account for the Secretary's Delay.**

Because it has prevented the Federation's expert from conducting a reliable and timely analysis, the Secretary's delay producing complete and usable loan data constitutes good cause for modification of the Scheduling order under Rule 16(b)(4). That delay will prevent the Federation from meeting the expert-designation deadline (and all deadlines thereafter) despite the Federation's diligence. *Cf.* Berkman Decl. ¶¶ 9–10.

To determine whether there is "good cause" to modify the Scheduling Order, the Court should consider "(1) the explanation for the failure to timely comply with the scheduling order; (2) the importance of the modification; (3) potential prejudice in allowing the modification; and (4) the availability of a continuance to cure such prejudice." *Squyres*, 782 F.3d at 237 (quotation marks and brackets omitted). Each of these factors favors a finding of "good cause" here.

First, the Federation has a compelling explanation for its inability to comply with the Scheduling Order. Under the Scheduling Order, the Federation should have received the loan data it requested on April 15, 2022. It did not. Instead, the Secretary says he provided only the data on which the Secretary's expert relied in forming her opinions. But not even that data was provided. According to the Federation's expert, the USDA has not provided the full scope of data

on which Dr. Robb probably relied in forming her opinions.  Berkman Decl. ¶ 7.  As noted, the Secretary's data (1) includes no information related to applications for loan servicing; (2) fails to identify all of the risk factors the USDA uses to assess the riskiness of a particular loan application; and (3) fails to include values for those risk factors that are identified.  *Id.* ¶¶ 8–11.  Thus, even under the Secretary's flawed interpretation of its data-disclosure obligation, the Federation has not yet received the data it should have received on April 15, and that data is necessary for the Federation's expert to perform a reliable analysis.  *See id.* ¶ 11.

Second, modification is crucial.  If the Scheduling Order is not adjusted to account for the Secretary's failure to produce complete loan data by April 15, the Federation's expert will be forced to prepare a rushed report lacking the information he needs to reliably analyze lending-discrimination in USDA programs.  *See id.*  A comprehensive expert report is particularly important in light of this Court's refusal to allow fact discovery.

Finally, the third and fourth factors are met because neither the Plaintiffs nor the Secretary will be prejudiced by a slight modification of the Scheduling Order.  For starters, no party has a greater interest in the timely resolution of this case than the Federation, whose members remain without much-needed debt relief during the pendency of this litigation.  But it is more important— to both the Federation and the general public—that the constitutionality of Section 1005 be decided on a complete record.  For their part, Plaintiffs are not prejudiced because the preliminary injunction remains in place.  Nor is the Secretary prejudiced.  Modification of the Scheduling Order will allow the Federation's expert to prepare a reliable expert report—and a reliable report is critical to a defense of Section 1005, which is the Secretary's purported objective in this litigation.

13

In sum, each of the "good cause" factors favors modifying the Scheduling Order to account for the Secretary's failure to produce the requested loan data by April 15. As of this filing, the Federation has not received (a) the loan data it has requested; or (b) the Secretary's attestation under penalty of perjury that such data does not exist or cannot reasonably be produced following a reasonably diligent search. Accordingly, the Court should extend expert-designation deadline and all current deadlines thereafter by the difference in the number of days between the date of the Secretary's original production and either the date on which the Secretary produces the loan data the Federation has requested, or, in the event the Secretary contends such data does not exist or cannot reasonably be discovered, the date on which the Secretary so attests under penalty of perjury following a reasonably diligent search.

### C.      The Court Should Expedite Briefing and Decision of this Motion.

Given the fast-approaching case deadlines, the Federation requests that the Court set an expedited briefing schedule and order the filing of any responses by no later than May 20, 2022. In the interest of expediency, the Federation waives its right to file a reply.

### V.      CONCLUSION

For the foregoing reasons, the Court should (1) compel the Secretary to disclose the loan data requested by the Federation in accordance with this Court's Scheduling Order, or, at minimum, cooperate with the Federation to agree upon a forensically sound methodology for sampling the requested data; and (2) extend the expert-designation deadline and all current deadlines thereafter by the difference in the number of days between the date of the Secretary's original production and either the date on which the Secretary produces the loan data the Federation has requested, or, in the event the Secretary contends such data does not exist or cannot

reasonably be discovered, the date on which the Secretary so declares under penalty of perjury following a reasonably diligent search that is specifically described in his declaration.

Dated: May 13, 2022                              Respectfully submitted,

                                                 */s/ Chase J. Cooper*
                                                 Chase J. Cooper
                                                 TX Bar No. 24087342
                                                 ccooper@winston.com
                                                 **WINSTON & STRAWN LLP**
                                                 2121 N. Pearl Street, Suite 900
                                                 Dallas, TX 75201
                                                 P: 214-453-6500

                                                 George C. Lombardi *(admitted pro hac vice)*
                                                 Illinois Bar No. 6187715
                                                 glombardi@winston.com
                                                 Julie A. Bauer *(admitted pro hac vice)*
                                                 Illinois Bar No. 6191271
                                                 jbauer@winston.com
                                                 **WINSTON & STRAWN LLP**
                                                 35 West Wacker Drive
                                                 Chicago, IL 60601
                                                 P: 312-558-5600

                                                 Kobi K. Brinson *(admitted pro hac vice)*
                                                 NC Bar No. 23827
                                                 kbrinson@winston.com
                                                 **WINSTON & STRAWN LLP**
                                                 300 South Tryon Street, 16th Floor
                                                 Charlotte, NC 28202
                                                 P: 704-350-7700

                                                 Andrew E. Tauber *(pro hac vice forthcoming)*
                                                 NY Bar No. 3905676
                                                 atauber@winston.com
                                                 **WINSTON & STRAWN LLP**
                                                 1901 L Street NW
                                                 Washington, D.C. 20036
                                                 P: 202-282-5000

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

*/s/ Dorian L. Spence*
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

*/s/ Mark D. Rosenbaum*
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
**PUBLIC COUNSEL**
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

16

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on May 13, 2022, which will serve all counsel of record.

*/s/ Chase J. Cooper*
Chase J. Cooper

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

SID MILLER, et al.,

      *Plaintiffs,*

   *v.*

TOM VILSACK, in his official capacity as
Secretary of Agriculture,

      *Defendant.*

No. 4:21-cv-00595-O

## DECLARATION OF MARK P. BERKMAN

I, Mark P. Berkman, under 28 U.S.C. § 1746, declare as follows:

1.     I am over eighteen years of age and have personal knowledge of the facts set forth in this Declaration.

2.     I am a Principal at The Brattle Group, Inc., and I am an expert in applied microeconomics in the areas of the environment, energy, and natural resources; environmental health and safety; intellectual property; and discrimination.

3.     I have conducted (a) statistical studies of discrimination by mortgage lenders for federal regulators; (b) internal reviews to detect such practices on behalf of lending institutions; and (c) statistical analyses of discrimination in hiring, promotion, pay, and contracting.

4.     I have been retained as an expert by counsel for the Federation of Southern Cooperatives/Land Assistance Fund ("Federation") to analyze loan data and other sources of evidence and to provide an expert opinion on (a) the existence of current and/or recent discrimination by the United States Department of Agriculture ("USDA") against minority farmers

in USDA lending programs; and (b) the effect of any such current and/or recent discrimination on minority farmers in the present day.

5.      I have reviewed the report of the USDA's expert, Dr. Alicia Robb, as well as the loan data the Secretary has provided the Federation.

6.      My review of both Dr. Robb's report and the loan data the Secretary has provided the Federation indicates that Dr. Robb considered the loan applicant's USDA "risk score," which I understand that the USDA assigns to an individual borrower on a scale of one to four, seemingly based on criteria not included in the data the Secretary has provided the Federation.  Other variables included in the loan data are additional "risk factors," such as: type of operation, total acreage, market value, gross revenue, value of farm production, total expenses, total liabilities, and total equity.  It is unclear from the data provided whether and to what extent such risk factors were incorporated into the USDA's risk score.

7.      Based on my experience conducting statistical analyses of discrimination and my review of both Dr. Robb's report and the data the Secretary has provided the Federation, and in my professional opinion, the data the Secretary has provided the Federation is not the full scope of data on which Dr. Robb probably relied in forming her opinions.

8.      Based on my review of the data the Secretary has provided the Federation, the data the Secretary has provided the Federation does not include any data related to applications for loan servicing, which would be necessary to evaluate empirically the claims Dr. Robb makes in her report regarding discrimination in loan servicing.

9.      Based on my experience conducting statistical analyses of discrimination and my review of both Dr. Robb's report and the data the Secretary has provided the Federation, and in my professional opinion, the data the Secretary has provided the Federation does not include all

2

of the factors the USDA considers when determining the riskiness of a particular loan application. The data the Secretary has provided the Federation includes only a few risk factors for direct loans; for guaranteed loans, the data includes no risk factors at all.

10.     Based on my  review of the data the Secretary has provided the Federation, the data the Secretary has provided the Federation is missing many of the values for the USDA risk score and/or the risk factors the Secretary has identified.  For example, 66% of the loan applications that include the USDA risk score have missing values for other identified risk factors; 71% of the loan applications that include other identified risk factors are missing the USDA risk score; and 77% of the loan applications are missing the risk score.

11.     Based on my experience conducting statistical analyses of discrimination and my review of both Dr. Robb's report and the data the Secretary has provided, and in my professional opinion, the data the Secretary has provided the Federation is insufficient to allow me to perform a reliable lending-discrimination analysis because (1) the data does not identify all of the risk factors USDA considers when determining the riskiness of a loan application; and (2) for those risk factors identified in the data, there are significant missing values.

12.     Based on my experience conducting statistical analyses of discrimination, and in my professional opinion, conducting a reliable analysis of lending discrimination requires that risk factors be complete or at least representative.  The need for complete or representative risk-factor information is well established.  Consider, for example, the seminal economics article examining racial discrimination in lending: Alicia Munnell, et. al., "Mortgage Lending in Boston: Interpreting HMDA Data," which was published in *The American Economic Review*.[1]  In that article, the authors control for many risk factors when assessing whether race impacts mortgage lending

---

[1] Alicia Munnell, et.al., "Mortgage Lending in Boston: Interpreting HMDA Data," *The American Economic Review*, Vol. 86, Issue 1, (March 1996), 25-33.

3

decisions, including debt-to-income ratio, mortgage payment history, and consumer credit history.[2]  For her part, Dr. Robb appears to recognize the importance of considering the risk score and other factors as potential explanations for differing application outcomes for minority and non-minority applicants. In particular, she considers how the USDA risk score varies across race categories and how those scores relate to the disposition of the application.[3]

13.     Based on my experience conducting statistical analyses of discrimination and my review of both Dr. Robb's report and the data the Secretary has provided, and in my professional opinion, to perform a reliable analysis I require the following data from the Secretary:

- For Loan Origination:

  o   Complete records for the identified risk factors for all loan applications or documents sufficient to show that these data were not collected or considered in the lending process;

  o   An indicator for the county of the farm and/or the local USDA office assigned to the application; and

  o   Complete records for any and all additional factors considered in the lending process and maintained in structured electronic database(s), including but not limited to those related to eligibility determinations, risk of default, cost of default, and demographics, accompanied by data dictionaries or other documentation sufficient to show the meaning of each field and the interpretation of possible values.

---

[2] Largely in response to the Munnell et al. study, the US government now requires mortgage lenders to provide standardized data on all loan applications received, including many risk factors. See Federal Financial Institutions Examination Council, November 2020, *Filing instructions guide for HMDA data collected in 2021*, OMB Control #3170-0008. Available at: https://s3.amazonaws.com/cfpb-hmda-public/prod/help/2021-hmda-fig.pdf
[3] Robb Report, Table 22.

- For Loan Servicing:

    o All risk factors considered in decisions regarding loan servicing;

    o Demographic information for each borrower;

    o State and county location of the farm/and or the local USDA office assigned to service the loan;

    o Pre- and post-servicing terms, including but not limited to, balances, interest rates, and repayment terms;

    o A unique identifier linking the origination and servicing data sets; and

    o A data dictionary or other documentation sufficient to show the meaning of each field and the interpretation of the possible values.

14.    Based on my experience conducting statistical analyses of discrimination, and in my professional opinion, most lending institutions would maintain the data I have identified in the preceding paragraph.

15.    Based on my experience conducting statistical analyses of discrimination, and in my professional opinion, in cases involving a large volume of information, litigants often employ statistical sampling techniques to limit review to a forensically reliable data set.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 13th day of May, 2022 in San Francisco County, California.

_____

Mark P. Berkman

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## PROPOSED ORDER GRANTING REQUEST FOR EXPEDITED BRIEFING ON THE FEDERATION'S MOTION TO COMPEL THE SECRETARY'S PRODUCTION OF COMPLETE LOAN DATA AND FOR EXTENSION OF DEADLINES

Having considered the Federation of Southern Cooperatives/Land Assistance Fund's ("Federation") request to expedite briefing and for good cause shown, it is hereby ORDERED that:

1.      The Federation's request to expedite briefing is GRANTED.

2.      Any response to the Federation's motion to compel the Secretary's production of complete loan data and for extension of deadlines shall be filed no later than May 20, 2022.

3.      The Federation shall not file a reply brief in support of its motion, as it has expressly waived its right to do so in its moving papers, and the Court will rule on the motion without awaiting any reply.

IT IS SO ORDERED.

Dated: _____

_____
THE HONORABLE REED O'CONNOR
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## PROPOSED ORDER GRANTING THE FEDERATION'S MOTION TO COMPEL PRODUCTION OF COMPLETE LOAN DATA AND FOR EXTENSION OF DEADLINES AND REQUEST FOR EXPEDITED BRIEFING AND DECISION

Having considered the briefing on the Federation of Southern Cooperatives/Land Assistance Fund's (the "Federation") Motion to Compel Production of Complete Loan Data and For Extension of Deadlines and Request for Expedited Briefing and Decision (the "Motion"), and for good cause shown, it is ORDERED that:

1. The Federation's Motion is GRANTED.

2. The Secretary of Agriculture is COMPELLED to produce to the Federation within 14 days the full scope of the loan data requested in the Federation's portion of the Joint Status Report (ECF No. 184 at 9) as well as the loan data requested by the Federation's expert, including:

- For Loan Origination:

    o Complete records for the identified risk factors for all loan applications or documents sufficient to show that these data were not collected or considered in the lending process;

- o   An indicator for the county of the farm and/or the local USDA office assigned to the application; and

- o   Complete records for any and all additional factors considered in the lending process and maintained in structured electronic database(s), including but not limited to those related to eligibility determinations, risk of default, cost of default, and demographics, accompanied by data dictionaries or other documentation sufficient to show the meaning of each field and the interpretation of possible values.

- For Loan Servicing:

  - o   All risk factors considered in decisions regarding loan servicing;

  - o   Demographic information for each borrower;

  - o   State and county location of the farm/and or the local USDA office assigned to service the loan;

  - o   Pre- and post-servicing terms, including but not limited to, balances, interest rates, and repayment terms;

  - o   A unique identifier linking the origination and servicing data sets; and

  - o   A data dictionary or other documentation sufficient to show the meaning of each field and the interpretation of the possible values.

2.      If the Secretary contends the data described above and in the Federation's portion of the Joint Status Report (ECF No. 184 at 9) does not exist or cannot reasonably be discovered, the Secretary shall, within 14 days, so declare under penalty of perjury following a reasonably diligent search specifically described in the declaration.

2

3.     Expert deadlines and all other currently established deadlines are EXTENDED by the difference in the number of days between the date of the Secretary's original production of loan data and either the date on which the Secretary produces the loan data the Federation has requested, or, in the event the Secretary contends such data does not exist or cannot reasonably be discovered, the date on which the Secretary so declares under penalty of perjury following a reasonably diligent search that is specifically described in his declaration.

IT IS SO ORDERED.

Dated: _____

_____
THE HONORABLE REED O'CONNOR
UNITED STATES DISTRICT JUDGE

**Tab 11**

**Order Expediting Briefing on The Federation's Motion to Compel**

**(ECF No. 200)**

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| **SID MILLER, et al., on behalf of themselves and others similarly situated,** | § | |
| | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-0595-O** |
| | § | |
| **TOM VILSACK, in his official capacity as Secretary of Agriculture,** | § | |
| | § | |
| | § | |
| **Defendant,** | § | |
| | § | |
| **FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND; NATIONAL BLACK FARMERS ASSOCIATION (NBFA); ASSOCIATION OF AMERICAN INDIAN FARMERS (AAIF),** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Intervenor Defendants.** | § | |

## ORDER

Before the Court is the Federation's Motion to Compel Production of Complete Loan Data and for Extension of Deadlines and Request for Expedited Briefing and Decision (ECF No. 199), filed May 13, 2022. To expedite resolution of the motion, the Court **ORDERS** the Government to respond to the motion no later than May 18, 2022.

**SO ORDERED** on this **14th day** of **May, 2022**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

**Tab 12**

**The Secretary's Opposition to the Federation's Motion to Compel**

**(ECF No. 201)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, *et al.*, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 4:21-cv-595-O

## DEFENDANT'S OPPOSITION TO THE FEDERATION'S MOTION TO COMPEL AND FOR EXTENSION OF DEADLINES

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259/ Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendant*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................................ ii

INTRODUCTION ........................................................................................................................ 1

BACKGROUND .......................................................................................................................... 1

STANDARD OF REVIEW .......................................................................................................... 5

    I.       Motions to Compel .......................................................................................... 5

    II.      Motions to Modify a Scheduling Order ........................................................... 6

ARGUMENT ................................................................................................................................ 6

    I.       The Government Disclosed the Loan Data Required by the Court's Scheduling
           Order and Rule 26(a)(2)(B). .......................................................................... 6

    II.      The Court Should Deny the Federation's Third Request to Open Fact Discovery to
           Seek Loan Data beyond What the Government's Expert Considered ..................... 8

    III.    The Court Should Deny the Motion to Modify the Scheduling Order. ................... 10

CONCLUSION .......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Amaya v. City of San Antonio,*
   No. 5:12-CV-00574-DAE, 2014 WL 3919569 (W.D. Tex. Aug. 11, 2014)..........................................7

*Deal v. Louisiana ex rel. Dep't of Just.,*
   No. CIV.A. 11-743-JJB, 2013 WL 4546772 (M.D. La. Aug. 28, 2013)....................................................8

*Ledbetter v. United States,*
   No. CIV.A. 3:96CV-0678X, 1996 WL 739036 (N.D. Tex. Dec. 18, 1996) ...........................................9

*Miller v. Vilsack,*
   No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022).........................................................................2

*S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA,*
   315 F.3d 533 (5th Cir. 2003).....................................................................................................................6

*Samsung Elecs. Am., Inc. v. Yang Kun Chung,*
   321 F.R.D. 250 (N.D. Tex. 2017)...............................................................................................................5

*Texas Democratic Party v. Dallas Cnty,*
   No. 3-08-CV-2117-P, 2010 WL 5141352 (N.D. Tex. Dec. 9, 2010) ...................................................6, 9

*United States ex rel. Wall v. Vista Hospice Care,*
   319 F.R.D. 498 (N.D. Tex. 2016)...............................................................................................................5

**Rules**

Fed. R. Civ. P. 16.........................................................................................................................................6

Fed. R. Civ. P. 26...................................................................................................................................*passim*

Fed. R. Civ. P. 34.........................................................................................................................................5

Fed. R. Civ. P. 37.........................................................................................................................................5

## INTRODUCTION

This Court has already denied the Federation's request to seek fact discovery—twice. The Federation seeks to relitigate those denials yet again, this time restyling its request as a motion to compel. According to the Federation's motion, the Court's recent Scheduling Order requiring the government to make its expert "[l]oan data disclosures" by April 15, 2022, also required the government to produce USDA loan data falling within "at least" four general and imprecisely defined categories that the Federation previously represented it would seek if the Court opened fact discovery. Fed'n Br. in Supp. of Mot. to Compel 1, 3-4, ECF No. 199-1. The Federation's reading of the Court's Scheduling Order lacks merit. The Court unequivocally denied the Federation's request to open fact discovery and instead set deadlines for expert disclosures and summary judgment briefing only. Scheduling Order 5, ECF No. 186. The government complied with its obligation to make its disclosures by April 15, 2022 by producing the entire set of data that its expert considered in forming the opinions in her written report—precisely what the Federal Rules of Civil Procedure require. *See* Fed. R. Civ. P. 26(a)(2)(B)(ii). The Federation's effort to compel production of other electronically stored information is an attempt to back-door its way into fact discovery. Just as the Court did when it entered its Scheduling Order, and just as the Court did again when it denied the Federation's Motion for Reconsideration, the Court should reject this third request to initiate fact discovery. The Federation's Motion to Compel and to Extend Deadlines should be denied.

## BACKGROUND

In March 2021, Congress enacted § 1005 of the American Rescue Plan Act (ARPA), the statute at issue in this litigation. In April 2021, Plaintiffs filed this suit challenging that statute. *See* Compl, ECF No. 1. On July 1, 2021, the Court granted Plaintiffs' motion to certify two classes and preliminarily enjoined the government "from discriminating on account of race or ethnicity in

administering section 1005 of the American Rescue Plan Act for any applicant who is a member of the Certified Classes." Order, ECF No. 60.

In mid-July 2021 the original parties filed a joint scheduling proposal, which indicated the parties' agreement not to take fact discovery and set out an expeditious schedule for completing expert discovery and moving to summary judgment. Jt. Rpt., ECF No. 70. The Court entered an order adopting the parties' agreed schedule. Order, ECF No. 85.

In October 2021, the Federation moved to intervene both as of right and permissively, stating that it did not "intend to seek reconsideration of any rulings in the case to date" or "seek to relitigate any prior rulings." Fed'n's Mem. in Supp. of Mot. to Interv. at 15, 22, ECF No, 93-1. This Court denied the motion to intervene, Order, ECF No. 143, and the Federation appealed, Notice of Appeal, ECF No. 147. The Fifth Circuit reversed, concluding that the Federation would present an argument that the Secretary would not, and that it had thus shown an adversity of interest warranting intervention. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. Mar. 22, 2022).

This Court then ordered the parties to submit a joint status report addressing any limitations the Court should place on the Federation's participation in the case and an amended briefing schedule. Order, ECF No. 178. In the joint status report, the Federation asserted—for the first time in the course of the litigation—that it wished to pursue "three categories" of what it described as "limited, targeted fact discovery." Jt. Status Rpt. 8-9, ECF No. 184. Those proposed categorizes of fact discovery included (1) "[l]oan data from 2010 to the present, including *at least*" several broad-ranging sets of loan application and farm ownership data, in addition to any data reviewed by Defendant's experts; (2) several declarations and testimony from Federation members and other farmers; (3) "[o]ther limited discovery" that included a range of documents requests and depositions of USDA officials. *Id.* at 9-10 (emphasis added).

The government urged the Court to limit the Federation's participation to expert disclosures and summary judgment briefing,[1] explaining that doing so "would permit the Federation to fully participate in the case according to the parameters long agreed to by the parties, ordered by the Court, and proposed by the Federation itself in its motion to intervene, while preventing undue delay in the resolution of this case." *Id.* at 2-3. Addressing likely delay, the government asserted that responding to the Federation's broad data requests would require performing queries on multiple aging data systems that rely on 1980s-era technology, which would substantially elongate the discovery period and likely lead to ancillary litigation over discovery matters. *Id.* at 6-7. As to expert discovery, on the other hand, the government explained that it was prepared to expeditiously provide its "expert disclosures to the Federation"—that is, the "USDA loan data considered by its . . . expert, Dr. Alicia Robb, in the development of her report." *Id.* at 4. The government also stressed that its expert disclosures would contain "some," though not all, of the loan data the Federation sought through fact discovery. *Id.*

On April 5, 2022, the Court granted the Federation's intervention, ECF No. 185, and entered an order modifying the discovery and briefing schedule to allow the Federation's participation on substantially similar terms as the parties, ECF No. 186. In its Scheduling Order, the Court "denie[d] the Federation's request to reopen fact discovery for several independent reasons." *Id.* at 2. Among other reasons, the Court noted that, until April 1, 2022, the Federation had represented that it did not intend to seek fact discovery but only to present expert and other testimony, *id.* at 2-3; and it found that the Federation's proposed fact discovery "will likely delay resolution of this case, perhaps indefinitely," *id.* at 4. The Court thus entered a scheduling order modifying the deadlines for expert disclosures and summary judgment briefing. *Id.* at 5.

---

[1] Plaintiffs agreed with the same limitations on the Federation's participation. *Id.* at 2.

Under that schedule, the government's loan data disclosure was due by April 15, 2022. *Id.* After the Court's entry of a protective order, the government produced that data on that date.

On April 13, 2022, the Federation moved for reconsideration of the Court's entry of a scheduling order that declined to open fact discovery. Mot. for Reconsideration, ECF No. 187. The government and Plaintiffs opposed the motion. On April 22, 2022, the Court denied the Federation's motion. Order Denying Mot. for Reconsideration, ECF No. 196. In doing so, the Court emphasized that it had not denied "all discovery" but had "granted [the Federation's] reasonable request" "for expert discovery." *Id.* at 2.

Roughly one week later, on April 29, 2022, the Federation sent the government a "USDA data request." The request sought (1) a data dictionary or other documentation to clarify the meaning and interpretation of certain fields in the data sets provided, and (2) "records" or "documents" containing USDA loan application data beyond that contained in the government's expert disclosure. The government responded the following business day by producing a data codebook elaborating on the meaning of each data field and containing additional notes to clarify the scope of the data included in its expert disclosure. As to the Federation's requests for additional records and data, the government responded that it had "already produced the entirety of the data considered by our expert in forming her opinions, as required by Rule 26 and the Court's order, and as we had agreed to produce." The government stated that it would not produce "data in responses to [the Federation's] additional discovery requests, which" sought evidence "beyond the expert discovery ordered by the Court." On May 3, 2022, the Federation stated that if the government declined to provide the additional data, it would move to compel. The parties conferred by phone again on May 4 and May 9, 2022. On May 10, 2022, the government again stated by email that its position on the Federation's request for additional loan data remained the same: the government had "already provided all that is required under Rule 26 and the Court's order and there is no basis for additional discovery requests." The

government also represented that much or all of the data sought by the Federation is "either non-existent or is stored in such a way that it is practically impossible to gather and assemble in a usable format within any reasonable time frame." The government declined to further detail the state of available data because the government had already made the expert disclosures required by the Court and Federal Rule of Civil Procedure 26, and the Federation's requests went beyond the scope of authorized discovery.

Separately, on May 12, 2022, the Federation asked the parties to agree to a two-week extension to the deadline for its expert designations. The government and Plaintiffs agreed to the two-week extension, provided that the extension did not alter the current briefing schedule.

On May 13, 2022—one month after the government made its expert disclosures and on the eve of the original deadline for the Federation's expert disclosures—the Federation moved to compel the production of all of the "USDA loan data" included in the categories of fact discovery the Federation had proposed in the parties' joint status report. Mot. to Compel, ECF No. 199.

## STANDARD OF REVIEW

## I.     Motions to Compel

Under Federal Rule of Civil Procedure 37(a), a party may move to compel any disclosure required by Rule 26(a) or responses to documents requests made under Rule 34. *United States ex rel. Wall v. Vista Hospice Care*, 319 F.R.D. 498, 501 (N.D. Tex. 2016). Rule 26(a) requires that outside experts disclose a "written report" that contains several enumerated items. Fed. R. Civ. P. 26(a)(2)(B)(ii). Rule 34(a) outlines procedures for requests for "documents or electronically stored information," including "data or data compilations." Those requests must fall "within the scope of Rule 26(b)," and must conform to other procedural requirements. Fed. R. Civ. Pr. 34; *see also Samsung Elecs. Am., Inc. v. Yang Kun Chung*, 321 F.R.D. 250, 281 (N.D. Tex. 2017). Rule 26(b)(1), in turn, provides that, "[u]nless otherwise limited by the Court, . . . [p]arties may obtain discovery regarding

any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" When bringing a motion to compel the production of documents or electronically stored information, "[i]t is axiomatic that a court may not compel" production "unless the party seeking such an order has served a proper discovery request on the opposing party." *Texas Democratic Party v. Dallas Cnty*, No. 3-08-CV-2117-P, 2010 WL 5141352, at *1 (N.D. Tex. Dec. 9, 2010) (citing cases).

## II.     Motions to Modify a Scheduling Order

"A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "The good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension." *S&W Enters., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (quotation omitted).

## ARGUMENT

## I.      The Government Disclosed the Loan Data Required by the Court's Scheduling Order and Rule 26(a)(2)(B).

The Court has repeatedly denied the Federation's efforts to conduct fact discovery. The Court's April 5, 2022 Scheduling Order permitted the Federation to participate in the case on the same terms as it had sought to intervene from the outset, and consistent with the Court's initial scheduling order that had long governed the case: to present expert testimony and summary judgment briefing. Scheduling Order 2, 5, ECF No. 186. Because "[t]he parties, including the Federation, have long represented that this case can and should be resolved through expert testimony and briefing," the Court reasoned, a modified case schedule that did not open the litigation for fact discovery gave the Federation "what it has asked for, what the parties have agreed to, and what is necessary for the resolution of this case." *Id.* at 5. The Court thus set a schedule for expert discovery and summary judgment briefing. *Id.*

Under that schedule, the government was required to make its "[l]oan data disclosure" by April 15. *Id.* Given that the Court had denied the Federation's request for fact discovery, the government understood its loan data disclosure to be governed by Rule 26(a)(2), which sets forth the procedural requirements for expert testimony. *Amaya v. City of San Antonio*, No. 5:12-CV-00574-DAE, 2014 WL 3919569, at *2 (W.D. Tex. Aug. 11, 2014). Under Rule 26(a)(2)(B)(ii), a testifying expert's written report must contain "the facts and data considered by the witness" in forming her opinions. The Court's Scheduling Order setting a deadline for "[l]oan data disclosure" tracks both the language of Rule 26(a)(2)(B)(ii) and the government's representation in the parties' joint status report that it was prepared to disclose to the Federation the "loan data considered by its . . . expert" after entry of a protective order. Jt. Status Rpt. 4, ECF No. 184; *see also* Scheduling Order 6 (noting that "Defendant s[aid] he will provide data considered by the experts" after entry of a protective order). So on April 15, after entry of the protective order, the government made the disclosure required by Rule 26(a)(2)(B)(ii). The government has thus satisfied its obligation to disclose the loan data as ordered by the Court.

The Federation makes no mention of Rule 26(a)(2)(B)(ii) anywhere in its motion and does not make any serious argument that the government has failed to comply with the requirements of that Rule. The crux of its argument is that the government was simply wrong to limit its disclosures to the data considered by its expert witness, Dr. Alicia Robb, because the Federation "asked for" more. Fed'n Br. 8. The Federation also makes a passing remark, in arguing toward the end of its brief that an extension is warranted, that its expert questions whether the government "provided the full scope of data on which Dr. Robb *probably relied* in forming her opinions." *Id.* at 12-13 (emphasis added). But this digression is supported by nothing more than its expert's speculative and conclusory assertion that, in his "opinion," additional data *could* exist and the government's expert *could have* reviewed some of it. *See* Berkman Decl. ¶¶ 6-10, ECF No. 199-2. The Federation's expert does not identify any aspect

of Dr. Robb's report that in fact analyzes, or even suggests that she relied on, specific data that he says is "probably" missing. *See id.* And, in its brief, the Federation itself does not actually argue that the government has failed to disclose any data that Dr. Robb actually considered and that the government was required to disclose under Rule 26(a)(2). Instead, it points back to the very categories of data it believes it is entitled to *under Rule 26(b)* (discussed below) simply because, in its view, that data is relevant and proportional to the needs to the case. Fed'n Br. at 8, 12-13. But that has nothing to do with the government's required disclosures under Rule 26(a)(2)(B)(ii). The government reiterates now, as it has repeatedly represented to the Federation, that it has provided the entirety of the data considered by its expert—all that must be disclosed under Rule 26(a)(2)(B)(ii).

## II.    The Court Should Deny the Federation's Third Request to Open Fact Discovery to Seek Loan Data beyond What the Government's Expert Considered.

Because the government has disclosed the full scope of the data considered by its expert in forming her opinions, it has fulfilled its obligations under this Court's Scheduling Order and Rule 26(a)(2)(B)(ii). The Federation's request for loan data that was "not 'considered' by [the government's] expert"—which "fall[s] outside of the expert disclosure requirements of Rule 26(a)(2)(B)"— "constitute[s] fact, not expert, discovery." *Deal v. Louisiana ex rel. Dep't of Just.*, No. CIV.A. 11-743-JJB, 2013 WL 4546772, at *6 (M.D. La. Aug. 28, 2013) (denying a motion to compel discovery beyond the "facts or data considered" by the expert because fact discovery had already closed). The Court should deny the Federation's third request for fact discovery.

The Federation's assertion that it is "entitled" to additional USDA data beyond what the government's expert considered turns entirely on its misreading of two phrases plucked out of context from the Court's Scheduling Order. The way the Federation sees it, the Court's use of the seemingly broad phrase "loan data" in its table of deadlines, together with the Court's observation that it was providing the Federation with "what it has asked for," cryptically authorized the Federation's request for a broad range of imprecisely defined USDA loan data. But the Federation never explains how its

interpretation of these two phrases squares with the remainder of the Court's 6-page Scheduling Order declining to open fact discovery—discovery which, the Court emphasized, the Federation *had not* "asked for" when it moved to intervene or at any other point until April 1, 2022.

Nor does the Federation explain how its reading squares with the discovery provisions in the Federal Rules. Its motion skips immediately to analyzing whether obtaining broad categories of "USDA loan data"—including but not limited to unspecified "[d]ata on applications for Farm Services (FSA) loans (both direct and guaranteed), including data on applications approved/denied," Fed'n Br. 4—would be relevant and proportional under the boundaries to discovery set by Rule 26(b), *id.* at 9-12. But that analysis is irrelevant, for at least two reasons. For one, Rule 26(b) sets the default scope of discovery "*[u]nless otherwise limited by court order.*" Fed. R. Civ. P. 26(b)(1) (emphasis added). Here, the scope of discovery has been limited by court order. The Court's Scheduling Order declining to open fact discovery renders irrelevant any question whether the scope of the fact discovery the Federation seeks would be otherwise consistent with the relevance and proportionality standards under Rule 26(b).

For another, the Rule 26(b) analysis only comes into play on review of a motion to compel that otherwise satisfies the procedural requisites of Rule 37. "A motion to compel pursuant to the enforcement provisions of [] Rule 37 clearly contemplates that the parties have relied on the formal discovery rules." *Ledbetter v. United States*, No. CIV.A. 3:96CV-0678X, 1996 WL 739036, at *2 (N.D. Tex. Dec. 18, 1996). Even if the Court had opened fact discovery, the Federation's informal "USDA data request" letter would not satisfy the formal discovery rules; only a request for production compliant with Rule 34 would suffice. *Id*; *see also Texas Democratic Party*, 2010 WL 5141352, at *1. In the absence of formal discovery requests, the government has no obligation to respond, and there is no basis for the Federation to move to compel a response. *Id.* at *2. Indeed, this prerequisite to

bringing a motion to compel underscores that the Federation's motion is simply a back-door maneuver to seek fact discovery.

In short, the Federation's arguments that it is entitled to additional discovery lacks any legal basis, and its relevance and proportionality arguments under Rule 26(b) are entirely beside the point. The Court's Scheduling Order already delineated the scope of discovery in a way that obviates any need to address the relevance and proportionality of any discovery in addition to the expert data disclosure required by Rule 26(a)(2)(B). As the government has previously explained, responding to the types of discovery requests proposed by the Federation would unduly delay the litigation. With respect to the USDA loan data the Federation seeks, much or all of it is either nonexistent or maintained in such a way that it is practically impossible to gather and produce in a usable format within any reasonable timeframe.

In denying the Federation's Motion for Reconsideration, the Court emphasized that fact discovery was likely to cause "undue delay" in part because of the time the government believed it would take to respond to the Federation's broad requests and "the 'likely' objections and discovery disputes" that would arise. Order Denying Mot. For Reconsideration 2. The Federation's effort to engage in fact discovery seeking broad categories of USDA loan data through a motion to compel is not only procedurally improper but brings to the fore the very type of dispute that the Scheduling Order was meant to obviate. The Court should deny the motion.

## III.    The Court Should Deny the Motion to Modify the Scheduling Order.

Notwithstanding that the government and Plaintiffs already agreed to a two-week extension of the Federation's expert designations, the Federation also requests an extension of all case deadlines by the number of days between the date the government produces the additional "loan data the Federation has requested" or submits a declaration describing what searches USDA has performed to locate the data. Mot. to Compel and to Extend Deadlines 1, ECF No. 199. Because the Federation's

motion to compel additional USDA data is unfounded, so too is its attendant request to modify the

Scheduling Order.

## CONCLUSION

For the foregoing reasons, the Court should deny the Federation's Motion to Compel and

for Extension of Deadlines.

Date:  May 18, 2022

Respectfully  submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant  Attorney General

LESLEY FARBY
Assistant  Branch  Director

/s/ *Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 514-3259
Fax: (202) 616-8470
Email: kyla.snow@usdoj.gov

*Counsel for Defendant*

**Certificate of Service**

On May 18, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Kyla M. Snow
KYLA M. SNOW
United States Department of Justice

**Tab 13**

**Order Denying the Federation's
Motion to Compel**

**(ECF No. 202)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| Defendant, | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND; NATIONAL BLACK FARMERS ASSOCIATION (NBFA); ASSOCIATION OF AMERICAN INDIAN FARMERS (AAIF), | § § § § § § | |
| Intervenor Defendants. | § § | |

## ORDER

Before the Court are the Federation's Motion to Compel Production of Complete Loan Data and for Extension of Deadlines and Request for Expedited Briefing and Decision (ECF No. 199), filed May 13, 2022; and the Government's Response (ECF No. 201), filed May 18, 2022. The Federation waived its right to reply. *See* Federation's Br. 17, ECF No. 199-1. Having considered the motion, briefing, and applicable law, the Court **DENIES** the motion.

## I.    BACKGROUND

On April 5, 2022, the Court issued an amended scheduling order (ECF No. 186). The amended scheduling order denied the Federation's request to reopen fact discovery and required the Government to disclose its expert loan data to the Federation by April 15. The Court entered a protective order (ECF No. 190) regarding the loan data, and the Government produced the data on

April 15. *See* Gov't Resp. 7, ECF No. 201. The Court denied the Federation's motion for reconsideration. The Federation's expert found "significant gaps" in the disclosed data. *See* Federation's Br. 8, ECF No. 199-1. So on April 29, the Federation requested that the Government disclose additional records containing Department of Agriculture loan application data beyond that contained in the government's expert disclosure. *Id.* The Government declined to produce anything beyond what its expert relied on. The parties conferred, and the Government stated that it had provided all that is required under Rule 26 and the Court's order. *See* Gov't Resp. 7, ECF No. 201. The Federation moved to compel production of additional loan data.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(a), a party may move to compel production of materials within the scope of discovery. The party moving to compel must request production from the party holding the requested materials, certify that it "has in good faith conferred or attempted to confer" with the party failing to produce the requested materials, and provide "notice to other parties and all affected persons" of the motion to compel. Fed. R. Civ. P. 37(a)(1). "[A] court may decline to compel, and, at its option or on motion, 'may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden . . . , including . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." *Crosswhite v. Lexington Ins.*, 321 F. App'x 365, 368 (5th Cir. 2009) (alterations in original) (quoting Fed. R. Civ. P. 26(c)(1)(D)). The discovery rules are to be construed broadly and liberally. *Burns v. Thiokol Chemical Corp.*, 483 F.2d 300, 304 (5th Cir. 1973) (citing *Hickman v. Taylor*, 329 U.S. 495, 500 (1947)). "A schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

### III.   ANALYSIS

Rule 26(b) entitles a party to relevant, nonprivileged discovery "[u]nless otherwise limited by court order." Following the parties' representations that this case can proceed only on expert testimony, the Court limited all parties to expert discovery. *See* Scheduling Order, ECF No. 85; Am. Scheduling Order, ECF No. 186. All parties intending to call expert witnesses at trial must comply with the expert disclosure rules of Rule 26(a)(2).

The Federation argues that the Court's scheduling order requires the Government to disclose all "loan data," without qualification. According to the Federation, the scheduling order "did not limit the scope of the loan data that the Secretary must produce to the Federation." Federation's Br. 11, ECF No. 199-1. That argument ignores the Court's repeated statements that this case will proceed on expert testimony, and that the Court will not reopen fact discovery at this late stage. The Federation is entitled to "loan data" that falls within the expert discovery boundaries this Court has set. The Federation is not entitled to whatever discovery it *now* asks for; it is entitled to "receive what it has asked for" in its representations up to this point: expert testimony and discovery. The scheduling order does not entitle any party to fact discovery.

The question, then, is whether the Government's disclosures comply with Rule 26(a)(2). A party intending to call expert witnesses "must disclose to the other parties the identity of any witness it may use at trial." Fed. R. Civ. P. 26(a)(2)(A). The disclosure "must be accompanied by a written report" containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(B).

The Federation does not claim that the Government's expert disclosures fail to comply with Rule 26(a)(2). To be sure, the Federation is entitled to "the facts or data considered by the [Government's] witness in forming" her opinions. *Id.* The evidence before the Court indicates that the Government has so far complied with Rule 26(a)(2). "The Federation's request was not limited to data the [Government]'s expert considered," but Rule 26(a)(2) is. To the extent the Federation believes the Government has failed to comply with Rule 26(a)(2), the Federation may raise specific arguments and point to specific facts forming the basis for that belief. The Federation's expert speculates that the Government did not disclose loan data that the Government's expert "probably relied [on] in forming her opinions." Federation's Br. 16, ECF No. 199-1. Such speculation may be relevant in rebutting the Government's expert testimony, but it is insufficient to justify a motion to compel.

## IV.    CONCLUSION

The Federation's motion amounts to asking, once again, for fact discovery. The Court denies that request for the reasons stated in this Order and the Court's prior orders on the issue. The Court thus finds that the Federation has not presented good cause to modify the scheduling order. The Court **DENIES** the motion to compel and **DENIES** the motion for extensions.

**SO ORDERED** on this **20th day** of **May, 2022**.


_____
Reed O'Connor
UNITED STATES DISTRICT JUDGE

# Tab 14

# The Federation's Motion to Certify Orders for Interlocutory Appeal and Supporting Documents

## (ECF Nos. 203, 203-1, 203-2, and 203-3)

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

**THE FEDERATION'S MOTION TO CERTIFY ORDERS FOR**
**INTERLOCUTORY APPEAL AND REQUEST FOR**
**EXPEDITED BRIEFING AND DECISION**

For the reasons given in the accompanying brief, the Federation of Southern Cooperatives/Land Assistance Fund moves the Court under 28 U.S.C. § 1292(b) for entry of an order certifying for immediate appeal the orders (ECF No. 186, 196, 202) barring the Federation from taking even limited fact discovery. Given fast-approaching deadlines, the Federation requests that the Court set an expedited briefing schedule and order the filing of any responses by June 2, 2022. In the interest of expediency, the Federation waives its right to file a reply.

Dated: May 27, 2022                          Respectfully submitted,

                                             */s/ Chase J. Cooper*
                                             Chase J. Cooper
                                             TX Bar No. 24087342
                                             ccooper@winston.com
                                             WINSTON & STRAWN LLP
                                             2121 N. Pearl Street, Suite 900
                                             Dallas, TX 75201
                                             P: 214-453-6500

                                             George C. Lombardi *(admitted pro hac vice)*
                                             Illinois Bar No. 6187715
                                             glombardi@winston.com
                                             Julie A. Bauer *(admitted pro hac vice)*
                                             Illinois Bar No. 6191271
                                             jbauer@winston.com
                                             WINSTON & STRAWN LLP
                                             35 West Wacker Drive
                                             Chicago, IL 60601
                                             P: 312-558-5600

                                             Kobi K. Brinson *(admitted pro hac vice)*
                                             NC Bar No. 23827
                                             kbrinson@winston.com
                                             WINSTON & STRAWN LLP
                                             300 South Tryon Street, 16th Floor
                                             Charlotte, NC 28202
                                             P: 704-350-7700

                                             Andrew E. Tauber (*pro hac vice forthcoming*)
                                             NY Bar No. 3905676
                                             atauber@winston.com
                                             WINSTON & STRAWN LLP
                                             1901 L Street NW
                                             Washington, D.C. 20036
                                             P: 202-282-5000

                                             Janelle Li-A-Ping *(admitted pro hac vice)*
                                             California Bar No. 330805
                                             jliaping@winston.com
                                             WINSTON & STRAWN LLP
                                             333 South Grand Avenue
                                             Los Angeles, CA 90071
                                             P: 213-615-1700

/s/ Dorian L. Spence
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
LAWYERS' COMMITTEE FOR CIVIL RIGHTS
UNDER LAW
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

/s/ Mark D. Rosenbaum
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
PUBLIC COUNSEL
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

## CERTIFICATE OF CONFERENCE

Counsel for the Federation conferred via email on May 25, 2022 with counsel for Plaintiffs,

counsel for the Secretary, and counsel for the other Intervenors. Plaintiffs and the Secretary oppose

the relief requested in this motion.

/s/ Chase J. Cooper
Chase J. Cooper

3

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on May 27, 2022, which will serve all counsel of record.

*/s/ Chase J. Cooper*
Chase J. Cooper

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

SID MILLER, et al.,

      *Plaintiffs,*

    *v.*

TOM VILSACK, in his official capacity as
Secretary of Agriculture,

      *Defendant*.

No. 4:21-cv-00595-O

### <u>BRIEF IN SUPPORT OF THE FEDERATION'S MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL AND REQUEST FOR EXPEDITED BRIEFING AND DECISION</u>

## **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     LEGAL STANDARD...................................................................................... 2

III.    ARGUMENT .................................................................................................. 2

        A.      The Orders Barring Fact Discovery Involve Controlling Questions of Law.......... 2

        B.      There is Substantial Ground for Difference of Opinion on the Court's Power
                to Bar the Federation From Taking Even Limited Fact Discovery. ...................... 4

        C.      An Immediate Appeal From the Orders Barring Fact Discovery Will
                Materially Advance the Ultimate Termination of the Litigation. ........................... 6

IV.     REQUEST FOR EXPEDITED BRIEFING AND DECISION ........................................ 6

V.      CONCLUSION................................................................................................ 7

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Air. Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*,
    317 F. Supp. 3d 385 (D.D.C. 2018) .......................................................................6

*Aparicio v. Swan Lake*,
    643 F.2d 1109 (5th Cir. 1981) ...............................................................................2

*Beauregard, Inc. v. Sword Servs. L.L.C.*,
    107 F.3d 351 (5th Cir. 1997) ..............................................................................3, 5

*Brown v. Demco*,
    792 F.2d 478 (5th Cir. 1986) ..............................................................................3, 5

*Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*,
    974 F.2d 450 (4th Cir. 1992) ..............................................................................4, 5

*Donovan v. Oil, Chem., & Atomic Workers Int'l Union*,
    718 F.2d 1341 (5th Cir. 1983) ...............................................................................3

*Gen. Universal Sys., Inc. v. HAL, Inc.*,
    500 F.3d 444 (5th Cir. 2007) ..............................................................................3, 5

*Hadjipateras v. Pacifica, S.A.*,
    290 F.2d 697 (5th Cir. 1961) .................................................................................2

*La. State Conf. of NAACP v. Louisiana*,
    495 F. Supp. 3d 400 (M.D. La. 2020) .................................................................2, 6

*Miller v. Vilsack*,
    No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022)..............................1, 3, 5

*Odle v. Wal-Mart Stores Inc.*,
    No. 3:11-CV-2954-O, 2013 WL 66035 (N.D. Tex. Jan. 7, 2013) (O'Connor, J.).......................4

*Perez v. Stephens*,
    784 F.3d 276 (5th Cir. 2015) (per curiam).............................................................3

*Rico v. Flores*,
    481 F.3d 234 (5th Cir. 2007) .................................................................................2

*M.D. ex rel. Stukenberg v. Abbott*,
    977 F.3d 479 (5th Cir. 2020) .................................................................................3

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) ................................................................2

*Tollett v. City of Kemah*,
    285 F.3d 357 (5th Cir. 2002) ..............................................................................3

**Statutes**

28 U.S.C. § 1292(b) ...........................................................................................1, 2, 6, 7

**Other Authorities**

7C Wright & Miller, Fed. Prac. & Proc. § 1920 (3d ed.)..........................................4

16  Wright & Miller, Fed. Prac. & Proc. § 3930 (3d ed.) ....................................4, 5

## I.  INTRODUCTION

The Federation of Southern Cooperatives/Land Assistance Fund moves the Court on an expedited basis under 28 U.S.C. § 1292(b) for entry of an order certifying for immediate appeal the orders (ECF Nos. 186, 196, 202) prohibiting the Federation from taking even limited fact discovery. The orders easily satisfy the statutory criteria for certification under Section 1292(b).

*First*, whether the orders (1) violate the letter and spirit of the Fifth Circuit's mandate in *Miller v. Vilsack*[1] and (2) impose unreasonable conditions on the Federation's intervention of right are both "controlling question[s] of law" because resolution of both questions will dictate the future course of this litigation.

*Second*, there is "substantial ground for difference of opinion" on both of the controlling questions. On the first question, there is "substantial ground" to differ with the Court's conclusion that the Fifth Circuit's mandate permits the Court to bar the Federation from taking even limited fact discovery, given the panel's opinion and settled law on the nondiscretionary duty of a district court to comply with the letter and spirit of the mandate. Similarly, on the second question, there is "substantial ground" to differ with the Court's conclusion that barring the Federation from taking even limited fact discovery is a "reasonable" condition on the Federation's intervention of right.

*Third*, an immediate appeal "may materially advance the ultimate termination of the litigation." Reversal after final judgment and an appeal in the ordinary course would require—for a second time—a re-do of summary-judgment proceedings. The parties and the Court stand to benefit from a definitive answer, delivered before final judgment, on the scope of discovery to which the Federation is entitled.

---

[1] No. 21-11271, 2022 WL 851782, at *3–4 (5th Cir. Mar. 22, 2022).

Because all of the statutory criteria for certification under Section 1292(b) are met, the Court should certify its orders for interlocutory appeal. Given fast-approaching deadlines, including the May 31, 2022 expert-designation deadline, the Federation requests that the Court expedite briefing and decision of this motion.

## II.    LEGAL STANDARD

A district judge may certify an order for interlocutory appeal "where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007) (citing 28 U.S.C. § 1292(b)). The district court must find all three criteria met before certifying an appeal. *See Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. 1981). Section 1292(b) "give[s] to the appellate machinery ... a considerable flexibility operating under the immediate, sole and broad control of Judges so that within reasonable limits disadvantages of piecemeal and final judgment appeals might *both* be avoided." *Hadjipateras v. Pacifica, S.A.*, 290 F.2d 697, 703 (5th Cir. 1961) (emphasis added).

## III.    ARGUMENT

### A.    The Orders Barring Fact Discovery Involve Controlling Questions of Law.

The orders barring even limited fact discovery involve controlling questions of law. A question need not result in the termination of the action to be "controlling" under Section 1292(b). *La. State Conf. of NAACP v. Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020). "It is sufficient to satisfy the controlling question of law standard if resolution [of the question] on appeal determines the 'future course of the litigation.'" *Id.* (quoting *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 766 (S.D. Tex. 2010)). Here, the orders barring the Federation from taking limited fact discovery involve two controlling questions of law that will determine the future course of this litigation.

2

The first controlling question is whether this Court's ban on fact discovery violates the Fifth Circuit's mandate. *See Miller*, 2022 WL 851782, at *3–4. A "corollary of the law-of-the-case doctrine," the mandate rule requires a district court on remand to "implement both the letter and the spirit of the appellate court's mandate." *Perez v. Stephens*, 784 F.3d 276, 280 (5th Cir. 2015) (per curiam) (quotation omitted); *cf. M.D. ex rel. Stukenberg v. Abbott*, 977 F.3d 479, 483 (5th Cir. 2020) (reversing district court for violating the mandate). "In implementing the mandate, the district court must take into account the appellate court's opinion and the circumstances it embraces." *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007). "The district court is without power to do anything [that] is contrary to either the letter or spirit of the mandate construed in the light of the opinion of the court deciding the case." *Tollett v. City of Kemah*, 285 F.3d 357, 364 (5th Cir. 2002) (quotation omitted). "[T]he district court should consult the reviewing court's opinion to ascertain what was intended by [the] mandate." *Id.* (quotation omitted). Whether this Court violated the mandate rule by barring the Federation from taking even limited fact discovery will determine the future course of the litigation because it will settle the discovery to which the Federation is entitled and the basis on which Section 1005 of the American Rescue Plan Act of 2021 is defended. It is therefore a controlling question.

The second controlling question is whether this Court's refusal to allow the Federation to take even limited fact discovery constitutes an unreasonable condition on the Federation's intervention of right. The Fifth Circuit has stated that "*reasonable* conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997) (emphasis added). Still, under Fifth Circuit precedent, "an intervenor of right 'is treated as if he were an original party and has equal standing with the original parties.'" *Brown v. Demco*, 792 F.2d 478, 480–81 (5th Cir. 1986) (quoting *Donovan v. Oil, Chem., & Atomic Workers*

*Int'l Union*, 718 F.2d 1341, 1350 (5th Cir. 1983)). To that end, an intervenor of right "is entitled to litigate fully on the merits once intervention has been granted." 7C WRIGHT & MILLER, FED. PRAC. & PROC. § 1920 (3d ed.). Here, even assuming the Court may impose "reasonable" conditions on the Federation's intervention of right, it is a controlling question whether prohibiting the Federation from taking *any* fact discovery is "reasonable." *Cf. Columbus-Am. Discovery Grp. v. Atl. Mut. Ins. Co.*, 974 F.2d 450, 470 (4th Cir. 1992) (even if conditions on intervenors of right "are ever proper," the denial of discovery was a "clearly unreasonable" condition that violated due process). This second controlling question will determine the future course of the litigation in the same way as the first: it will dictate both the discovery to which the Federation is entitled and the basis on which Section 1005 is defended.

> **B.      There is Substantial Ground for Difference of Opinion on the Court's Power to Bar the Federation From Taking Even Limited Fact Discovery.**

There is substantial ground for difference of opinion on the question whether the Court may bar the Federation from taking limited fact discovery in light of (1) the letter and spirit of the Fifth Circuit's mandate and (2) Fifth Circuit law on the rights afforded intervenors of right.

This Court has certified orders for interlocutory appeal in the appropriate case, even when convinced of the order's correctness. *See, e.g., Odle v. Wal-Mart Stores Inc.*, No. 3:11-CV-2954-O, 2013 WL 66035, at *3 (N.D. Tex. Jan. 7, 2013) (O'Connor, J.) (finding substantial ground for difference of opinion and certifying order for interlocutory appeal, despite belief that "its previous decision ... was correct"). "The level of uncertainty required to find a substantial ground for difference of opinion should be adjusted to meet the importance of the question in the context of the specific case." 16 WRIGHT & MILLER, FED. PRAC. & PROC. § 3930 (3d ed.). Because the discovery to which the Federation is entitled is a threshold question that could dictate the course

of this litigation through final judgment, appeal, and (potentially) certiorari, "certification may be justified at a relatively low threshold of doubt." *Id.*

As for the first controlling question, there is "substantial ground" to differ with the Court's conclusion that the letter and spirit of the Fifth Circuit's mandate allow this Court to bar the Federation from taking any fact discovery. Allowing the Federation to take the discovery necessary to obtain and present evidence of current discrimination by USDA—something neither Plaintiffs nor the Secretary will do[2]—was *the* rationale for the Fifth Circuit's directive that this Court permit intervention of right. *Miller*, 2022 WL 851782, at *3–4. "Tak[ing] into account" the Fifth Circuit's opinion and "the circumstances it embraces," *Gen. Universal Sys.*, 500 F.3d at 453, the Court should have allowed the Federation to take the limited fact discovery it requested. *See Miller*, 2022 WL 851782, at *3.

The second controlling question also raises "substantial ground" for disagreement. As relevant here, the Court concluded that prohibiting the Federation from taking fact discovery was a "reasonable" limitation on the Federation's intervention of right under *Beauregard*. *See* 107 F.3d at 353. But the Court neither cited nor analyzed Fifth Circuit precedents that take a broader view of the rights given intervenors of right. *See, e.g.*, *Brown*, 792 F.2d at 480–81 ("[A]n intervenor of right is treated as if he were an original party and has equal standing with the original parties.") (quotation omitted). Nor did the Court engage with federal appellate authority holding that prohibiting an intervenor of right from taking discovery is "clearly unreasonable" and a violation of due process. *Columbus-Am. Discovery Grp.*, 974 F.2d at 470.

---

[2] The Fifth Circuit's opinion recognized that the Federation is the only party that will introduce evidence of ongoing discrimination in defense of Section 1005. *See* 2022 WL 851782, at *3 ("[A] U.S. Secretary would likely heartily deny that their agency is *currently* discriminating against people based upon race.") (emphasis original); *id.* at *3 n.6 ("It is highly unlikely the Secretary would put forth such evidence in the absence of the Federation's intervention.").

### C.   An Immediate Appeal From the Orders Barring Fact Discovery Will Materially Advance the Ultimate Termination of the Litigation.

Allowing the Federation to immediately appeal from the Court's orders banning fact discovery will materially advance the ultimate termination of this litigation.

This standard is not a difficult one to meet. Section 1292(b) "does not require the appeal to certainly advance the termination of the litigation." *La. State Conf.*, 495 F. Supp. 3d at 416. It is enough if the "appeal *may* advance the ultimate termination of the litigation if permitted." *Id.* (italics original). "An immediate appeal would materially advance the disposition of the litigation if it would conserve judicial resources and spare the parties from possibly needless expense if the Court's ruling was reversed." *Air. Transp. Ass'n of Am., Inc. v. U.S. Dep't of Agric.*, 317 F. Supp. 3d 385, 394 (D.D.C. 2018) (quotation omitted).

Here, the material-advancement standard is easily met. If the Court declines to certify its orders barring fact discovery and is reversed after final judgment on that ground, the parties and the Court will have needlessly expended considerable resources. This Court's opinion on summary judgment, the parties' summary-judgment briefing, and expert discovery would all need be re-done—either completely or to varying degrees. Certification for immediate appeal would materially advance the ultimate termination of this litigation by reducing the risk that the Court's and the parties' resources are unnecessarily expended and by settling, fully and finally, the discovery to which the Federation is entitled.

## IV.   REQUEST FOR EXPEDITED BRIEFING AND DECISION

Given fast-approaching deadlines, including the May 31, 2022 expert-designation deadline, the Federation requests that the Court set an expedited briefing schedule and order the filing of any responses by no later than June 2, 2022. In the interest of expediency, the Federation waives its right to file a reply.

## V.       CONCLUSION

The Federation has met all three prerequisites for certification. The Court's orders barring the Federation from taking even limited fact discovery involve controlling questions of law; there is substantial ground for difference of opinion about whether the Court may properly bar the Federation from taking any fact discovery; and an immediate appeal will materially advance the ultimate termination of this litigation by saving judicial and party resources in the event the Court is again reversed. For these reasons, the Court should enter an order under Section 1292(b) certifying for interlocutory appeal its orders (ECF Nos. 186, 196, 202) prohibiting the Federation from taking even limited fact discovery.

Dated: May 27, 2022                          Respectfully submitted,

                                             */s/ Chase J. Cooper*
                                             Chase J. Cooper
                                             TX Bar No. 24087342
                                             ccooper@winston.com
                                             **WINSTON & STRAWN LLP**
                                             2121 N. Pearl Street, Suite 900
                                             Dallas, TX 75201
                                             P: 214-453-6500

                                             George C. Lombardi *(admitted pro hac vice)*
                                             Illinois Bar No. 6187715
                                             glombardi@winston.com
                                             Julie A. Bauer *(admitted pro hac vice)*
                                             Illinois Bar No. 6191271
                                             jbauer@winston.com
                                             **WINSTON & STRAWN LLP**
                                             35 West Wacker Drive
                                             Chicago, IL 60601
                                             P: 312-558-5600

Kobi K. Brinson *(admitted pro hac vice)*
NC Bar No. 23827
kbrinson@winston.com
**WINSTON & STRAWN LLP**
300 South Tryon Street, 16th Floor
Charlotte, NC 28202
P: 704-350-7700

Andrew E. Tauber (*pro hac vice forthcoming*)
NY Bar No. 3905676
atauber@winston.com
**WINSTON & STRAWN LLP**
1901 L Street NW
Washington, D.C. 20036
P: 202-282-5000

Janelle Li-A-Ping *(admitted pro hac vice)*
California Bar No. 330805
jliaping@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue
Los Angeles, CA 90071
P: 213-615-1700

*/s/ Dorian L. Spence*
Jon Greenbaum *(admitted pro hac vice)*
California Bar No. 166733
jgreenbaum@lawyerscommittee.org
Dorian L. Spence *(admitted pro hac vice)*
Maryland Bar No. 0912170195
dspence@lawyerscommittee.org
Phylicia Hill *(admitted pro hac vice)*
Alabama Bar No. 5749J00X
phill@lawyerscommittee.org
**LAWYERS' COMMITTEE FOR
CIVIL RIGHTS UNDER LAW**
1500 K St. NW, Suite 900
Washington, DC 20005
P: 202-662-8600

/s/ Mark D. Rosenbaum
Mark D. Rosenbaum *(admitted pro hac vice)*
California Bar. No. 59940
mrosenbaum@publiccounsel.org
Nisha Kashyap *(admitted pro hac vice)*
California Bar No. 301934
nkashyap@publiccounsel.org
**PUBLIC COUNSEL**
610 S. Ardmore Ave.
Los Angeles, CA 90005
P: 213-385-2977

***Counsel for Intervenor of Right The Federation of
Southern Cooperatives/Land Assistance Fund***

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the foregoing was filed via the court's CM/ECF system on May 27, 2022, which will serve all counsel of record.

/s/ Chase J. Cooper
Chase J. Cooper

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| SID MILLER, et al., | |
| *Plaintiffs,* | |
| *v.* | No. 4:21-cv-00595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | |
| *Defendant.* | |

## PROPOSED ORDER GRANTING THE FEDERATION'S MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL AND REQUEST FOR EXPEDITED BRIEFING AND DECISION

Having considered the briefing on the Federation of Southern Cooperatives/Land Assistance Fund's Motion to Certify Orders for Interlocutory Appeal and Request for Expedited Briefing and Decision (the "Motion"), and for good cause shown, it is **ORDERED** that:

The Motion is **GRANTED**. The orders (ECF Nos. 186, 196, 202) barring the Federation from taking even limited fact discovery involve controlling questions of law as to which there is substantial ground for difference of opinion, and an appeal from the orders may materially advance the ultimate termination of the litigation. The Court therefore **CERTIFIES** the orders for immediate appeal under 28 U.S.C. § 1292(b).

**SO ORDERED on this __ day of _____, 2022.**

_____
THE HONORABLE REED O'CONNOR
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

|  |  |
|---|---|
| SID MILLER, et al.,<br><br>   *Plaintiffs,*<br><br>  *v.*<br><br>TOM VILSACK, in his official capacity as<br>Secretary of Agriculture,<br><br>   *Defendant*. | No. 4:21-cv-00595-O |

**PROPOSED ORDER GRANTING THE FEDERATION'S REQUEST
FOR EXPEDITED BRIEFING AND DECISION ON ITS MOTION
TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL**

Before the Court is the Federation of Southern Cooperatives/Land Assistance Fund's Motion to Certify Orders for Interlocutory Appeal and Request for Expedited Briefing and Decision. To expedite resolution of the motion, the Court **GRANTS** the request for expedited briefing and decision and **ORDERS** the Government and the Plaintiffs to respond to the motion by June 2, 2022. The Federation has waived its right to file a reply.

  **SO ORDERED on this __ day of ____, 2022.**

               _____

               THE HONORABLE REED O'CONNOR
               UNITED STATES DISTRICT JUDGE

**Tab 15**

**Order Expediting Briefing on the
Federation's Motion to Certify Orders for
Interlocutory Appeal**

**(ECF No. 204)**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| Defendant, | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND; NATIONAL BLACK FARMERS ASSOCIATION (NBFA); ASSOCIATION OF AMERICAN INDIAN FARMERS (AAIF), | § § § § § § | |
| Intervenor Defendants. | § § | |

**ORDER**

Before the Court is the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 203), filed May 27, 2022. To expedite resolution of the motion, the Court **ORDERS** that any responses to the motion are due on or before June 2, 2022.

**SO ORDERED** on this **27th day** of **May, 2022**.

_Reed O'Connor_
**UNITED STATES DISTRICT JUDGE**

# Tab 16

# The Secretary's Opposition to the Federation's Motion to Certify Orders for Interlocutory Appeal

## (ECF No. 205)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

|  |  |
|---|---|
| SID MILLER, *et al.*, on behalf of himself and others similarly situated,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>TOM VILSACK, in his official capacity as SECRETARY OF AGRICULTURE,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. 4:21-cv-595-O<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## DEFENDANT'S OPPOSITION TO THE FEDERATION'S
## MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director
Civil Division, Federal Programs Branch

KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
Tel: (202) 514-3259/ Fax: (202) 616-8460
Kyla.snow@usdoj.gov

*Counsel for Defendant*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION.................................................................................................................1

BACKGROUND ................................................................................................................1

STANDARD OF REVIEW ................................................................................................2

ARGUMENT......................................................................................................................3

      I.     The Court's orders do not involve a controlling question of law.......................................3

      II.    The Court's orders do not involve questions of law on which there is substantial ground for difference of opinion. .................................................................6

      III.   Immediate appellate review would not materially advance the termination of the litigation...............................................................................................7

CONCLUSION ..................................................................................................................8

## TABLE OF AUTHORITIES

**Cases**

*Ahrenholz v. Bd. of Trs of Univ. of Ill.*,
  219 F.3d 674 (7th Cir. 2000) .......................................................................................................3

*Aparicio v. Swan Lake*,
  643 F.2d 1109 (5th Cir. Unit A Apr. 1981) ..............................................................................2

*Assoc. of Co-op. Members, Inc. v. Farmland Indus., Inc.*,
  684 F.2d 1134 (1982) ...............................................................................................................2

*Barnes v. McQueen*,
  No. CV 14-2636, 2016 WL 3923875 (E.D. La. July 21, 2016).................................................7

*Beauregard, Inc. v. Sword Servs., LLC*,
  107 F.3d 351 (5th Cir. 1997) ....................................................................................................4

*CERX Pharmacy Partners, LP v. Provider Meds LP*,
  No. 3:14-CV-1785-L, 2014 WL 6673465 (N.D. Tex. Nov. 25, 2014)......................................6

*Clark-Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*,
  702 F.2d 67 (5th Cir. 1983) ..............................................................................................1, 2, 3

*Clinton v. Jones*,
  520 U.S. 681 (1997) .................................................................................................................5

*David v. Signal Int'l, LLC*,
  37 F. Supp. 3d 836 (E.D. La. 2014).......................................................................................5, 7

*Dukes v. Wal-Mart Stores, Inc.*,
  No. C 01-02252 CRB, 2012 WL 6115536 (N.D. Cal. Dec. 10, 2012) .....................................7

*In re Genter*,
  3:19-CV-01951-E, 2020 WL 3129637 (N.D. Tex. June 12, 2020) .............................................6

*In re Hallwood Energy, L.P.*,
  No. 3:12-CV-1902-G, 2013 WL 524418 (N.D. Tex. Feb. 11, 2013) ........................................6

*In re Highland Cap. Mgmt., L.P.*, 3:21-CV-0879-K,
  2022 WL 394760 (N.D. Tex. Feb. 9, 2022) ..........................................................................4, 5

*In re La. Route Operators*,
  Civ A. No. 94-2642, 1994 WL 449373 (E.D. La. Aug. 17, 1994) ............................................8

*In re Supplement Spot, LLC*,
  No. BANKR.06-35903, 2009 WL 1343165 (S.D. Tex. May 12, 2009) ....................................8

*In re Tullius*,
No. EP-11-MC-365-KC, 2011 WL 5006673 (W.D. Tex. Oct. 20, 2011)....................................8

*In re Watman*,
304 B.R. 553 (B.A.P. 1st Cir. 2004) ...........................................................................................4

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .........................................................................................3, 4, 6

*Miller v. Vilsack*,
No. 21-11271, 2022 WL 851782 (5th Cir. Mar. 22, 2022)..........................................................1

*Patterson v. Dallas/Fort Worth Int'l Airport Bd.*,
No. 3:18-CV-00307-E, 2021 WL 4240479 (N.D. Tex. Jan. 6, 2021)..................................3, 5, 7

*Raber v. Pittway Corp.*,
17 F.3d 1444, 1994 WL 18499 (Table) .......................................................................................4

*Ryan v. Flowserve Corp.*,
444 F. Supp. 2d 718 (N.D. Tex. 2006) .......................................................................................3

*Software Rts. Archive, LLC v. Google Inc.*,
No. CIV A 2:07-CV-511, 2009 WL 1797996 (E.D. Tex. June 24, 2009) ...................................4

*Steves & Sons, Inc. v. JELD-WEN, Inc.*,
323 F.R.D. 553 (E.D. Va. 2018) .................................................................................................5

*Swoboda v. Manders*,
No. CV 14-19-SCR, 2015 WL 9308266 (M.D. La. Dec. 22, 2015) ............................................5

*United States v. Abbott Labs.*,
No. 3:06-CV-1769, 2016 WL 3571329 (N.D. Tex. Mar. 8, 2016) ..............................................2

*Williams v. Taylor*,
No. CIV.A. 15-321, 2015 WL 4755162 (E.D. La. Aug. 11, 2015)...............................................3

**Statutes**

28 U.S.C. § 1292 ....................................................................................................................1, 2

**Rules**

Fed. R. Civ. P. 24(a) (Advisory Cmt. Note to 1966 Amendment) ...............................................5

Fed. R. Civ. P. 26(a)...................................................................................................................2

## INTRODUCTION

Three times this Court has denied the Federation's request for fact discovery—first in its April 1, 2022 scheduling order, ECF No. 186, then in its April 22, 2022 order denying the Federation's motion for reconsideration, ECF No. 196, and finally in its May 20, 2022 order denying the Federation's motion to compel, ECF No. 202. The Federation now asks the Court to certify all three of these orders for interlocutory appeal under 28 U.S.C. § 1292(b). Fed'n Mot. to Certify, ECF No. 203 ("Fed'n Mot."). But the Federation fails to show that any of the statutory requirements for the "exceptional" certification of interlocutory appeal are met. *See Clark-Dietz & Assoc.-Eng'rs, Inc. v. Basic Constr. Co.*, 702 F.2d 67, 68–69 (5th Cir. 1983). The Court should deny the motion.

## BACKGROUND

Plaintiffs initiated this equal protection challenge to Section 1005 of the American Rescue Plan Act (ARPA) in April 2021. After granting Plaintiffs' motion for preliminary injunction and for class certification, Order, ECF No. 60, the Court entered the schedule jointly proposed by Plaintiffs and Defendant. The schedule set deadlines for expert discovery and summary judgment briefing. ECF No. 85.

Later, the Federation moved to intervene as of right and permissively, stating that it did not intend to revisit the Court's previous rulings. ECF No. 93. Plaintiffs opposed intervention, ECF No. 137, and the government opposed intervention of right but did not oppose permissive intervention, conditioned on reasonable limitations, ECF No. 136. This Court denied the motion to intervene, ECF No. 143, and the Federation appealed, ECF No. 147. The Fifth Circuit reversed, concluding that the Federation would present an argument that the Secretary would not, and that it had thus shown an adversity of interest warranting intervention as of right. *See Miller v. Vilsack*, No. 21-11271, 2022 WL 851782, at *3 (5th Cir. Mar. 22, 2022).

On April 5, 2022, this Court, consistent with the Fifth Circuit's mandate, granted intervention, ECF No. 185, and resolved the parties' competing scheduling proposals by entering an order modifying the discovery and briefing schedule to allow the Federation's participation on substantially similar terms as the parties, ECF No. 186. Accordingly, the Court's order set deadlines for expert discovery and summary judgment briefing. *Id.* The Court declined to open fact discovery. *Id.*

The Federation moved for reconsideration of the scheduling order, ECF No. 187, and on April 22, 2022, the Court denied the motion. ECF No. 196.

On April 15, 2022, the government produced the loan data considered by its expert, as required by Rule 26(a)(2)(B)(ii) and the Court's scheduling order. The Federation then moved to compel the production of additional USDA loan data. ECF No. 199. On May 20, 2022, the Court denied the motion to compel. ECF No. 202.

The Federation now asks the Court to certify interlocutory appeal of the scheduling order, the order denying the motion for reconsideration, and the order denying the motion to compel.

## STANDARD OF REVIEW

Under 28 U.S.C. § 1292(b), a district judge may certify a non-final decision for interlocutory appeal if "(1) the order involves a controlling question of law in the case (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Aparicio v. Swan Lake*, 643 F.2d 1109, 1110 n.2 (5th Cir. Unit A Apr. 1981); 28 U.S.C. § 1292(b). A court of appeals has "discretion to permit appeal from an interlocutory order" under Section 1292(b) only if the district court "certifie[s] in writing that the criteria for appealability" under that statute are met. *Assoc. of Co-op. Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1137 n.3 (1982). The moving party bears the burden of showing that all three factors are satisfied. *See Clark-Dietz*, 702 F.2d at 68. Even then, the district judge has "unfettered discretion to deny certification." *United States v. Abbott Labs.*, No. 3:06-CV-1769, 2016 WL

3571329, at *3 (N.D. Tex. Mar. 8, 2016). "In the Fifth Circuit, interlocutory appeals are exceptional and 'do not lie simply to determine the correctness of a judgment.'" *Patterson v. Dallas/Fort Worth Int'l Airport Bd.*, No. 3:18-CV-00307-E, 2021 WL 4240479, at *1 (N.D. Tex. Jan. 6, 2021) (alterations omitted) (quoting *Clark-Dietz*, 702 F.2d at 68-69).

## ARGUMENT

According to the Federation, the Court's orders setting a case schedule, denying the Federation's motion for reconsideration, and denying the Federation's motion to compel should each be certified for interlocutory appeal to review whether declining to open fact discovery: (1) violates the Fifth Circuit's mandate in *Miller v. Vilsack*, and (2) imposes an unreasonable condition on the Federation's participation. Br. in Supp. of the Fed'n Mot. to Certify, ("Fed'n Br.") at 1, ECF No. 203-1. These issues are not controlling questions of law for which there is substantial ground for disagreement. Nor would immediate appellate review of the orders materially advance the termination of the litigation. The Federation thus fails to meet the requirements for interlocutory appeal under Section 1292(b).

## I.     The Court's orders do not involve a controlling question of law.

Section 1292(b) allows for interlocutory appeal of a "controlling question of law." The statute does not refer to any and every legal question arising in the course of litigation. Rather, Congress has limited jurisdiction over interlocutory appeals orders involving a legal question that "the 'court of appeals could decide quickly and cleanly without having to study the record.'" *Williams v. Taylor*, No. CIV.A. 15-321, 2015 WL 4755162, at *2 (E.D. La. Aug. 11, 2015) (quoting *Ahrenholz v. Bd. of Trs of Univ. of Ill.*, 219 F.3d 674, 677 (7th Cir. 2000)); *Patterson*, 2021 WL 4240479, at *1 (citing cases). Importantly, "a 'question of law' does *not* mean the application of settled law to disputed facts." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citation omitted) (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)). Rather, it refers to a question that is "more

of an abstract legal issue or what might be called one of 'pure' law[.]" *McFarlin*, 381 F.3d at 1258. Put differently, a question of law under § 1292(b) is one "that would be of general interest or that would be applicable to a wide range of cases." *Raber v. Pittway Corp.*, 17 F.3d 1444, 1994 WL 18499 (Table) at *2 (Fed. Cir. 1994); *Software Rts. Archive, LLC v. Google Inc.*, No. CIV A 2:07-CV-511, 2009 WL 1797996, at *2 (E.D. Tex. June 24, 2009) (citing cases for the same proposition).

But even an "abstract" or "pure" question of law may not be the subject of an interlocutory appeal unless it is also "controlling." A question is controlling if its resolution "has the potential for substantially accelerating the disposition of the litigation and does not concern [a] matter[] that [is] entrusted to the discretion" of the court. *In re Highland Cap. Mgmt., L.P.*, No. 3:21-CV-0879-K, 2022 WL 394760, at *4 (N.D. Tex. Feb. 9, 2022) (cleaned up) (citation omitted).

The questions raised by the Federation fail these requirements. To start, they are not "pure" or "abstract" legal questions applicable beyond this litigation. Instead, the Federation seeks review of the soundness of the Court's decision not to open fact discovery considering the specific circumstances of this case. The first question it poses for interlocutory appeal is whether declining to open fact discovery violates the mandate rule by failing to adhere to the "letter and spirit" of the Fifth Circuit's decision and the "circumstances it embraces," as the mandate rule requires. Fed'n Br. at 3 (quoting cases). But the Court's compliance with the Fifth's Circuit's mandate when defining the parameters of the Federation's participation in this litigation is a question of the proper "interpretation of the court of appeals' directive," *In re Watman*, 304 B.R. 553, 559 (B.A.P. 1st Cir. 2004), not a question of "general interest" for which interlocutory appeal may be available, *Raber*, 1994 WL 18499, at *2.

The second legal question the Federation presents—whether declining to open fact discovery in this case is "unreasonable"—is equally case-specific and thus similarly inappropriate for interlocutory appeal. As the Federation itself acknowledges, courts may impose "reasonable conditions . . . even upon one who intervenes as of right." Fed'n Br. at 3 (quoting *Beauregard, Inc. v.*

*Sword Servs., LLC*, 107 F.3d 351, 352–53 (5th Cir. 1997)). That includes placing limits on the scope of discovery available to the intervenor. *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 558 (E.D. Va. 2018) (noting that intervenors "must generally take the case as they find it"). Whether opening fact discovery in this case is reasonable depends on, "among other things[,] . . . the requirements of efficient conduct of the proceedings." Fed. R. Civ. P. 24(a) (Advisory Cmt. Note to 1966 Amendment). This is the kind of discretionary, circumstance-specific determination that district courts routinely make "as an incident to [their] power to control [their] own docket." *Clinton v. Jones*, 520 U.S. 681, 702 (1997). Matters "entrusted to the discretion" of the district court are necessarily excluded from the category of pure legal questions for which interlocutory appeal may be available. *In re Highland Cap. Mgmt.*, 2022 WL 394760, at *4.

Nor are the questions posed by the Federation "controlling" legal questions in the sense contemplated by the statute. The Federation says the questions are controlling because they "will settle the discovery to which the Federation is entitled," Fed'n Br. at 3, and thus "will dictate the future course of the litigation," *id.* at 1. But that all-encompassing interpretation of what constitutes a controlling legal question has been expressly rejected by district courts in this circuit. *Swoboda v. Manders*, No. CV 14-19-SCR, 2015 WL 9308266, at *2 (M.D. La. Dec. 22, 2015) (rejecting an argument that a discovery order involved a "controlling question of law" because it "determine[d] the future course of the litigation"). Indeed, measured by that standard, virtually any decision affecting a case schedule or the scope of discovery could be the subject of an interlocutory appeal, when, in fact, "a discovery order is seldom appropriate for interlocutory appeal." *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 836, 839 n.10 (E.D. La. 2014) (citing cases). Indeed, the Federation's proposed measure of what is "controlling" would transform § 1292(b) into one for questioning "the correctness" of almost any district court order throughout the course of litigation. *Patterson*, 2021 WL 4240479, at *1. Here, appellate review of the Court's orders would not materially advance the resolution of this case but

would simply open another avenue for the Federation to advance arguments that the Court has repeatedly rejected.

In short, the questions the Federation poses for interlocutory appeal, which concern "whether the district court properly applied settled law to" this case or appropriately exercised its discretionary authority in imposing conditions on the Federation's intervention, are "[t]he antithesis of" the types of legal questions that make for "a proper § 1292(b) appeal." *McFarlin*, 381 F.3d at 1259.

## II.   The Court's orders do not involve questions of law on which there is substantial ground for difference of opinion.

Nor does the Federation point to any question of law arising in the Court's orders on which there is substantial ground for difference of opinion, the second requirement for interlocutory appeal. A substantial ground for difference of opinion may exist if "a trial court rules in a manner which appears contrary to the rulings of all Courts of Appeals which have reached the issue, if the circuits are in dispute on the question and the Court of Appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *In re Genter*, No. 3:19-CV-01951-E, 2020 WL 3129637, at *2 (N.D. Tex. June 12, 2020) (quoting *CERX Pharmacy Partners, LP v. Provider Meds LP*, No. 3:14-CV-1785-L, 2014 WL 6673465, at *2–3 (N.D. Tex. Nov. 25, 2014)). In other words, there must be some "genuine doubt as to" the correct legal standard governing a controlling legal question in the case. *Id.* (quoting *In re Hallwood Energy*, L.P., No. 3:12-CV-1902-G, 2013 WL 524418, at *3 (N.D. Tex. Feb. 11, 2013)).

There is no doubt about the legal standards that apply to each of the issues raised by the Federation here. Indeed, the Federation's own motion simply recites settled case law elaborating the legal standards applicable to the mandate rule, Fed'n Br. at 3, and for determining what conditions to place on an intervenor's participation in a case, *id.* The only "difference in opinion" as to these issues arises from *the Federation's* views about the *correctness* of the Court's application of that settled law to this case. *Id.* at 5. But "[d]ifference of opinion" for purposes of interlocutory appeal "refers to an

6

unsettled state of law or judicial opinion, not mere discontent by the appealing party." *Barnes v. McQueen*, No. CV 14-2636, 2016 WL 3923875, at *2 (E.D. La. July 21, 2016) (citation omitted) (denying a motion for certification for interlocutory appeal of an order denying a motion to dismiss because "[t]he law with respect to what courts may consider when deciding a motion to dismiss pursuant to Rule 12(b)(6) is settled" and "[t]here is no substantial ground for difference of opinion"). *Cf. Dukes v. Wal-Mart Stores, Inc.*, No. C 01-02252 CRB, 2012 WL 6115536, at *4 & n.2 (N.D. Cal. Dec. 10, 2012) (stressing that "grounds for disagreement" for purposes of interlocutory appeal under § 1292(b) do not "exist any time a litigant th[inks] a court ha[s] violated the mandate rule"). The Federation thus fails to meet the second statutory element for interlocutory appeal.

## III. Immediate appellate review would not materially advance the termination of the litigation.

Finally, immediate appeal would not materially advance the termination of the litigation. In evaluating whether this third statutory factor is met, courts consider whether immediate appeal may "(1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Patterson*, 2021 WL 4240479, at *2 (citation omitted).

Immediate appeal of the orders at issue here would achieve none of the above. The affirmance or reversal of the Court's decision not to open fact discovery would not eliminate the need for trial, simplify any issue for trial, or make discovery easier and less costly. *See David*, 37 F. Supp. 3d at 839. To the contrary, affirmance would only preserve the status quo, while reversal would "hinder—rather than hasten—the ultimate termination of" this case, *id.*, by opening up time-consuming discovery that would likely be onerous and lead to protracted litigation over discovery disputes, Order on Mot. for Reconsideration at 2, ECF No. 196. *Cf. David*, 37 F. Supp. 3d at 839 ("If anything, vacatur of the protective order would make discovery even more onerous and unwieldy.").

The Federation asserts that immediate appeal may advance the termination of the litigation based on the hypothetical possibility that a judgment on the merits of the case may be reversed by the

Fifth Circuit and remanded in a manner that requires additional discovery (presumably, the same discovery that the Federation now seeks) in this Court. Fed'n Br. at 6. Such contingencies have no bearing on the question whether immediate appeal may hasten the resolution of the district court proceedings as they currently stand. If the mere possibility that additional discovery may be required on a potential future remand were enough to meet this statutory element, then virtually every discovery order would fall within its scope. That would only "open the door to multiple appeals, thereby offending the policy against 'piecemeal litigation.'" *In re Tullius*, No. EP-11-MC-365-KC, 2011 WL 5006673, at *2 (W.D. Tex. Oct. 20, 2011) (quoting *In re La. Route Operators*, Civ A. No. 94-2642, 1994 WL 449373, at *2 (E.D. La. Aug. 17, 1994)). For this very reason, "interlocutory appeals from discovery . . . orders are generally inappropriate." *Id.* (quoting *In re Supplement Spot, LLC*, No. BANKR.06-35903, 2009 WL 1343165, at *1 (S.D. Tex. May 12, 2009)). As with virtually any order relating to the scope of discovery, interlocutory appeal of the Court's orders here—which (1) set a case schedule that declines to open fact discovery; (2) denied the Federation's request for reconsideration of the decision not to open fact discovery; and (3) denied the Federation's motion to compel discovery—would not materially advance termination of this case.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the Federation's Motion to Certify Orders for Interlocutory Appeal.

Date: June 2, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LESLEY FARBY
Assistant Branch Director

/s/ *Kyla M. Snow*
KYLA M. SNOW (Ohio Bar No. 96662)
MICHAEL F. KNAPP (Cal. Bar No. 314104)
ALEXANDER V. SVERDLOV
Trial Attorneys
Federal Programs Branch
U.S. Department of Justice, Civil Division
1100 L Street, NW
Washington, DC 20530
Telephone: (202) 514-3259
Fax: (202) 616-8470
Email: kyla.snow@usdoj.gov

*Counsel for Defendant*

**<u>Certificate of Service</u>**

On June 2, 2022, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

<u>/s/ Kyla M. Snow</u>
KYLA M. SNOW
United States Department of Justice

**Tab 17**

**Plaintiffs' Opposition to the Federation's
Motion to Certify Orders for
Interlocutory Appeal**

**(ECF No. 206)**

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **Sid Miller**, et al., | |
| Plaintiffs, | |
| v. | Case No. 4:21-cv-00595-O |
| **Tom Vilsack**, in his official capacity as Secretary of Agriculture, | |
| Defendant. | |

## PLAINTIFFS' RESPONSE TO THE FEDERATION'S MOTION TO CERTIFY ORDERS FOR INTERLOCUTORY APPEAL

The plaintiffs agree with and respectfully incorporate by reference the arguments presented in the government's response (ECF No. 205). The motion to certify orders for interlocutory appeal should be denied.

Respectfully submitted.

Gene P. Hamilton
Virginia Bar No. 80434
Vice-President and General Counsel
America First Legal Foundation
300 Independence Avenue SE
Washington, DC 20003
(202) 964-3721
gene.hamilton@aflegal.org

H. Dustin Fillmore III
Texas Bar No. 06996010
Charles W. Fillmore
Texas Bar No. 00785861
The Fillmore Law Firm, L.L.P.
201 Main Street, Suite 801
Fort Worth, Texas 76102
(817) 332-2351 (phone)

 /s/ Jonathan F. Mitchell 
Jonathan F. Mitchell
Texas Bar No. 24075463
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

(817) 870-1859 (fax)
dusty@fillmorefirm.com
chad@fillmorefirm.com

*Counsel for Plaintiffs and
the Certified Class*

Dated: June 2, 2022

## CERTIFICATE OF SERVICE

I certify that on June 2, 2022, I served this document through CM/ECF upon:

Kyla M. Snow
Michael F. Knapp
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, D.C. 20005
(202) 305-8356 (phone)
(202) 616-8460 (fax)
kyla.snow@usdoj.gov
michael.f.knapp@usdoj.gov

*Counsel for Defendants*

Chase J. Cooper
Winston & Strawn LLP
2121 North Pearl Street, Suite 900
Dallas, Texas 75201
214-453-6500 (phone)
ccooper@winston.com

*Counsel for Intervenor*
*The Federation of Southern*
*Cooperatives/Land Assistance Fund*

      /s/ Jonathan F. Mitchell
      Jonathan F. Mitchell
      *Counsel for Plaintiffs and*
      *the Certified Class*

**Tab 18**

**Order Denying the Federation's Motion to Certify Orders for Interlocutory Appeal**

**(ECF No. 207)**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| SID MILLER, et al., on behalf of themselves and others similarly situated, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No. 4:21-cv-0595-O |
| TOM VILSACK, in his official capacity as Secretary of Agriculture, | § § § | |
| Defendant, | § § | |
| FEDERATION OF SOUTHERN COOPERATIVES/LAND ASSISTANCE FUND; NATIONAL BLACK FARMERS ASSOCIATION (NBFA); ASSOCIATION OF AMERICAN INDIAN FARMERS (AAIF), | § § § § § § | |
| Intervenor Defendants. | § § | |

## ORDER

Before the Court are the Federation's Motion to Certify Orders for Interlocutory Appeal (ECF No. 203), filed May 27, 2022; the Government's Response (ECF No. 205), filed June 2, 2022; and Plaintiffs' Response (ECF No. 206), filed June 2, 2022. The Federation waived its right to file a reply. *See* Mot. to Expedite, ECF No. 203-3. The Court has denied the Federation's repeated requests for fact discovery. *See* ECF Nos. 186, 196, 202. The Federation now asks the Court to certify those orders for interlocutory appeal.

Under 28 U.S.C. § 1292(b), a district court may "certify an interlocutory appeal where (1) a controlling question of law is involved, (2) there is substantial ground for difference of opinion about the question of law, and (3) immediate appeal will materially advance the ultimate termination of the litigation." *Rico v. Flores*, 481 F.3d 234, 238 (5th Cir. 2007). A court may certify

an interlocutory appeal only if all three elements are present. *Aparicio v. Swan Lake*, 643 F.2d 1109, 1111 n.2 (5th Cir. Unit A Apr. 1981). Even then, "a district court has 'unfettered discretion to deny certification.'" *Patterson v. Dallas/Fort Worth Int'l Airport Bd.*, No. 3:18-cv-00307, 2021 WL 4240479, at *1 (N.D. Tex. Jan. 6, 2021) (citation omitted). "The basic rule of appellate jurisdiction restricts review to final judgments, avoiding the delay and extra effort of piecemeal appeals. Section 1292(b) appeals are exceptional." *Clark-Dietz & Assocs.-Eng'rs, Inc. v. Basic Const. Co.*, 702 F.2d 67, 69 (5th Cir. 1983). The Federation's motion meets none of the § 1292(b) elements.

**1.   The orders do not involve a controlling question of law.**

The orders the Federation seeks to appeal must involve a "controlling question of law." 28 U.S.C. § 1292(b). First, "the issue for appeal must involve a question of *law*—not fact. And a 'question of law' does not mean the application of settled law to disputed facts." *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 722 (N.D. Tex. 2006) (citation omitted). Rather, a question of law "is more of an abstract legal issue or what might be called one of 'pure' law, matters the court of appeals 'can decide quickly and cleanly without having to study the record.'" *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004) (quoting *Ahrenholz v. Bd. of Trs. of the Univ. of Ill.*, 219 F.3d 674 (7th Cir.2000)). Second, "the issue for appeal must involve a *controlling* question of law." *Ryan*, 444 F. Supp. 2d at 722. Generally, a "controlling issue of law is one that has the potential for substantially accelerating the disposition of the litigation and does not concern matters that are entrusted to the discretion" of the Court. *In re Highland Cap. Mgmt., L.P.*, No. 3:21-cv-0879, 2022 WL 394760, at *4 (N.D. Tex. Feb. 9, 2022) (cleaned up). A question of law may be controlling if (1) "reversal of the district court's opinion would result in dismissal of the action," or (2) "the certified issue has precedential value for a large number of cases." *Ryan*, 444

F. Supp. 2d at 722 (citations omitted). The Federation seeks certification of two issues that it says are controlling questions of law.

First, the Federation seeks certification of whether the Court's orders violate the Fifth Circuit's mandate. But whether the Court's orders are consistent with "the appellate court's opinion and the circumstances it embraces," *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 453 (5th Cir. 2007), is not a "pure" legal question that the Fifth Circuit "can decide quickly and cleanly without having to study the record," *McFarlin*, 381 F.3d at 1258 (citation and internal quotation marks omitted). The question is heavily record-dependent, as the orders in question demonstrate. The question is also not "controlling." Resolution of the issue would not "substantially accelerat[e] the disposition of the litigation." *In re Highland Cap. Mgmt.*, 2022 WL 394760, at *4. And "reversal of the district court's opinion" would not "result in dismissal of the action," nor would "the certified issue [have] precedential value for a large number of cases." *Ryan*, 444 F. Supp. 2d at 722 (citations omitted). The mandate question is necessarily fact-specific and case-specific. It is thus inappropriate for interlocutory review.

Second, the Federation seeks certification of whether the Court's orders are unreasonable conditions on the Federation's intervention. The Federation recognizes that "reasonable conditions may be imposed even upon one who intervenes as of right." *Beauregard, Inc. v. Sword Servs. L.L.C.*, 107 F.3d 351, 353 (5th Cir. 1997). Whether the Court's conditions on the parties are reasonable is another fact-specific, case-specific question. Scheduling and discovery orders are generally "matters that are entrusted to the discretion" of the Court and are thus inappropriate for interlocutory review. *In re Highland Cap. Mgmt.*, 2022 WL 394760, at *4. The Federation primarily argues that the questions are controlling because they will "determine[] the 'future course of the litigation.'" Federation Mot. 6, ECF No. 203-1 (quoting *La. State Conf. of NAACP v.*

*Louisiana*, 495 F. Supp. 3d 400, 413 (M.D. La. 2020)). But non-dispositive discovery orders like those at issue here rarely meet that standard, which is why "[c]ourts in the Fifth Circuit have recognized that a discovery order is seldom appropriate for interlocutory appeal." *David v. Signal Int'l, LLC*, 37 F. Supp. 3d 836, 839 (E.D. La. 2014).

### 2. The Federation has not shown a substantial ground for difference of opinion.

The Federation must also show "substantial ground for difference of opinion" on the questions. 28 U.S.C. § 1292(b). Courts debate the precise standard for "substantial" disagreement, "[b]ut simply because a court is the first to rule on a question or counsel disagrees on applicable precedent does not qualify the issue as one over which there is substantial disagreement." *Ryan*, 444 F. Supp. 2d at 724. Generally, "[d]ifference of opinion refers to an unsettled state of law or judicial opinion, not mere discontent by the appealing party." *Barnes v. McQueen*, No. CV 14-2636, 2016 WL 3923875, at *2 (E.D. La. July 21, 2016) (citation and internal quotation marks omitted).

The Federation has not identified authorities that disagree with the Court's reasoning. The Federation complains, for example, that "the Court neither cited nor analyzed Fifth Circuit precedents that take a broader view of the rights given intervenors of right." Federation Mot. 5 (citing *Brown v. Demco, Inc.*, 792 F.2d 478, 480–81 (5th Cir. 1986)). But even the case the Federation cites agrees with the Court's orders: "[A]n intervenor of right is treated as if he were an original party and has equal standing with the original parties." *Brown*, 792 F.2d at 480–81 (cleaned up). "Following the parties' representations that this case can proceed only on expert testimony, the Court limited *all parties* to expert discovery." Order 3, ECF No. 202 (emphasis added) (citing Scheduling Order, ECF No. 85; Am. Scheduling Order, ECF No. 186). The Federation has not shown how it is being treated differently than the other parties. The Federation has not identified any "substantially great" disagreements with the Court's orders. *Ryan*, 444 F.

Supp. 2d at 724. The Federation's arguments amount to complaining that the Court's orders are substantially *wrong*, but "a party's claim that a district court has ruled incorrectly [do not] demonstrate a substantial *disagreement*." *Ryan*, 444 F. Supp. 2d at 724 (emphasis added).

### 3. The Federation has not shown that immediate appeal will materially advance the ultimate termination of the litigation.

Finally, the Federation must show that "immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). District courts in this circuit consider "whether an immediate appeal would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Patterson*, 2021 WL 4240479, at *2 (citation and internal quotation marks omitted). The Federation does not argue that interlocutory appeal would accomplish any of those goals. Rather, the Federation argues that certification would "'conserve judicial resources and spare the parties from possibly needless expense' if the Court's ruling was reversed." *Air Transp. Ass'n of Am., Inc. v. USDA*, 317 F. Supp. 3d 385, 394 (D.D.C. 2018) (citation omitted). But the Federation overlooks that "[i]f the Court were to certify an untimely appeal," resolution of the issues would be further delayed, requiring the parties "to incur greater expense" while bound by the Court's the preliminary injunction. *Id.*

The Federation has not shown that interlocutory appeal of the Court's orders meets the § 1292(b) elements. The Court thus **DENIES** the motion to certify the orders for interlocutory appeal (ECF No. 203).

**SO ORDERED** on this **6th day** of **June, 2022**.

*[signature]*

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**